## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CITY OF MIAMI FIRE FIGHTERS' AND POLICE OFFICERS' RETIREMENT TRUST, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CERENCE INC., SANJAY DHAWAN, and MARK J. GALLENBERGER, <br><br> Defendants. | No. 1:22-cv-10321-ADB |

### MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    PRELIMINARY STATEMENT .......................................................................... 1

II.    BACKGROUND OF THE LITIGATION ......................................................... 3

III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................... 5

    A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the
       Settlement Class .......................................................................................... 6

    B.    The Settlement Was Reached Through Extensive Arm's-Length
       Negotiations Among Experienced Counsel Led By a Respected Mediator ............. 7

    C.    The Settlement Is Within the Range of Possible Approval .................................. 8

    D.    The Settlement Treats All Settlement Class Members Fairly .............................. 11

    E.    The Settlement Does Not Excessively Compensate Plaintiff's Counsel .............. 13

    F.    Lead Plaintiff Has Identified All Agreements Made in Connection With
       The Settlement ........................................................................................... 13

IV.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 .............................. 14

    A.    The Settlement Class Satisfies the Requirements of Rule 23(a) ........................ 15

       1.    The Settlement Class Is So Numerous That Joinder Is
          Impracticable .................................................................................. 15

       2.    There Are Common Questions of Law and Fact ...................................... 15

       3.    Lead Plaintiff's Claims Are Typical of Those of the Settlement
          Class ............................................................................................. 16

       4.    Lead Plaintiff Will Fairly and Adequately Protect the Interests of
          the Settlement Class .......................................................................... 17

    B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ..................... 17

       1.    Common Legal and Factual Questions Predominate ................................. 18

       2.    A Class Action Is Superior to Other Methods of Adjudication ................. 18

V.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND
    PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS ......................... 19

VI.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................................. 20

VII.    CONCLUSION............................................................................................................. 20

APPENDIX A .................................................................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*In re Allergan PLC Sec. Litig.*,
    2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021) ........................................................................18

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...............................................................................................................18, 19

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) ........................................................................................................................7

*In re Apache Corp. Sec. Litig.*,
    2024 WL 532315 (S.D. Tex. Feb. 9, 2024) ...................................................................................12

*In re AVEO Pharms., Inc. Sec. Litig.*,
    2017 WL 5484672 (D. Mass. Nov. 14, 2017) ....................................................................15, 16, 17

*Bacchi v. Mass. Mut. Life Ins. Co.*,
    2017 WL 5177610 (D. Mass. Nov. 8, 2017) .................................................................................13

*In re Boston Sci. Corp. Sec. Litig.*,
    604 F. Supp. 2d 275 (D. Mass. 2009) .................................................................................. *passim*

*In re Credit Suisse-AOL Sec. Litig.*,
    253 F.R.D. 17 (D. Mass. 2008) .....................................................................................................17

*Dahhan v. OvaScience, Inc.*,
    2020 WL 2602138 (D. Mass. May 8, 2020) .................................................................................16

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
    275 F.R.D. 382 (D. Mass. 2011) .............................................................................................18, 19

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ...............................................................................14

*Hill v. State St. Corp.*,
    2015 WL 127728 (D. Mass. Jan. 8, 2015) .................................................................................8, 20

*Hoff v. Popular Inc.*,
    2011 WL 13209610 (D.P.R. Nov. 2, 2011) .................................................................................13

*In re Lupron Mktg. & Sales Practice Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) ......................................................................................................5

*Machado v. Endurance Int'l Grp. Holdings, Inc.*,
    2019 WL 4409217 (D. Mass. Sept. 13, 2019) .............................................................................13

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................................................18

*Medoff v. CVS Caremark Corp.*,
2016 WL 632238 (D.R.I. Feb. 17, 2016) ........................................................................11

*In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*,
2007 WL 313474 (S.D.N.Y. Feb. 1, 2007).......................................................................11

*New England Biolabs, Inc. v. Miller*,
2022 WL 20583575 (D. Mass. Oct. 26, 2022)...................................................................6

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
522 F.3d 6 (1st Cir. 2008).............................................................................................16

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226, 240 (E.D. Mich. 2016), *aff'd*, 2017 WL 6398014 (6th Cir.
Nov. 27, 2017) .............................................................................................................14

*Roberts v. TJX Companies, Inc.*,
2016 WL 8677312 (D. Mass. Sept. 30, 2016) ...................................................................8

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..................................................................14

*Swack v. Credit Suisse First Boston*,
230 F.R.D. 250 (D. Mass. 2005).....................................................................................15

*U.S. v. Comunidades Unidas Contra la Contaminacion*,
204 F.3d 275 (1st Cir. 2000)............................................................................................5

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
208 F.3d 288 (1st Cir. 2000)..........................................................................................18

**STATUTES AND RULES**

15 U.S.C. § 78j.........................................................................................................4, 18

15 U.S.C. § 78t-1 ..........................................................................................................4

15 U.S.C. § 78u-4(a)(7)...............................................................................................20

Fed. R. Civ. P. 23(a) ...............................................................................................14,15

Fed. R. Civ. P. 23(a)(1)................................................................................................15

Fed. R. Civ. P. 23(a)(2)............................................................................................15, 18

Fed. R. Civ. P. 23(b)(3)........................................................................................14, 17, 18

Fed. R. Civ. P. 23(e)(1) ........................................................................................1, 3, 5

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................6, 8

Fed. R. Civ. P. 23(e)(1)(B)(ii) .......................................................................................15

Fed. R. Civ. P. 23(e)(2) .............................................................................................5, 6

Fed. R. Civ. P. 23(e)(2)(A) .............................................................................................6

Fed. R. Civ. P. 23(e)(3) ...................................................................................................6

Lead Plaintiff Public Employees' Retirement System of Mississippi ("Lead Plaintiff") is pleased to report that it has reached an agreement with Defendants to settle this securities class action (the "Action") in exchange for $30,000,000 for the benefit of the Settlement Class (the "Settlement"), subject to the Court's approval.[1]  Lead Plaintiff now seeks preliminary approval of the Settlement pursuant to Federal Rule of Civil Procedure 23(e)(1).  The motion is unopposed.

## I.   PRELIMINARY STATEMENT

After more than two years of hard-fought litigation, Lead Plaintiff has reached an agreement with Defendants to resolve all claims asserted in the Action in exchange for a cash payment of $30,000,000 for the benefit of the Settlement Class.  Lead Plaintiff and Lead Counsel believe that the proposed Settlement is an excellent result for Settlement Class Members in light of the substantial risks of litigation—including significant risks of proving falsity, scienter, and loss causation, and the risk that protracted litigation would reduce the funds available to satisfy a larger settlement or judgment.  The proposed Settlement is an all-cash, non-reversionary settlement: once the Court's approval of the Settlement becomes final, Defendants will have no right to return of the Settlement Fund.[2]

The proposed Settlement was achieved following a contested motion to dismiss, extensive discovery, and arm's-length negotiations, including an eleven-hour mediation session before Greg Danilow of Phillips ADR Enterprises, an experienced mediator.  Over the course of the litigation,

---

[1] All capitalized terms that are not otherwise defined in this memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated September 6, 2024 (the "Stipulation"), attached to the accompanying Motion as Exhibit 1.  Unless otherwise noted, all internal quotation marks and citations are omitted.

[2] *See* Stipulation ¶ 2.3 ("The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Defendant, Released Defendant Person, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever . . . .").

Lead Plaintiff conducted a detailed investigation into its claims, successfully opposed Defendants' motion to dismiss, and conducted substantial discovery, which included obtaining and reviewing more than 100,000 pages of documents and engaging in numerous meet-and-confers with Defendants.  As a result of these significant litigation efforts, Lead Plaintiff and Lead Counsel were well aware of the strengths and weaknesses of the claims in the Action at the time of the Settlement.  Lead Plaintiff—a sophisticated institutional investor with experience overseeing complex securities class actions—played an active role in monitoring this litigation and fully endorses the Settlement.

The proposed Settlement is an excellent result for the Settlement Class in light of the risks of continued litigation and the range of possible outcomes at trial.  Lead Plaintiff faced substantial risks in proving that Defendants' alleged misstatements concerning Cerence's use of fixed contracts were false and misleading, made with scienter, and caused damages to the Settlement Class.  Defendants have contended, and would continue to vigorously contend, that they made no false or misleading statements with intent to deceive, and that they did not engage in any scheme to defraud investors throughout the Class Period.  These significant litigation risks were highlighted by the fact that approximately 90% of the alleged misstatements were dismissed by the Court in its order resolving Defendants' motion to dismiss, including all statements made by Defendant Dhawan.

Additionally, Lead Plaintiff faced the possibility that Cerence would be unlikely to fund a substantial judgment in this matter.  The Company's market capitalization is down approximately 97% from its Class Period high and has remained in a range of just $100-150 million for the past several months.  The Settlement Amount recovers a significant majority of Defendants' available directors' and officers' liability insurance, which was rapidly wasting and would continue to waste

if litigation proceeded.  As such, there was a serious risk that ongoing litigation could have led to a recovery substantially lower than the proposed Settlement amount.  In light of these facts, the Settlement represents an excellent result for the Settlement Class.

The Settlement was the product of hard-fought negotiations and, ultimately, a recommendation by the Mediator to settle the action for $30 million, which both sides accepted. Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, attached to the Motion as Exhibit 2.

Approval of a class action settlement is a two-step process: (i) preliminary approval; and (ii) final approval.  *See* Fed. R. Civ. P. 23(e)(1), (2).  In this Motion, Lead Plaintiff requests only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Settlement Class and the proposed final approval hearing (the "Settlement Hearing") can be scheduled.  At the Settlement Hearing, following additional briefing, the Court will make a final determination as to whether the Settlement is fair, reasonable, and adequate.  Lead Plaintiff submits that the Settlement warrants preliminary approval.

## II.    BACKGROUND OF THE LITIGATION

On February 25, 2022, the City of Miami Fire Fighters' and Police Officers' Retirement Trust filed a securities class action complaint in this Court.  On May 12, 2022, the Court appointed the Public Employees' Retirement System of Mississippi as Lead Plaintiff for the Action under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and approved its selection of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Saxena White P.A. ("Saxena White") as Lead Counsel and Donnelly, Conroy & Gelhaar, LLP as Liaison Counsel for the putative class.  ECF No. 24.

On July 26, 2022, Lead Plaintiff filed its Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") asserting claims against all Defendants under

Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against defendants Sanjay Dhawan and Mark J. Gallenberger under Section 20(a) of the Exchange Act.  ECF No. 37.  Lead Plaintiff alleged, among other things, that Defendants made misrepresentations and omissions concerning a purported scheme to pull forward revenues from future quarters to meet Cerence's revenue guidance.  Lead Plaintiff further alleged that the price of Cerence's common stock was artificially inflated because of Defendants' allegedly false and misleading statements and subsequently declined when the truth was revealed.

On September 9, 2022, Defendants filed a Motion to Dismiss the Complaint.  ECF No. 39.  The motion was fully briefed, and on March 25, 2024, the Court issued an order granting, in part, and denying, in part, Defendants' motion.  ECF No. 51 ("MTD Order").  The MTD Order dismissed roughly 90% of the false and misleading statements alleged in the Complaint, upholding just three of them.

Discovery commenced in April 2024, after the resolution of the motion to dismiss.  Lead Plaintiff prepared and served initial disclosures, requests for the production of documents, and interrogatories on Defendants; and exchanged correspondence with Defendants concerning discovery issues over several months.  In response to Lead Plaintiff's discovery requests, Defendants produced, and Lead Plaintiff analyzed, more than 100,000 pages of documents from a dozen custodians.  Lead Plaintiff also prepared and served responses and objections to Defendants' requests for production of documents and interrogatories.

The Parties began exploring the possibility of a settlement in the Spring of 2024.  The Parties agreed to engage in private mediation and retained Greg Danilow of Phillips ADR Enterprises to act as mediator in the Action (the "Mediator").  On August 14, 2024, the Parties participated in an all-day mediation session before the Mediator.  In advance of the mediation

session, the Parties exchanged multiple mediation statements, including voluminous exhibits, and submitted supplemental materials to the Mediator.  Despite participating in an eleven-hour mediation session on August 14, the Parties did not reach an agreement to settle the Action during the mediation.  After the mediation session, the Parties continued settlement negotiations with the Mediator's assistance, and on August 22, 2024, reached an agreement in principle to settle the Action for $30,000,000.  On September 6, 2024, the Parties entered into the Stipulation, which sets forth the terms and conditions of the Settlement.

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The Settlement readily meets the standards for preliminary approval.  This Settlement provides substantial benefits to investors and avoids the meaningful risks and delays that would otherwise accompany the Action.  The Settlement is the product of extensive, hard-fought litigation and arm's-length settlement negotiations overseen by an experienced mediator.

The First Circuit has a strong judicial policy in favor of settlement as a means of resolving disputes.  This policy preference is especially pronounced in the context of complex class action litigation.  *See U.S. v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000) (noting "the strong public policy in favor of settlements"); *see also In re Lupron Mktg. & Sales Practice Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements.").

Rule 23(e)(2) states that a class action settlement should be approved if it is "fair, reasonable, and adequate."  As noted above, a district court's review of a proposed class action settlement consists of two steps.  ***First***, at this stage, the Court conducts a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class.  *See* Fed. R. Civ. P. 23(e)(1).  ***Second***, after notice has been provided and a hearing has been held, the Court determines whether to grant final approval of the settlement.  *See* Fed. R.

Civ. P. 23(e)(2).

A court should grant preliminary approval upon a finding that it "will likely be able" to finally approve the settlement under Rule 23(e)(2) and certify the proposed Settlement Class. *See* Fed. R. Civ. P. 23(e)(1)(B). "A proposed settlement of a class action may be given preliminary approval 'where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval.'" *New England Biolabs, Inc. v. Miller*, 2022 WL 20583575, at *2 (D. Mass. Oct. 26, 2022).

Then, at the final approval stage, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The proposed Settlement satisfies these factors. Final approval of the Settlement is "likely," and therefore, preliminary approval of the Settlement is warranted. Fed. R. Civ. P. 23(e)(1)(B).

### A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

When deciding whether to approve a proposed settlement, courts should consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A); *see also In re Boston Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 282 (D. Mass. 2009) (the adequacy requirement "entails a two-part showing: 'The moving party must show first

that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'").

*First*, there is no conflict between the Lead Plaintiff and the Settlement Class.  Like other members of the Settlement Class, Lead Plaintiff purchased Cerence common stock during the Class Period, and all members of the Settlement Class were allegedly injured in the same manner by the same alleged misrepresentations.  If Lead Plaintiff were to prove its claims at trial, it would also prove the Settlement Class's claims.  *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (the class "will prevail or fail in unison" because each member's claims are based on common misrepresentations and omissions).

*Second*, Lead Plaintiff has demonstrated its commitment to this litigation and the Settlement Class by retaining qualified counsel, actively overseeing the Action since its inception, and negotiating a favorable $30 million Settlement.  Lead Counsel have vigorously prosecuted this Action for more than two years and obtained a favorable outcome for the Settlement Class.  Both Lead Counsel firms are highly experienced in securities litigation and have successfully prosecuted hundreds of securities class actions on behalf of damaged investors.  As reflected in their Firm Resumes (ECF Nos. 20-4; 20-5), BLB&G and Saxena White are among the most experienced securities class action law firms in the country.

### B.   The Settlement Was Reached Through Extensive Arm's-Length Negotiations Among Experienced Counsel Led By a Respected Mediator

The Parties reached the Settlement only after extensive arm's-length settlement discussions conducted with the assistance of Greg Danilow, a well-respected and experienced mediator.

Lead Plaintiff's decision to settle this case was informed by, among other things: (i) a thorough investigation of the relevant claims; (ii) the filing of a detailed amended complaint and

overcoming Defendants' motion to dismiss; (iii) substantial fact discovery; (iv) consultation with experts on issues of economics and damages; (v) participation in an extensive, hard-fought mediation under the auspices of the Mediator; and (vi) further discussions with the Mediator which ultimately culminated in a Mediator's recommendation that the Parties settle the Action for $30 million, which both sides accepted.  Because the Parties had litigated the action for two years, engaged in significant document discovery, and exchanged multiple detailed written statements about the claims and defenses at issue, the Parties and their counsel were well-informed about the strengths and weaknesses of the claims and defenses.

The Settlement is thus demonstrably the result of well-informed, arm's-length negotiations between sophisticated counsel.  The judgment of the Parties' counsel that the Settlement is a fair and reasonable resolution of the Litigation is to be given considerable weight.  *See, e.g., Hill v. State St. Corp.*, 2015 WL 127728, at *7 (D. Mass. Jan. 8, 2015) ("The intensive multi-year litigation efforts in this case leave this court with no doubt that Lead Plaintiffs, who are sophisticated institutional investors, and Co–Lead Counsel, who are experienced in securities class action litigation, were well informed about the strengths and weaknesses of the case at the time the Settlement was achieved.").  Finally, the "participation of an experienced mediator[] also supports the Court's finding that the Settlement is fair, reasonable, and adequate."  *Roberts v. TJX Cos., Inc.*, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) (Burroughs, J.).

### C.    The Settlement Is Within the Range of Possible Approval

At this stage, the Court need only assess whether it will "likely be able" to approve the Settlement.  Fed. R. Civ. P. 23(e)(1)(B).  In making this assessment, the Court should consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal."  Fed. R. Civ. P. 23(e)(2)(C).  Here, the proposed $30,000,000 Settlement represents a favorable recovery for the Settlement Class considering the substantial risks the

Settlement Class would face in establishing liability and damages; the possibility of reduced funds available to satisfy any judgment; and the significant time and expense associated with pursuing the claims against Defendants through the resolution of discovery, summary judgment, trial, and appeals.  Thus, the Settlement falls well within the range of possible approval.

Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants are meritorious, but they recognize the substantial risks and hurdles to establishing liability and damages.  Lead Plaintiff would have faced risks in establishing the required elements of falsity, scienter, loss causation, and damages as required to survive a motion for summary judgment and prevail at trial.

*First*, Defendants would continue to assert that they made no false or misleading statements regarding their use of fixed contracts.  Specifically, Defendants had argued, and would continue to argue, that Cerence fully and accurately disclosed its revenue from fixed contracts during each quarter, and also disclosed its use of minimum commitment contracts, such that no investor could have been misled by Cerence's use of those contracts.  Indeed, the Court's motion to dismiss order—while allowing the case to proceed to discovery—dismissed many of the false statements alleged in the Complaint, including all of the statements made by Defendant Dhawan. Additionally, the Court specifically noted that the sustained statements were a "close call" and "would be scrutinized closely for purposes of any summary judgment motion."  ECF No. 51 at 34.

*Second*, Defendants would continue to argue that they did not act with fraudulent intent, and that there was no scheme in place to defraud investors.  Defendants would continue to assert, among other things, that Defendants Gallenberger and Dhawan's public statements reflected their honestly held beliefs about fixed contracts, and that they believed they were providing full and adequate information to investors by disclosing the volume of Cerence's fixed revenue every

quarter.

**Third**, Lead Plaintiff also faced risks with respect to proving loss causation. Specifically, Defendants would have challenged whether the alleged corrective disclosures were sufficiently connected to the alleged revenue acceleration scheme that they could be considered the cause of *any* damages for the Settlement Class. In addition, Defendants were expected to vigorously dispute what portion (if any) of Cerence's stock price declines following each of the alleged corrective disclosures was attributable to the disclosure of the alleged revenue acceleration scheme—as opposed to other factors affecting Cerence's business.

If the Court or a jury found against Lead Plaintiff in part or in full on any of these elements of the claims (falsity, scienter, and loss causation), any recovery for the Settlement Class could have been substantially reduced or eliminated entirely. Moreover, Lead Plaintiff would have to prevail at several stages—summary judgment, trial, and if successful there, on the appeals that would undoubtedly follow—all of which would take years.

**Fourth**, during the Class Period, Cerence common stock traded for as much as $133 per share, but on August 22, 2024, the date the parties accepted the Mediators' recommendation, Cerence's stock closed at $3.41 per share—a decline of approximately 97% from Class Period highs. Likewise, the Company's market capitalization had shrunk by approximately 97% and was less than $150 million. Moreover, the Settlement recovers the vast majority of Defendants' remaining available directors' and officers' liability insurance, which was rapidly wasting, and would continue to waste in ongoing litigation. The Settlement avoids the risk that any recovery in a future settlement or judgment would be smaller than the Settlement and provides a prompt and certain benefit to the Settlement Class.

***Finally***, the Settlement is also reasonable in light of the maximum damages that could be reasonably established at trial.  To arrive at a realistic estimate of damages in this case, Lead Plaintiff's damages expert considered, *inter alia*: (1) the fact that arguably confounding information (i.e. negative value-relevant information unrelated to the fraud) was released on the first and third corrective disclosure dates; and (2) the possibility that one or more of the corrective disclosures could have been eliminated at trial.  After accounting for confounding information (such as the impact of negative trends in the automobile market and disclosures relating to Cerence's other lines of business), Lead Plaintiff's expert calculated the maximum amount of likely recoverable damages of $430 million, which assumed that Lead Plaintiff would prevail on <u>all</u> of the alleged misstatements and <u>all</u> three corrective disclosures.  Defendants contended that realistic maximum damages were far lower.

Even assuming Lead Plaintiff prevailed on <u>all</u> three corrective disclosures, the $30 million Settlement would represent approximately 7% of the realistically recoverable maximum damages in this action, which is well above the median percentage of recovery in comparable securities class actions.  This is a particularly good result given the limit on Cerence's ability to pay; indeed, the settlement represents 20% of Cerence's market capitalization at the time the agreement was reached.  *See, e.g.*, *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at \*6 (D.R.I. Feb. 17, 2016) (approving settlement recovering 5.33% of maximum damages and noting that it was "well above the median percentage of settlement recoveries in comparable securities class action cases"); *In re Merrill Lynch & Co. Inc. Res. Reports Sec. Litig.,* 2007 WL 313474, at \*10 (S.D.N.Y. Feb. 1, 2007) (settlement representing 6.25% of estimated maximum damages was at the "higher end of the range of reasonableness of recovery in class action securities litigations").

Further, there was risk that some of the corrective disclosures would be eliminated. The second corrective disclosure—the announcement of Dhawan's resignation—was at significant risk of being eliminated on lack of price impact or loss causation grounds because it arguably revealed no new information directly related to the fraud and did not expressly connect the resignation to the fraud. *See, e.g., In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at *10 (S.D. Tex. Feb. 9, 2024) (executive's resignation was not a corrective disclosure where it was unclear "what aspect of the defendants' prior statements was rendered false or misleading that was not already known by the market"). Additionally, Defendants also would have argued that the third corrective disclosure revealed no new information about the alleged fraud, and that the Company's guidance reductions announced that day were unrelated to fixed and minimum commitment contracts. Had the Court eliminated the second and third corrective disclosures, damages could have been as low as $82 million. The Settlement thus is an excellent result when considering the litigation risks present in this case.

### D.    The Settlement Treats All Settlement Class Members Fairly

Rule 23(e)(2)(D) directs the Court to evaluate whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)-(D). The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Settlement Class. Rather, all Settlement Class Members will be eligible to receive a distribution from the Net Settlement Fund in accordance with a plan of allocation to be approved by the Court.

At the final Settlement Hearing, Lead Plaintiff will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan," which is stated in full in the Notice). The Plan, which was developed by Lead Counsel in consultation with Lead Plaintiff's damages expert, provides for the distribution of the Net Settlement Fund to Settlement Class Members on a *pro rata* basis arising from losses in Cerence common stock related to the alleged fraud.

**E.      The Settlement Does Not Excessively Compensate Plaintiff's Counsel**

The proposed Settlement does not grant excessive compensation to Plaintiff's Counsel. The Settlement does not contemplate any specific award to Plaintiff's Counsel, and Plaintiff's Counsel will be compensated solely out of the Settlement Fund after approval by the Court.

In its fee and expense application, which will be filed 35 days before the Settlement Hearing, Lead Counsel will move for attorneys' fees for all Plaintiff's Counsel in an amount not to exceed 25% of the Settlement Fund, which is well within the range of percentage awards that courts have approved in comparable class actions.  *See, e.g.*, *Machado v. Endurance Int'l Grp. Holdings, Inc.*, 2019 WL 4409217, at *1 (D. Mass. Sept. 13, 2019) (awarding 33 1/3% of $18.65 million settlement); *Bacchi v. Mass. Mut. Life Ins. Co.,* 2017 WL 5177610, at *5 (D. Mass. Nov. 8, 2017) (awarding 25% of $37.5 million settlement); *Hoff v. Popular Inc.*, 2011 WL 13209610, at *1 (D.P.R. Nov. 2, 2011) (awarding 27% of $37.5 million settlement).  Lead Counsel will also seek payment of litigation expenses incurred in connection with the institution, prosecution, and resolution of the Action, in an amount not to exceed $300,000, which may include a request for reimbursement of costs and expenses of Lead Plaintiff under the PSLRA.

Lead Counsel's fee and expense application will be briefed in a motion filed in accordance with the Preliminary Approval Order.  By granting preliminary approval of the proposed Settlement, the Court does not in any way pass judgment upon the reasonableness of the fee or expense application, which will be decided at the Settlement Hearing with the benefit of full briefing.

**F.      Lead Plaintiff Has Identified All Agreements Made in Connection with The Settlement**

In addition to the Stipulation, Lead Plaintiff and Defendants have entered into a confidential agreement (the "Supplemental Agreement") regarding requests for exclusion ("opt-

outs") from the Settlement Class.  *See* Stipulation ¶ 6.4.  The Supplemental Agreement sets forth the conditions under which Cerence may terminate the Settlement if the opt-outs from the Settlement Class exceed an agreed-upon threshold.  "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement."  *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020).  As is also standard in securities class actions, the Supplemental Agreement is being kept confidential to avoid incentivizing individuals to leverage the opt-out threshold to exact individual settlements at the class's expense.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018); *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.,* 315 F.R.D. 226, 240 (E.D. Mich. 2016), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

## IV.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

As part of the Settlement, the Parties have stipulated to the certification of the Settlement Class pursuant to Rule 23(a) and 23(b)(3) for settlement purposes only.  Stipulation ¶ 2.11.  The Settlement Class consists of all Persons who purchased or otherwise acquired Cerence common stock during the Settlement Class Period and were damaged thereby.  *See* Stipulation ¶ 1.40.[3]

Certification of a settlement class is appropriate where the proposed class and class representative meet the requirements of Rules 23(a) and 23(b)(3).  At the preliminary approval stage, the Court need only determine whether it "will likely be able to" grant certification to the

---

[3] Excluded from the Settlement Class are: (i) Defendants; (ii) Immediate Family Members of any Individual Defendant; (iii) any person who is, or was during the Class Period, an officer or director of Cerence; (iv) any affiliates or subsidiaries of Cerence; (v) any entity in which any Defendant has or had a controlling interest; and (vi) the legal representatives, heirs, successors, or assigns of any such excluded persons and entities.  Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.  Stipulation ¶ 1.40.

Settlement Class at final approval. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). As set forth below, the proposed Settlement Class satisfies all the requirements of Rules 23(a) and 23(b)(3).

### A. The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The proposed Settlement Class satisfies these requirements.

#### 1. The Settlement Class Is So Numerous That Joinder Is Impracticable

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all of them would be "impracticable." Fed. R. Civ. P. 23(a). During the Class Period, there were roughly 38 million shares of Cerence common stock issued and outstanding. *See* ECF No. 37 at ¶ 238. While the exact number of Settlement Class Members is unknown to Lead Plaintiff, Lead Plaintiff believes that there are likely thousands of Settlement Class Members. Accordingly, the members of the Settlement Class are so numerous that their joinder would be impracticable.

#### 2. There Are Common Questions of Law and Fact

The commonality requirement of Rule 23(a)(2) is met when there is "a ***single*** common legal or factual issue." *Swack v. Credit Suisse First Boston,* 230 F.R.D. 250, 259 (D. Mass. 2006). In securities class actions such as this one, commonality is found where "the statements Plaintiffs allege were misleading due to material omissions were made to all of the class members." *In re AVEO Pharms., Inc. Sec. Litig.*, 2017 WL 5484672, at *4 (D. Mass. Nov. 14, 2017); *see also Boston Sci.,* 604 F. Supp. 2d at 281 (common questions included falsity, scienter, and whether a presumption of reliance applied). The commonality requirement is a "low bar" that is readily met

in this case.  *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008).

Among the questions of fact and law common to the Settlement Class are: (i) whether Defendants' statements were materially false and misleading when made; (ii) whether Defendants acted with scienter; (iii) whether the price of Cerence's common stock was artificially inflated during the Class Period due to the alleged misstatements; (iv) whether the misrepresentations and omissions caused Settlement Class members to suffer economic losses when the truth was revealed; and (v) the proper way to measure damages.  Courts regularly certify securities class actions involving similar common questions.  *See, e.g., Dahhan v. OvaScience, Inc.,* 2020 WL 2602138, at *3 (D. Mass. May 8, 2020) (commonality where statements and omissions were "distributed to all the class members during the class period resulting in an artificially inflated stock price").  The commonality requirement is satisfied, where, as here, a plaintiff alleges that defendants engaged in a standardized course of conduct that affected all class members.

### 3.    Lead Plaintiff's Claims Are Typical of Those of the Settlement Class

The typicality requirement is met where "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  *Boston Sci.,* 604 F. Supp. 2d at 281-82. A plaintiff "meet[s] this requirement by showing that its injuries arise from the same events or course of conduct as do the injuries of the class, and that its claims are based on the same legal theory as those of the class."  *Id.*  Typicality is satisfied where "all members of the class are purchasers of [Defendants'] stock which they allege was inflated in price due to Defendants' material omissions and were harmed by the later revelations that cured the omission."  *AVEO Pharms.,* 2017 WL 5484672, at *4; *see also OvaScience,* 2020 WL 2602138, at *4.

Here, the alleged injuries to Lead Plaintiff and the other members of the Settlement Class are attributable to the same alleged course of conduct by Defendants, and liability is based on the

same legal theories.  Lead Plaintiff alleges that it, like the rest of the Settlement Class, paid artificially inflated prices for Cerence common stock during the Class Period as a result of Defendants' alleged material misrepresentations and omissions.  As such, typicality is satisfied. *See Boston Sci.,* 604 F. Supp. 2d at 282 (typicality found where plaintiff "purchased Boston Scientific stock at a time when the price was alleged to have been artificially inflated due to defendants' misleading statements, and was subsequently harmed by the drop in stock price"); *In re Credit Suisse-AOL Sec. Litig.,* 253 F.R.D. 17, 24 (D. Mass. 2008).

### 4.    Lead Plaintiff Will Fairly and Adequately Protect the Interests of the Settlement Class

The adequacy requirement is met when a plaintiff demonstrates that it "will fairly and adequately protect the interests of the class." *AVEO Pharms.,* 2017 WL 5484672, at *4.  Adequacy of representation is measured by two questions: (i) whether the claims of the plaintiff conflict with those of the class; and (ii) whether counsel is qualified, experienced, and able to conduct the litigation.  *Boston Sci.,* 604 F. Supp. 2d at 282; *see also AVEO Pharms.,* 2017 WL 5484672, at *4. Both prongs are satisfied here.  As discussed above, Lead Plaintiff's interests are aligned with those of the rest of the Settlement Class, and no actual or potential conflicts exist.  Lead Plaintiff also retained qualified counsel who have extensive experience and success in prosecuting securities litigation.  *See* ECF No. ECF Nos. 20-4; 20-5 (Lead Counsel's firm resumes).  In addition, Lead Plaintiff and Lead Counsel vigorously prosecuted this Action on behalf of the Settlement Class.  Accordingly, Rule 23(a)(4) is satisfied here.

### B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating

the controversy." Fed. R. Civ. P. 23(b)(3).  The Settlement Class satisfies these requirements.

### 1.    Common Legal and Factual Questions Predominate

The Supreme Court has noted that the predominance test is "readily met" in cases alleging violations of the securities laws.  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997); *see also In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 393 (D. Mass. 2011) (same); *Boston Sci.*, 604 F. Supp. 2d at 283 ("Most [§ 10(b)] elements are generally amenable to common proof.").  As demonstrated by the description of Lead Plaintiff's claims under Rule 23(a)(2)'s commonality standard, there are numerous questions of law and fact common to the claims asserted.  Here, "the critical issues for establishing Defendants' liability include whether the Defendants (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which Plaintiffs relied; and (5) that Plaintiffs' reliance was the proximate cause of their injury. Each of these issues is susceptible of generalized proof and, accordingly, the predominance requirement . . . is satisfied." *In re Marsh & McLennan Cos., Inc. Sec. Litig.,* 2009 WL 5178546, at *11 (S.D.N.Y. Dec. 23, 2009).  There are no significant—let alone predominant—individual issues in this case.

### 2.    A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires Lead Plaintiff to demonstrate that class resolution will be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "Courts have long recognized that class actions are a desirable means for resolving claims based on securities laws," and find superiority is easily established.  *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *17 (S.D.N.Y. Sept. 8, 2021); *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (securities fraud cases are "particularly well-suited for class treatment"); *Evergreen*, 275 F.R.D. at 393 ("class actions are

particularly appropriate for securities litigation because it may be the 'only practicable means of enforcing investor's rights.'").

Here, the benefits of presenting the claims of Settlement Class Members through a class action are substantial, as the number of Settlement Class members is likely in the hundreds or thousands, and many may have not been sufficiently allegedly damaged to make bringing individual lawsuits economically feasible. *See Boston Sci.*, 604 F. Supp. 2d at 287-88; *see also Evergreen,* 275 F.R.D. at 393. Lead Plaintiff is aware of no other federal securities action against Defendants relating to investors' purchases of Cerence common stock during the Class Period. Settlement Class Members are also likely geographically dispersed, such that it is reasonable to litigate Lead Plaintiff's claims in this forum, where much of the alleged misconduct occurred. Further, a class action will avoid duplicative litigation and save substantial judicial resources. Finally, since the Settlement seeks class certification for purposes of settlement only, the Court does not need to consider whether the case would present management problems. *See Amchem,* 521 U.S. at 620.

In sum, the proposed Settlement Class meets all the requirements of Rules 23(a) and (b)(3) and is appropriate for certification for purposes of the Settlement.

## V. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail by first-class mail and/or email the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, as well as post the Notice and the Claim Form on a website to be developed for the Settlement. The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; (iii) the proposed Plan of

Allocation; and (iv) information regarding Lead Counsel's application for attorneys' fees and expenses.  The Notice will also provide specifics on the date and time of the Settlement Hearing and set forth the procedures for opting out of the Settlement Class; objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and expenses; and submitting a Claim Form.  In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published in *Investor's Business Daily* and transmitted over the *PR Newswire*.

The form and manner of providing notice to the Settlement Class satisfies the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §78u-4(a)(7).  The Notice and Summary Notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them.'"  *Hill*, 2015 WL 127728, at *15.  Accordingly, Lead Plaintiff respectfully submits that the proposed notice procedures should be approved.

## VI.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff respectfully proposes the schedule for Settlement-related events as set forth in Appendix A.  If the Court agrees with the proposed schedule, Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date 90 days after entry of the Preliminary Approval Order, but no earlier than December 16, 2024, or at the Court's earliest convenience thereafter.  If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the final Settlement Hearing.  The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

## VII.  CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (i) preliminarily approve the proposed Settlement; (ii) approve the proposed form and manner of notice to putative Settlement Class Members; and (iii) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

DATED:  September 6, 2024

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMAN LLP**

/s/ *John Rizio-Hamilton*
Hannah Ross (*pro hac vice*)
John Rizio-Hamilton (*pro hac vice*)
Alec T. Coquin (*pro hac vice*)
Mathews R. de Carvalho (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
(212) 554-1400
hannah@blbglaw.com
johnr@blbglaw.com
alec.coquin@blbglaw.com
mathews.decarvalho@blbglaw.com

Jonathan D. Uslaner (*pro hac vice*)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
(310) 819-3470
jonathanu@blbglaw.com

**SAXENA WHITE P.A.**
Maya Saxena (*pro hac vice* forthcoming)
Joseph E. White III (BBO #648498)
7777 Glades Road, Suite 300
Boca Raton, Florida 33434
(561) 394-3399
msaxena@saxenawhite.com
jwhite@saxenawhite.com

Steven B. Singer (*pro hac vice*)
Joshua H. Saltzman (*pro hac vice*)
Sara DiLeo (*pro hac vice*)
10 Bank Street, 8th Floor
White Plains, New York 10606
(914) 437-8551
ssinger@saxenawhite.com
jsaltzman@saxenawhite.com
sdileo@saxenawhite.com

*Lead Counsel for Lead Plaintiff Public
Employees' Retirement System of Mississippi*

**DONNELLY, CONROY**
  **& GELHAAR, LLP**
T. Christopher Donnelly (BBO #129930)
Peter E. Gelhaar (BBO #188310)
Peter K. Levitt (BBO #565761)
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
(617) 720-2880
tcd@dcglaw.com
peg@dcglaw.com
pkl@dcglaw.com

*Liaison Counsel for Lead Plaintiff Public*
*Employees' Retirement System of Mississippi*

**DAVIDSON BOWIE, PLLC**
John L. Davidson (*pro hac vice*)
1062 Highland Colony Parkway
200 Concourse, Suite 275
Ridgeland, Mississippi 39157
(601) 932-0028
jdavidson@dbslawfirm.net

*Additional Counsel for Lead Plaintiff Public*
*Employees' Retirement System of Mississippi*

## APPENDIX A

## Proposed Schedule of Settlement Events

| Event | Proposed Timing | Example Date[4] |
|---|---|---|
| Deadline to commence mailing the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 7(b)) | No later than 10 business days after entry of Preliminary Approval Order | September 24, 2024 |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 7(d)) | No later than 10 business days after the Notice Date | October 8, 2024 |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses (Preliminary Approval Order ¶ 27) | 35 calendar days before the date set for the Settlement Hearing | November 11, 2024 |
| Deadline for receipt of requests for exclusion or objections (Preliminary Approval Order ¶¶ 14, 17, 18) | 21 calendar days before the date set for the Settlement Hearing | November 25, 2024 |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 27) | 7 calendar days before the Settlement Hearing | December 9, 2024 |
| Settlement Hearing (Preliminary Approval Order ¶ 5) | December 16, 2024 or as soon thereafter as the Court can schedule* | December 16, 2024 |
| Postmark deadline for submitting Claim Forms (Preliminary Approval Order ¶ 11) | 120 calendar days after the Notice Date | January 15, 2025 |

* If the Court enters the Preliminary Approval Order on or before September 17, 2024, Lead Plaintiff request that the hearing be scheduled for December 16, 2024 (or at the Court's earliest convenience thereafter).  Otherwise, the hearing may be scheduled for at least 90 days after entry of the Order.

---

[4] The example dates provided are based on the assumptions that the Court enters the Preliminary Approval Order on September 10, 2024, and schedules the Settlement Hearing for December 16, 2024.

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered participants on the Notice of Electronic Filing (NEF).

*/s/ John Rizio-Hamilton*
John Rizio-Hamilton