## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CITY OF MIAMI FIRE FIGHTERS' AND POLICE OFFICERS' RETIREMENT TRUST, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CERENCE INC., SANJAY DHAWAN, and MARK J. GALLENBERGER, <br><br> Defendants. | No. 1:22-cv-10321-ADB |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT..................................................................................................................... 2

I.    PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS'
      FEES FROM THE COMMON FUND.................................................................... 2

II.   THE REQUESTED FEE IS REASONABLE UNDER THE PERCENTAGE-OF-
      THE-FUND METHOD AND UNDER A LODESTAR "CROSS-CHECK" ................... 3

      A.    The Requested Fee Is Reasonable Under the Percentage Method......................... 3

      B.    The Requested Attorneys' Fees are Reasonable Under a Lodestar "Cross-
            Check"..................................................................................................... 5

III.  FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM
      THAT THE REQUESTED FEE IS FAIR AND REASONABLE................................... 9

      A.    The Amount of the Recovery............................................................................ 9

      B.    The Skill and Experience of Counsel................................................................ 11

      C.    The Complexity and Duration of the Litigation ................................................. 12

      D.    The Risks of the Litigation ............................................................................. 13

      E.    The Amount of Time Devoted to the Litigation by Plaintiff's Counsel ............... 15

      F.    Awards in Similar Cases................................................................................. 15

      G.    Public Policy Considerations .......................................................................... 15

      H.    Lead Plaintiff Has Approved the Requested Fee ............................................... 16

      I.    The Reaction of the Settlement Class to Date ................................................... 16

IV.   THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY
      TO ACHIEVE THE BENEFIT OBTAINED ............................................................. 17

V.    LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE COSTS
      AND EXPENSES PURSUANT TO § 78U-4(A)(4) OF THE PSLRA........................... 18

CONCLUSION................................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ahearn v. Credit Suisse First Boston LLC*,
No. 03-CV-10956 (JLT), slip op. (D. Mass. June 7, 2006), ECF No. 82 ...............................19

*Bacchi v. Mass. Mut. Life Ins. Co.*,
2017 WL 5177610 (D. Mass. Nov. 8, 2017) ...............................................................................4

*Baum v. Harman Int'l Industries, Inc.*,
2022 WL 17037516 (D. Conn. Nov. 10, 2022) ...........................................................................4

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ............................................3

*In re Chicago Bridge & Iron Company N.V. Sec. Litig.*,
2022 WL 3220783 (S.D.N.Y. Aug. 5, 2022) ...............................................................................5

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ...............................................................................................13, 14

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ...............................................................................12

*In re Cnova N.V. Sec. Litig.*,
2018 WL 11447878 (S.D.N.Y. Mar. 20, 2018) ...........................................................................5

*Cohen v. Brown Univ.*,
2001 WL 1609383 (D.N.H. Dec. 5, 2001) ..................................................................................6

*In re CVS Corp. Sec. Litig.*,
No. 01-11464 (JLT), slip op. (D. Mass. Sept. 7, 2005), ECF No. 195 .......................................4

*Davis v. Yelp, Inc.*,
2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) .............................................................................4

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
989 F. Supp. 375 (D. Mass. 1997) ..............................................................................................3

*In re Eros Int'l PLC Sec. Litig.*,
2023 WL 8519091 (D.N.J. Nov. 28, 2023) .................................................................................4

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
2012 WL 6184269 (D. Mass. Dec. 10, 2012) ...........................................................................19

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018)..............................................................................5

*In re FibroGen, Inc., Sec. Litig.*,
    Case No. 3:21-cv-02623-EMC (N.D. Cal. Aug. 1, 2024), ECF No. 259 ..............................6, 7

*In re Fidelity/Micron Sec. Litig.*,
    167 F.3d 735 (1st Cir. 1999).........................................................................................17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)..............................................................16

*Fleming v. Impax Lab'ys Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022)..............................................................5

*Ford v. Takeda Pharms. U.S.A. Inc.*,
    2023 WL 3679031 (D. Mass. Mar. 31, 2023)..............................................................8

*Fulton County Employees' Ret. Sys. v. Blankfein*,
    Case No. 1:19-cv-01562-VSB (S.D.N.Y. Jan. 20, 2023), ECF No. 106 ..................................7

*Gerneth v. Chiasma, Inc.*,
    No. 1:16-cv-11082-DJC, slip op. (D. Mass. June 27, 2019), ECF No. 225 ..............................4

*In re Groupon, Inc. Sec. Litig.*,
    2016 WL 3896839 (N.D. Ill. July 13, 2016)..............................................................5

*Hatamian v. Advanced Micro Devices, Inc.*,
    2018 WL 8950656 (N.D. Cal. Mar. 2, 2018)..............................................................5

*Hessefort v. Super Micro Computer, Inc.*,
    2023 WL 7185778 (N.D. Cal. May 5, 2023)..............................................................12

*Hill v. State Street Corp.*,
    2015 WL 127728 (D. Mass. Jan. 8, 2015)..............................................................9, 15, 16, 17

*Hoff v. Popular Inc.*,
    2011 WL 13209610 (D.P.R. Nov. 2, 2011)..............................................................4

*Howard v. Liquidity Servs. Inc.*,
    2018 WL 4853898 (D.D.C. Oct. 5, 2018)..............................................................10

*In re Intuniv Antitrust Litig.*,
    2020 WL 8373393 (D. Mass. Dec. 9, 2020) (Burroughs, J.)..............................................4

*In re James River Group Holdings, Ltd. Sec. Litig.*,
    Case No. 3:21-cv-00444-DJN (E.D. Va. May 24, 2024), ECF No. 131 ..................................7

*In re Jeld-Wen Holding, Inc. Sec. Litig.*,
No. 3:20-cv-00112-JAG, slip op. (E.D. Va. Nov. 22, 2021), ECF No. 300 ........................... 19

*In re Lernout & Hauspie Sec. Litig.*,
138 F. Supp. 2d 39 (D. Mass. 2001) ..................................................................................... 16

*In re Lupron Mktg. & Sales Practices Litig.*,
2005 WL 2006833 (D. Mass. Aug. 17, 2005) ................................................................. 6, 9, 13

*Machado v. Endurance Int'l Grp. Holdings, Inc.*,
Case No. 1:15-cv-11775-GAO, slip op. (D. Mass. Sept. 13, 2019), ECF No.
98 ............................................................................................................................................ 4

*In re Marsh & McLennan Cos. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................................ 19

*Medoff v. CVS Caremark Corp.*,
2016 WL 632238 (D.R.I. Feb. 17, 2016) ....................................................................... *passim*

*In re Merrill Lynch & Co. Inc. Res. Reports Sec. Litig.*,
2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ............................................................................ 10

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ............................................................................................................... 6

*In re Neurontin Mktg. & Sales Practices Litig.*,
58 F. Supp. 3d 167 (D. Mass. 2014) ...................................................................................... 3

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
2009 WL 2408560 (D. Mass. Aug. 3, 2009) ........................................................................... 5

*Noto v. 22nd Century Grp., Inc.*,
2023 WL 7107840 (W.D.N.Y. Oct. 17, 2023) ....................................................................... 12

*In re Novo Nordisk Sec. Litig.*,
Case No. 3:17-cv-00209-ZNQ-LHG (D.N.J. July 13, 2022), ECF No. 361 ........................... 7

*Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
2024 WL 98387 (D. Colo. Jan. 1, 2024) ................................................................................ 4

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
2021 WL 2981970 (D. Colo. July 15, 2021) .......................................................................... 11

*Pearlstein v. BlackBerry Ltd.*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ....................................................................... 15

*Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*,
2021 WL 1659848 (E.D. Va. Apr. 23, 2021) .......................................................................... 5

*Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*,
    2022 WL 2093054 (D. Minn. June 10, 2022)................................................................12

*Public Employees' Ret. Sys. of Miss. v. Mohawk Industries, Inc.*,
    No. 4:20-cv-00005-WMC, slip op. (N.D. Ga. May 31, 2023), ECF No. 138 ........................19

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. Sept. 28, 2005)..............................................................4, 8, 9

*Roberts v. TJX Companies, Inc.*,
    2016 WL 8677312 (D. Mass. Sept. 30, 2016) ......................................................8, 14

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005).............................................................12

*Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*,
    Case No. 2:20-cv-00856-RDP (N.D. Ala. Jan. 17, 2024), ECF No. 171 ...................................7

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...........................................................15

*In re Silver Wheaton Corp. Sec. Litig.*,
    2020 WL 4581642 (C.D. Cal. Aug. 6, 2020)..............................................................5

*In re SolarWinds Corp. Sec. Litig.*,
    Case No. 1:21-cv-00138-RP (W.D. Tex. July 28, 2023), ECF No. 111...................................7

*In re Stable Rd. Acquisition Corp.*,
    2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ....................................................3, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................15

*In re Tezos Sec. Litig.*,
    2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) .......................................................5

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire*
    *Litig.*, 56 F.3d 295 (1st Cir. 1995) ..........................................................2, 3, 5, 6

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007)...........................................................3, 6, 8

*US Airways, Inc. v. McCutchen*,
    569 U.S. 88, 133 S. Ct. 1537 (2013)..........................................................................2

*In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., and Prods. Liab. Litig.*,
    2019 WL 2077847 (N.D. Cal. May 10, 2019).............................................................5

v

*Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit*
    *Funds v. Brixmor Property Group, Inc.*,
    2017 WL 11470634 (S.D.N.Y. Dec. 13, 2017) ..........................................................5

*In re Wilmington Tr. Sec. Litig.*,
    2018 WL 6046452 (D. Del. Nov. 19, 2018) ..........................................................11

*In re WorldCom Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)...................................................................6

**STATUTES**

15 U.S.C. § 78u-4(a)(4) .......................................................................................18, 20

**OTHER AUTHORITIES**

CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENTS: 2023
    REVIEW AND ANALYSIS (2024) ...........................................................................9

Edward Flores & Svetlana Starykh, RECENT TRENDS IN SECURITIES CLASS
    ACTION LITIGATION: 2023 FULL-YEAR REVIEW (NERA Economic Consulting,
    Jan. 23, 2024)......................................................................................................5

H.R. Conf. Rep. No. 104-369, at *32 (1995), reprinted in 1995 U.S.C.C.A.N. 730 ....................16

**PRELIMINARY STATEMENT**

After two years of hard-fought litigation in a case that presented numerous and significant risks, Plaintiff's Counsel has secured a proposed all-cash, non-reversionary $30 million settlement for the Settlement Class.  The proposed Settlement represents an outstanding recovery in light of the risks of continued litigation.  In light of the work performed and the results achieved, Plaintiff's Counsel now respectfully request a fee award equal to 25% of the Settlement Fund, net of expenses, and payment of $129,748.20 in litigation expenses that were reasonably incurred by Plaintiff's Counsel in the course of the litigation.[1]

The $30 million Settlement was achived through the skill, tenacity, and hard work of Plaintiff's Counsel, who vigorously litigated this case on an entirely contingent fee basis against top-tier defense counsel.  Plaintiff's Counsel devoted a significant amount of time, effort and resources to pursuing this litigation, as detailed in the accompanying Joint Declaration.[2]  Among other things, Plaintiff's Counsel: (i) conducted an extensive investigation into the alleged fraud; (ii) drafted the detailed Complaint based on the investigation; (iii) opposed Defendants' motion to dismiss through extensive briefing; (iv) conducted substantial fact discovery; and (v) participated in extended arm's length settlement negotiations, including an eleven-hour mediation session and subsequent discussions the following week with a well-respected mediator.  ¶¶ 28-60.  And Lead

---

[1] Lead Plaintiff also respectfully requests a total of $7,600 in reasonable costs that were directly related to its representation of the Settlement Class, as authorized by the PSLRA.

[2] The Joint Declaration is an integral part of this submission and, for the sake of brevity, Lead Counsel respectfully refers the Court to it for a detailed description of, *inter alia*, the history of the Action (¶¶ 28-60); the nature of the claims asserted (¶¶ 18-27); the negotiations leading to the Settlement (¶¶ 55-60); the risks and uncertainties of continued litigation (¶¶ 61-86); and a description of the work that Plaintiff's Counsel performed for the benefit of the Settlement Class (¶¶ 28-60, 106-109).

Counsel undertook these efforts on a fully contingent basis, with no guarantee they would ever receive any compensation whatsoever.

As discussed below, the requested 25% fee is well within the range of fees awarded in class actions that have settled for comparable amounts in this Circuit. And, under a lodestar "cross-check," the requested fee represents a modest 1.34 multiplier of Plaintiff's Counsel's total lodestar, which is well within the range of multipliers commonly awarded in similar settlements.

Lead Plaintiff, a sophisticated institutional investor that has been actively involved in overseeing this Action on behalf of the class for the past two years (and has also overseen the prosecution of numerous other securities class actions) fully endorses the requested fee as fair and reasonable in light of the result obtained, the risks of the litigation, and the work performed by counsel. *See* Declaration of Laken Ryals on behalf of Mississippi (Ex. 1), at ¶¶ 3-8. In addition, while the deadline for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the requested fee and expenses have been received. *See* Joint Decl. ¶ 117.

For all the reasons set forth below, Lead Counsel respectfully request that the Court approve the application for attorneys' fees and payment of expenses.

**ARGUMENT**

**I.      PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND**

The Supreme Court and First Circuit have long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96, 133 S. Ct. 1537, 1545 (2013); *see also In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995). An award of reasonable attorneys' fees from

2

a common fund "encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this one" and spread the costs of the litigation "proportionately among those benefitted by the suit." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007).

## II. THE REQUESTED FEE IS REASONABLE UNDER THE PERCENTAGE-OF-THE-FUND METHOD AND UNDER A LODESTAR "CROSS-CHECK"

Fees awarded to counsel from a common fund can be determined under either the percentage-of-the-fund method or the lodestar method. The percentage method in common fund cases is the prevailing method in the First Circuit, and the Court noted that it "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace." *Thirteen Appeals*, 56 F.3d at 308. As one court in this District has also noted, the percentage method "appropriately aligns the interests of the class with the interests of the class counsel, . . . is 'less burdensome to administer than the lodestar method,' . . . 'enhances efficiency' and does not create a 'disincentive for the early settlement of cases.'" *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997); *see also In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *11 (C.D. Cal. Apr. 23, 2024) (citing cases) (noting that "where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method" and that the percentage method is "near-universal" in PSLRA cases).

### A. The Requested Fee Is Reasonable Under the Percentage Method

The requested fee of 25% is well within the range of percentage fees awarded in this Circuit in comparable class actions. *See In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 171-72 (D. Mass. 2014) (noting that "nearly two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 350 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ("The plaintiffs'

3

request for 25% of the settlement fund in fees falls squarely within what is recognized in this circuit as the range of reasonable [percentage-of the-fund] amounts.")

A review of attorneys' fees awarded in securities class actions with comparably sized settlements in this Circuit strongly supports the reasonableness of the 25% fee request. *See, e.g., Machado v. Endurance Int'l Grp. Holdings, Inc.*, Case No. 1:15-cv-11775-GAO, slip op. at 2 (D. Mass. Sept. 13, 2019), ECF No. 98 (Ex. 7A) (awarding 33.3% of $18.65 million settlement, 1.77 multiplier); *Gerneth v. Chiasma, Inc.*, No. 1:16-cv-11082-DJC, slip op. at 1 (D. Mass. June 27, 2019), ECF No. 225 (Ex. 7B) (awarding 30% of $18.75 million settlement, 1.5 multiplier); *Godinez v. Alere Inc.*, No. 1:16-cv-10766-PBS, slip op. at 1 (D. Mass. June 6, 2019), ECF No. 283 (Ex. 7C) (28% of $20 million settlement); *Bacchi v. Mass. Mut. Life Ins. Co.*, 2017 WL 5177610, at *5 (D. Mass. Nov. 8, 2017) (25% of $37.5 million settlement, 1.3 multiplier); *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *9 (D.R.I. Feb. 17, 2016) (30% of $48 million settlement); *Hoff v. Popular Inc.*, 2011 WL 13209610, at *1 (D.P.R. Nov. 2, 2011) (27% of $37.5 million settlement, 3.13 multiplier); *In re CVS Corp. Sec. Litig.*, No. 01-11464 (JLT), slip op. at 7 (D. Mass. Sept. 7, 2005), ECF No. 195 (Ex. 7D) (25% of $110 million settlement, 3.27 multiplier); *see also In re Intuniv Antitrust Litig.*, 2020 WL 8373393, at *4 (D. Mass. Dec. 9, 2020) (Burroughs, J.) (awarding 33.3% of a $19.9 million settlement, net of expenses, in an antitrust class action); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 80-82 (D. Mass. Sept. 28, 2005) (awarding 33.3% of $67 million settlement, 2.02 multiplier, in antitrust class action).[3]

---

[3] The requested 25% fee is also well within the range of percentage fee awards that have been granted in comparable securities class actions in other Circuits. *See, e.g., Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at *8 (D. Colo. Jan. 1, 2024) (awarding 30% of $27 million settlement); *In re Eros Int'l PLC Sec. Litig.*, 2023 WL 8519091, at *1 (D.N.J. Nov. 28, 2023) (awarding 1/3 of $25 million settlement); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (awarding 1/3 of $22,250,000 settlement); *Baum v. Harman Int'l*

Independent research furthers confirm that 25% is the median percentage fee awarded by courts nationally in federal securities actions that have settled for comparable amounts. *See* Edward Flores & Svetlana Starykh, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2023 FULL-YEAR REVIEW, at 29 (NERA Economic Consulting, Jan. 23, 2024) (Ex. 7E) (finding that, for the period 2014 to 2023, the median percentage fee awarded in securities class actions that settled for between $25 and $100 million was 25%). The same report found that the median fee was also 25% for cases recovering between $100 million and $500 million and was 27.5% for cases settling for between $10 and $25 million. *Id.* Accordingly, the 25% request here is highly reasonable and well within the norm for similar cases.

**B.    The Requested Attorneys' Fees are Reasonable Under a Lodestar "Cross-Check"**

If fees are awarded on a percentage basis, the lodestar approach may be used as a "cross-check" on the appropriateness of the percentage fee, but it is not required. *See Thirteen Appeals*, 56 F.3d at 307; *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL

---

*Industries, Inc.*, 2022 WL 17037516, at *1 (D. Conn. Nov. 10, 2022) (awarding 31% of $28 million settlement); *In re Chicago Bridge & Iron Company N.V. Sec. Litig.*, 2022 WL 3220783, at *1 (S.D.N.Y. Aug. 5, 2022) (33.3% of $44 million settlement); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (awarding 30% of $33 million settlement); *Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (awarding 1/3 of $25 million settlement); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.3% of $25 million settlement); *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., and Prods. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *In re Cnova N.V. Sec. Litig.*, 2018 WL 11447878, at *3 (S.D.N.Y. Mar. 20, 2018) (awarding 33.3% of $28.5 million settlement); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 415-18 (S.D.N.Y. 2018) (awarding 25% of $35 million settlement); *Hatamian v. Advanced Micro Devices, Inc.*, 2018 WL 8950656, at *1-2 (N.D. Cal. Mar. 2, 2018) (awarding 25% of $29.5 million settlement); *Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc.*, 2017 WL 11470634, at *1 (S.D.N.Y. Dec. 13, 2017) (awarding 30% of $28 million settlement); *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *4 (N.D. Ill. July 13, 2016) (awarding 30% of $45 million settlement).

2408560, at *1 (D. Mass. Aug. 3, 2009); *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *6 (D. Mass. Aug. 17, 2005).

When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *Tyco*, 535 F. Supp. 2d at 270 (quoting *Thirteen Appeals*, 56 F.3d at 307); *see also In re WorldCom Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (when the lodestar is used as a cross-check on the percentage method of determining reasonable attorneys' fees, "the hours documented by counsel need not be exhaustively scrutinized by the district court"). In this case, the lodestar "cross-check" strongly confirms the reasonableness of the requested fee.

Here, Plaintiff's Counsel spent a total of over 9,000 hours of attorney and para-professional support time prosecuting the Action from its inception through October 31, 2024. ¶ 107. Based on the Plaintiff's Counsel's current rates, their collective lodestar for this period is $5,556,671.25.[4] *Id*. If Litigation Expenses are awarded in the amount sought, the requested 25% fee, net of expenses, will amount to $7,465,663 (before interest) and therefore represents a modest mupltiplier of 1.34 of Plaintiff's Counsel's lodestar.

Plaintiff's Counsel's lodestar is based on their standard hourly rates, which range from $825 to $1,350 for partners and directors, from $400 to $660 for associates, and from $400 to $460 for staff attorneys. Lead Counsel's rates have been approved in other securities class actions and shareholder litigation. *See, e.g.*, *In re FibroGen, Inc., Sec. Litig.*, Case No. 3:21-cv-02623-EMC

---

[4] The Supreme Court and courts in this Circuit approve of using current hourly rates to calculate the base lodestar figure as it helps compensates counsel for the delay in receiving payment and lost interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Cohen v. Brown Univ.*, 2001 WL 1609383, at *1 (D.N.H. Dec. 5, 2001).

6

(N.D. Cal. Aug. 1, 2024), ECF No. 259 (Ex. 7F) (approving fee based on lodestar cross-check using Saxena White's 2024 rates); *In re James River Group Holdings, Ltd. Sec. Litig*., Case No. 3:21-cv-00444-DJN (E.D. Va. May 24, 2024), ECF No. 131 (Ex. 7G) (approving fee based on lodestar cross-check using BLB&G and Saxena White's 2024 rates); *In re SolarWinds Corp. Sec. Litig*., Case No. 1:21-cv-00138-RP (W.D. Tex. July 28, 2023), ECF No. 111 (Ex. 7H) (approving fee based on lodestar cross-check using BLB&G's 2023 rates); *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp*., Case No. 2:20-cv-00856-RDP (N.D. Ala. Jan. 17, 2024), ECF No. 171 (Ex. 7I) (same, using Saxena White's 2023 rates); *Hayden v. Portola Pharms. Inc*., Case No. 3:20-cv-00367-VC (N.D. Cal. Mar. 6, 2023), ECF No. 259 (Ex. 7J) (same); *Fulton County Employees' Ret. Sys. v. Blankfein*, Case No. 1:19-cv-01562-VSB (S.D.N.Y. Jan. 20, 2023), ECF No. 106 (Ex. 7K) (same); *In re Novo Nordisk Sec. Litig*., Case No. 3:17-cv-00209-ZNQ-LHG (D.N.J. July 13, 2022), ECF No. 361 (Ex. 7L) (same, using BLB&G and Saxena's 2022 rates); *Godinez v. Alere, Inc*., No. 1:16-cv-10766-PBS, slip op. at 1 (D. Mass. June 6, 2019), ECF No. 283 (Ex. 7C) (awarding 28% of $20 million settlement, based on application using BLB&G's 2019 rates in lodestar); *see also* Ex. 5A, at ¶ 5 and Ex. 5B at ¶ 5 (listing cases approving fees based on BLB&G's and Saxena White's rates).

The reasonableness of Plaintiff's Counsel's rates is further underscored by the significantly higher rates typically charged by Defendants' Counsel in this case. For example, in 2023 in a bankruptcy action, counsel for Defendants here, Goodwin Procter LLP, billed $1,250 to $2,150 for partners and $710 to $1,175 for associates. *See In re: Party City Holdco, Inc., et al., Debtors*, Case No. 23-90005 (DRJ), Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Goodwin Procter LLP as Attorneys for the Audit Committee of Party City Holdco Inc., at ¶ 15 (Bankr. S.D. Tex. Apr. 27, 2023), ECF No. 927 (Ex. 7M). Defendants' prior

7

counsel, Skadden, Arps, Slate, Meagher & Flom LLP, have recently claimed hourly rates of $1,860 to $2,370 for partners, $1,580 to $1,800 for "Counsel," and $675 to $1,510 for associates. *See In re LL Flooring Holdings, Inc., et al., Debtors,* No. 24-11680-BLS, Application of the Debtors for Entry of an Order (I) Authorizing the Retention and Employment of Skadden, Arps, Slate, Meagher & Flom LLP as Counsel to the Debtors Effective as of the Petition Date and (II) Granting Related Relief, at ¶ 18 (Bankr. D. Del. Aug. 23, 2024), ECF No 127 (Ex. 7N). These rates are substantially higher—at all levels—than the rates used by Plaintiff's Counsel to calculate their lodestar.

In class actions with significant contingency risks, fees representing a reasonable multiplier on the base lodestar are typically awarded to reflect those risks and meritorious work. The requested 1.34 multiplier on Plaintiff's Counsel's lodestar here is at the lower end of the range of multipliers commonly awarded in securities and other complex class actions. *See, e.g., Ford v. Takeda Pharms. U.S.A. Inc*., 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023) ("To compensate for the risk of non-payment and to reflect the scale of the results achieved by prevailing counsel, a multiplier of the lodestar rate may be used" and applying a multiplier of 2.41, which the court noted was "well within the range of multipliers approved by district courts in the First Circuit"); *Tyco*, 535 F. Supp. 2d at 271 (2.7 multiplier); *Relafen*, 231 F.R.D. at 82 (2.02 multiplier); *Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (1.96 multiplier). In addition, Lead Counsel will continue to expend additional hours following the approval of the Settlement, overseeing the Claims Administrator's processing of claims received and the distribution to eligible claimants, but will not seek any further fees—which will further reduce Plaintiff's Counsel's effective multiplier.

8

In sum, whether calculated as a percentage of the recovery or using a lodestar "cross-check," the requested fee is well within—indeed, on the lower end of—the range of fees awarded by courts in securities class actions and is fair and reasonable.

## III.    FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

Although the First Circuit has not set forth a definitive list of factors to be considered in evaluating a fee request under the percentage-of-the-fund method, District Courts within this Circuit have typically assessed the reasonableness of proposed fees by considering the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

*See Hill v. State Street Corp.*, 2015 WL 127728, at *17 (D. Mass. Jan. 8, 2015); *Lupron*, 2005 WL 2006833, at *3; *Relafen*, 231 F.R.D. at 79.  Consideration of these factors further confirms that the fee requested here is reasonable.

### A.    The Amount of the Recovery

The $30 million Settlement is a significant recovery for the Settlement Class, which is more than twice the size of the median securities class-action settlement in the First Circuit from 2014 to 2023 ($14.1 million).  *See* CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENTS: 2023 REVIEW AND ANALYSIS (2024) (Ex. 4), at 20.  The $30 million Settlement is particularly significant because, at the time of settlement, Cerence's financial condition had deteriorated substantially, and its market capitalization was less than $150 million—meaning that the $30 million Settlement represents more than 20% of the <u>entire market value</u> of the Company. ¶ 84.  And further, the Settlement recovers the vast majority of Defendants' remaining available

9

insurance, which would only waste further in continued litigation. As such, the $30 million Settlement represents an outstanding result in light of the potential financial risks to a meaningfully larger recovery.

Moreover, the $30 million Settlement is a favorable result in relation to the maximum amount of damages that could be reasonably established at trial. Even assuming Lead Plaintiff prevailed on all liability issues, its damages expert had determined that that maximum reasonably recoverable damages at trial would be approximately $430 million. ¶ 82. And there was a significant risk that the second and/or third alleged corrective disclosures could have been eliminated at class certification, summary judgment, or trial. If both of those corrective disclosures had been eliminated, Lead Plaintiff's damages expert calculated that maximum recoverable damages would be just $82 million. ¶ 83.

Accordingly, the Settlement here represents at least 7% and as much as 37% of maximum recoverable damages—a level of recovery that is well above the typical percentage recoveries seen in comparable cases. *See, e.g., Howard v. Liquidity Servs. Inc.*, 2018 WL 4853898, at *5 (D.D.C. Oct. 5, 2018) (taking into account risks to maximum damages calculation and finding that a "settlement that ranges from approximately 4 percent to 14 percent of potentially recoverable damages compares favorably with other similar securities class-action settlements."); *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016) (approving settlement recovering 5.33% of maximum damages and noting that it was "well above the median percentage of settlement recoveries in comparable securities class action cases"). *See also In re Merrill Lynch & Co. Inc. Res. Reports Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (settlement representing 6.25% of estimated maximum damages was at the "higher end of the range of reasonableness of recovery in class action[] securities litigations").

10

In sum, the Settlement achieved by Lead Counsel here represents an excellent recovery for the Settlement Class, and strongly supports the reasonableness of the requested 25% fee.

## B.     The Skill and Experience of Counsel

Courts have long recognized that "the prosecution and management of a complex national class action requires unique legal skills and abilities," which is "particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *13 (C.D. Cal. Apr. 23, 2024). This case was no exception.  Lead Counsel's skill in investigating and drafting the Complaint and in opposing Defendants' motion to dismiss led to the case being sustained in part, notwithstanding the case's challenging fact pattern and the Court's finding that falsity was a "close call" for the sustained misstatements. Additionally, Lead Counsel's skill during discovery and mediation brought about a prompt and significant recovery for the Settlement Class.

Lead Counsel respectfully submit that their firm résumés confirm that BLB&G and Saxena White are among the nation's leading securities class action firms, and Liaison Counsel are highly credentialed and experienced litigators  who have repeatedly been recognized by courts nationwide for expertise in successfully prosecuting securities class actions.  *See* Exs. 5A-3, 5B-3 (Saxena White and BLB&G firm resumes); *see also*, *e.g.*, *In re Qualcomm Inc. Sec. Litig.*, 7-CV-00121-JO-MSB Transcipt, at 9 (S.D. Cal. Sept. 27, 2024) (approving $75 million settlement obtained by BLB&G and noting that "the motion practice, the concepts, the issues, the expert analysis—all very complex, high-level, with an excellent job [by counsel] on both sides"); *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *8 (D. Del. Nov. 19, 2018) (approving $210 million settlement, noting Saxena White is "highly experienced" and that "the significant amount of recovery in the settlement agreements attests to their efficiency"); *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 2021 WL 2981970, at *2-4 (D. Colo. July 15, 2021) (approving $135

11

million settlement and recognizing the "efforts expended by [Saxena White]"); *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, 2022 WL 2093054, at *2 (D. Minn. June 10, 2022) (approving $63 million settlement and noting that Saxena White "conducted the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy").

Courts also recognize that the quality of the opposing counsel is also a factor in assessing the quality of plaintiffs' counsel's performance. *See, e.g., Noto v. 22nd Century Grp., Inc.*, 2023 WL 7107840, at *11 (W.D.N.Y. Oct. 17, 2023). Here, Defendants were represented by Skadden Arps Slate Meagher & Flom LLP (up until discovery), and subsequently by Goodwin Procter LLP, both of which are top-tier defense firms. Despite this formidable opposition, Lead Counsel's thorough investigation, successful opposition to Defendants' motion to dismiss, and significant discovery efforts positioned Lead Plaintiff to achieve a favorable recovery for the Settlement Class. Thus, this factor also strongly supports the requested fee. *See also Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) (plaintiffs' counsel's success in the face of "formidable legal opposition" confirmed the superior quality of their representation); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *15 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (in approving fee request, taking into account that defense counsel "presented arguments and defenses that required considerable legal skill to rebut").

### C.    The Complexity and Duration of the Litigation

This litigation was complex and vigorously litigated by both Lead Plaintiff and Defendants. Courts have long recognized that "securities actions are highly complex" and that securities class litigation is notably difficult and notoriously uncertain. *Hessefort v. Super Micro Computer, Inc.*, 2023 WL 7185778, at *8 (N.D. Cal. May 5, 2023); *see also Aeropostale, Inc.*, 2014 WL 1883494,

12

at \*16 ("the complex and multifaceted subject matter involved in a securities class action such as this supports the fee request").

This action was no exception. Lead Counsel conducted an extensive investigation even before the commencement of discovery, which included reviewing numerous SEC filings, investor call transcripts, analyst reports, and news articles about the Company, as well as identifying, contacting, and interviewing dozens of former Cerence employees.

Once discovery commenced, Lead Counsel reviewed and analyzed approximately 100,000 pages of documents preceding mediation to develop a full understanding of the case. The effective prosecution and resolution of the action required Lead Counsel to develop in-depth understanding of Cerence's business, including the intricacies of specific variable and fixed deals, and the Company's relationships with key customers, and to consult with experts in financial economics and accounting. Lead Counsel's successful navigation of these complexities further supports their requested fee award.

### D.    The Risks of the Litigation

The substantial risks of this Action and the fully contingent nature of Plaintiff's Counsel's fees are also important factors supporting the requested 25% fee. "Many cases recognize that the risk [of non-payment] assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award." *Lupron*, 2005 WL 2006833, at \*4. Indeed, "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).

As noted above and in the Joint Declaration (¶¶ 61-86), Lead Counsel faced significant risks to establishing liability and damages. Some of those risks had already been realized when the Court dismissed the vast majority of the alleged misstatements in ruling on the motion to

13

dismiss, including all statements by Defendant Dhawan.  Additionally, the Court described falsity for the remaining statements in the Action as a "close call [that] would be scrutinized closely for purposes of any summary judgment motion."  ¶ 71.  And Defendants vigorously denied that the remaining statements were false or misleading when made because, *inter alia*, Defendants disclosed the amount of Cerence's revenue from fixed contracts each quarter.  Thus, Lead Plaintiff would face real challenges in proving their falsity and materiality at trial.  *Id.*  Moreover, Lead Plaintiff also faced challenges in proving scienter for the remaining alleged misstatements— including because, as Defendants argued throughout this case, the statements may have reflected Defendants' sincerely held beliefs at the time about the Company's intentions for dealing with fixed contracts.  ¶¶ 72-73.  And Lead Plaintiff would have faced challenges in proving loss causation for some or all of the three alleged corrective disclsoures—including because Defendants would likely argue that the second and third corrective disclosures were unrelated to the alleged fraud.  ¶¶ 75-76.

Despite these significant risks, Lead Counsel devoted enormous resources to the vigorous and effective prosecution of the case on a wholly contingent basis, knowing that the litigation could last for years and would require them to advance significant litigation costs—all with no assurance of any compensation.  Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee.  *See CVS Caremark*, 2016 WL 632238, at *9 ("Where, as here, lead counsel undertook this action on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel."); *TJX*, 2016 WL 8677312, at *13 (fact that "Class Counsel took the case on a contingency fee basis, assuming significant risk in litigating the case" strongly supported the fee award).

14

### E.    The Amount of Time Devoted to the Litigation by Plaintiff's Counsel

The extensive time and effort expended by Plaintiff's Counsel on this case also supports the requested fee. *See Hill*, 2015 WL 127728, at *19. As noted above, in total, Plaintiff's Counsel expended more than 9,000 hours, with a total lodestar value of over $5.5 million, on the investigation, litigation, and resolution of this action through October 31, 2024. ¶ 107. This significant effort, which culminated in the excellent result embodied in the Settlement, further confirms that the requested fee is fair and reasonable.

### F.    Awards in Similar Cases

As discussed above, a 25% fee is well within the range of fee awards in class actions in this Circuit and across the country with comparable recoveries. *See* Section II, *supra*. Thus, this factor strongly supports the reasonableness of the requested fee.

### G.    Public Policy Considerations

Public policy also supports rewarding firms that bring successful securities class actions. The Supreme Court has recognized that such actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *9 (S.D.N.Y. Sept. 29, 2022) (same). As such, "[c]ompensating plaintiffs' counsel for their risks is crucial, because [s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *15 (S.D.N.Y. July 21, 2020)

Accordingly, public policy also favors granting the requested fee here. *See CVS Caremark*, 2016 WL 632238, at *9 ("public policy supports rewarding counsel for prosecuting securities class actions, especially where counsel's dogged efforts [were] undertaken on a wholly contingent basis); *Hill*, 2015 WL 127728, at *19 ("public policy favors granting reasonable attorneys' fees .

15

. . that will adequately compensate [counsel] for their efforts and the risks they undertook"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*29 (S.D.N.Y. Nov. 8, 2010).

###### H.    Lead Plaintiff Has Approved the Requested Fee

Lead Plaintiff, an experienced, sophisticated institutional investor that has successfully prosecuted numerous securities class actions, was actively involved in supervising this Action and has approved the fee request as fair and reasonable based on the results obtained despite significant litigation risk.  *See* Ryals Decl. (Ex. 1), at ¶¶ 3-8.  Lead Plaintiff's approval of the fee request further confirms the fairness and reasonableness of the requested fee.  The PSLRA sought to encourage institutional investors, as Mississippi is here, to become active as lead plaintiffs to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at \*32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731.  Congress believed that these institutions, which have a substantial financial stake in the action, would be in a strong position to monitor the ongoing prosecution of the litigation and to assess the reasonableness of counsel's fee request.  *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 43 (D. Mass. 2001).

Accordingly, Lead Plaintiff's approval further supports the requested fee.  *See CVS Caremark*, 2016 WL 632238, at \*9 (lead plaintiffs' approval supported finding that fee request was reasonable); *Hill*, 2015 WL 127728, at \*19 (same).

###### I.    The Reaction of the Settlement Class to Date

The reaction of the Settlement Class to date also supports the fee request.  As of November 11, 2024, the Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), has disseminated the Notice to 57,080 potential Settlement Class Members and nominees informing them of Lead Counsel's intention to apply to the Court for an award of attorneys' fees not to exceed 25% of the Settlement

Fund and payment of Litigation Expenses up to $300,000. *See* Declaration of Eric Miller Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date (Ex. 2) ("Miller Decl."), at ¶ 11, and Ex. A at ¶¶ 5, 51. In addition, on October 14, 2024, A.B. Data caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over the *PR Newswire*. *See id*. ¶ 13. Although the time to object does not expire until November 25, 2024, to date, no objections to the request for attorneys' fees and expenses have been received. Joint Decl. ¶¶ 117, 127. Lead Counsel will address any objections that may be received in their reply papers to be filed with the Court on December 9, 2024.

## IV.   THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's fee application includes a request for $129,748.20 in litigation expenses incurred by Plaintiff's Counsel that were reasonably incurred and necessary to the prosecution of the Action. ¶ 119. These expenses are properly recoverable. *See In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund . . . expenses, reasonable in amount, that were necessary to bring the action to a climax"); *Hill*, 2015 WL 127728, at *20 ("Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation.").

The types of expenses for which Lead Counsel seeks payment are routinely charged to both classes in contingent litigation as well as to clients billed by the hour. These expenses include, among others, costs and fees for consulting experts, online legal and factual research, filing fees, court-reporting services, costs related to the production and storage of electronic discovery, travel

17

costs, and mediation fees. ¶¶ 121-125. Moreover, from the outset, Lead Counsel knew that they might not recover any of these expenses or, at the very least, would not recover anything until the Action was successfully resolved. Thus, Lead Counsel were motivated to, and did, take significant steps to minimize these expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the action. ¶ 120.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of litigation expenses for all Plaintiff's Counsel in an amount not to exceed $300,000. The amount of expenses requested, $137,348.20 (including $129,748.20 in Litigation Expenses incurred by Plaintiff's Counsel and $7,600.00 sought by Lead Plaintiff), is below the amount listed in the Notice and, to date, there has also been no objection. ¶ 127.

## V.    LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE COSTS AND EXPENSES PURSUANT TO § 78u-4(a)(4) OF THE PSLRA

The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).

As detailed in the declaration submitted from Laken Ryals, Special Assistant Attorney General of Mississippi, Lead Plaintiff Mississippi Public Employees Retirement System ("Mississippi") seeks a PSLRA award in the amount of $7,600 in reimbursement for the value of the time that the employees of Mississippi and Mississippi's Office of the Attorney General ("OAG") dedicated to the Action. Here, Lead Plaintiff took a very active role in the litigation and has been fully committed to pursuing the class's claims. Among other things, Mississippi's representatives (i) participated in numerous discussions with Lead Counsel about the prosecution of the case and the strengths of the claims; (ii) reviewed and commented on significant pleadings and briefs; (iii) participated in discovery, including assisting in responding to Defendants' requests

18

for production of documents and interrogatories; (iv) were closely involved in mediation efforts and approving settlement strategies; and (v) evaluated and approved the proposed Settlement for $30,000,000.00 in cash  *See* Ryals Decl. ¶¶ 6, 9-10.  The time spent on these activities was time that these employees could not engage in their normal duties and, thus, represented a cost to Mississippi and the OAG.  *Id*. ¶ 9.  Efforts such as these are the very types of activities that courts routinely find to support PSLRA awards to class representatives.  *See, e.g., In re Marsh & McLennan Cos. Sec. Litig*., 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding over $200,000 to lead plaintiffs to compensate them for employees' time, as their efforts reflected "precisely the types of activities" that merited PSLRA awards).

Lead Plaintiff thus respectfully requests that the Court award $7,600 to Lead Plaintiff for its expenses incurred in representing the Settlement Class.  *See, e.g.*, *Godinez v. Alere Inc*., No. 1:16-cv-10766-PBS, slip op. at 1 (D. Mass. June 6, 2019), ECF No. 283 (Ex. 7C) (awarding PSLRA award of $30,000 each to two lead plaintiffs); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 2012 WL 6184269, at *2 (D. Mass. Dec. 10, 2012) (reimbursing institutional lead plaintiffs a total of $54,626 for the time their employees spent on the case); *Ahearn v. Credit Suisse First Boston LLC*, No. 03-CV-10956 (JLT), slip op. at 5-6 (D. Mass. June 7, 2006), ECF No. 82 (Ex. 7O) (awarding total of $35,000 to two lead plaintiffs); *see also Public Employees' Ret. Sys. of Miss. v. Mohawk Industries, Inc*., No. 4:20-cv-00005-WMC, slip op. at 5 (N.D. Ga. May 31, 2023), ECF No. 138 (Ex. 7P) (awarding PSLRA award of $32,450); *In re Jeld-Wen Holding, Inc. Sec. Litig*., No. 3:20-cv-00112-JAG, slip op. at 2 (E.D. Va. Nov. 22, 2021), ECF No. 300 (Ex. 7Q) (awarding PLSRA award of $23,350).

**CONCLUSION**

For the foregoing reasons, Lead Counsel respectfully request that the Court award (i) attorneys' fees to Plaintiff's Counsel of 25% of the Settlement Fund, net of expenses, plus

19

interest accrued at the same rate as earned by the Settlement Fund; (ii) payment of $129,748.20 in

Plaintiff's Counsel's litigation expenses; and (iii) $7,600 to Lead Plaintiff pursuant to 15 U.S.C.

§ 78u-4(a)(4).

DATED: November 11, 2024                         Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**                    **SAXENA WHITE P.A.**
  **& GROSSMANN LLP**

/s/ *John Rizio-Hamilton*                        /s/ *Steven B. Singer*
John Rizio-Hamilton (*pro hac vice*)             Steven B. Singer (*pro hac vice*)
Hannah Ross (*pro hac vice*)                     Joshua H. Saltzman (*pro hac vice*)
Alec T. Coquin (*pro hac vice*)                  Sara DiLeo (*pro hac vice*)
Mathews R. de Carvalho (*pro hac vice*)          10 Bank Street, 8th Floor
1251 Avenue of the Americas                      White Plains, New York 10606
New York, New York 10020                         (914) 437-8551
(212) 554-1400                                   ssinger@saxenawhite.com
johnr@blbglaw.com                                jsaltzman@saxenawhite.com
hannah@blbglaw.com                               sdileo@saxenawhite.com
alec.coquin@blbglaw.com
mathews.decarvalho@blbglaw.com

Jonathan D. Uslaner (*pro hac vice*)             Maya Saxena
2121 Avenue of the Stars, Suite 2575             Joseph E. White III (BBO #648498)
Los Angeles, CA 90067                            7777 Glades Road, Suite 300
(310) 819-3470                                   Boca Raton, Florida 33434
jonathanu@blbglaw.com                            (561) 394-3399
                                                 msaxena@saxenawhite.com
                                                 jwhite@saxenawhite.com

*Lead Counsel for Lead Plaintiff Public*
*Employees' Retirement System of Mississippi*

**DAVIDSON BOWIE, PLLC**
John L. Davidson (*pro hac vice*)
1062 Highland Colony Parkway
200 Concourse, Suite 275
Ridgeland, Mississippi 39157
(601) 932-0028
jdavidson@dbslawfirm.net

*Additional Counsel for Lead Plaintiff Public*
*Employees' Retirement System of Mississippi*

20