# Exhibit 3



# CORNERSTONE RESEARCH
Economic and Financial Consulting and Expert Testimony

# Securities Class Action Filings

2023 Year in Review

# Table of Contents

| | |
|---|---|
| Executive Summary | 1 |
| Key Trends in Federal and State Filings | 2 |
| Featured: Annual Rank of Filing Intensity | 3 |
| Combined Federal and State Filing Activity | 4 |
| Summary of Core Federal Trend Filings | 5 |
| Status of Core Federal Filings by Trend Category | 6 |
| Summary of Federal Cryptocurrency-Related Filings | 9 |
| Federal SPAC Filing Allegations | 10 |
| Market Capitalization Losses for Federal and State Filings | 11 |
| Mega Filings | 14 |
| Classification of Federal Complaints | 15 |
| U.S. Exchange-Listed Companies | 16 |
| Heat Maps: S&P 500 Securities Litigation™ for Federal Core Filings | 17 |
| Status of Core Federal Securities Class Action Filings | 19 |
| 1933 Act Filings in State Courts | 20 |
| Dollar Loss on Offered Shares™ (DLOS Index™) in Federal Section 11–Only and State 1933 Act Filings | 21 |
| Type of Security Issuance Underlying Federal Section 11 and State 1933 Act Filings | 22 |
| IPO Activity and Federal Section 11 and State 1933 Act Filings | 23 |
| Lag between IPO and Federal Section 11 and State 1933 Act Filings | 24 |
| Non-U.S. Core Federal Filings | 25 |
| Industry Comparison of Core Filings | 26 |
| Core Federal Filings by Circuit | 27 |
| Status of Core Federal Filings by Plaintiff Counsel | 28 |
| Filings Referencing Short-Seller Reports by Plaintiff Counsel | 29 |
| New Developments | 30 |
| Glossary | 31 |
| Additional Notes to Figures | 33 |
| Appendices | 35 |
| Research Sample | 41 |

# Table of Figures

Figure 1: Federal and State Class Action Filings Summary                                                                    1

Figure 2: Annual Rank of Measurements of Federal and State Filing Intensity                                                 3

Figure 3: Federal Filings and State 1933 Act Filings by Venue                                                              4

Figure 4: Summary of Trend Filings—Core Federal Filings                                                                    5

Figure 5: Status of Core Federal Cryptocurrency-Related Filings                                                            6

Figure 6: Status of Core Federal SPAC Filings                                                                              7

Figure 7: Status of Core Federal COVID-19-Related Filings                                                                   8

Figure 8: Summary of Cryptocurrency-Related Filings—Core Federal Filings                                                    9

Figure 9: Federal SPAC Filing Allegations                                                                                  10

Figure 10: Disclosure Dollar Loss Index® (DDL Index®)                                                                      11

Figure 11: Median Disclosure Dollar Loss                                                                                   12

Figure 12: Maximum Dollar Loss Index® (MDL Index®)                                                                         13

Figure 13: Mega Filings                                                                                                    14

Figure 14: Allegations Box Score—Core Federal Filings                                                                      15

Figure 15: Percentage of U.S. Exchange-Listed Companies Subject to Federal or State Filings                                16

Figure 16: Heat Maps of S&P 500 Securities Litigation™ Percentage of Companies Subject to Core Federal Filings              17

Figure 17: Heat Maps of S&P 500 Securities Litigation™ Percentage of Market Capitalization Subject to Core Federal Filings  18

Figure 18: Status of Filings by Year—Core Federal Filings                                                                  19

Figure 19: State 1933 Act Filings by State                                                                                 20

Figure 20: Dollar Loss on Offered Shares™ (DLOS Index™) for Federal Section 11–Only and State 1933 Act Filings             21

Figure 21: Federal Section 11 and State 1933 Act Class Action Filings by Type of Security Issuance                          22

Figure 22: Number of IPOs on Major U.S. Exchanges and Number of Filings of Federal Section 11 and State 1933 Act Claims    23

Figure 23: Lag between IPO and Federal Section 11 and State 1933 Act Filings                                               24

Figure 24: Annual Number of Class Action Filings by Location of Headquarters—Core Federal Filings                          25

Figure 25: Filings by Industry—Core Filings                                                                                26

Figure 26: Filings by Circuit—Core Federal Filings                                                                         27

Figure 27: Status by Plaintiff Law Firm of Record—Core Federal Filings                                                     28

Figure 28: Core Federal Filings Referencing Short-Seller Reports by Plaintiff Counsel                                      29

Appendix 1: Basic Filings Metrics                                                                                          35

Appendix 2A: S&P 500 Securities Litigation—Percentage of S&P 500 Companies Subject to Core Federal Filings                 36

Appendix 2B: S&P 500 Securities Litigation—Percentage of Market Capitalization of S&P 500 Companies Subject to Core
Federal Filings                                                                                                           36

| Appendix 3: M&A Federal Filings Overview | 37 |
|---|---|
| Appendix 4: Status by Year—Core Federal Filings | 37 |
| Appendix 5: Filings by Industry—Core Filings | 38 |
| Appendix 6: Filings by Circuit—Core Federal Filings | 39 |
| Appendix 7: Filings by Exchange Listing—Core Federal Filings | 39 |
| Appendix 8: Cryptocurrency-Related Filings by Cryptocurrency Classification—Core Federal Filings | 40 |

# Executive Summary

Overall filing volume increased slightly in 2023 to 215 filings from 208 in 2022. The number of "core" filings—those excluding M&A filings—also increased slightly. The size of core filings when measured by Maximum Dollar Loss (MDL) rose 27%, but when measured by Disclosure Dollar Loss (DDL) fell 46%.[1]

The number of 1933 Act filings in state courts plummeted in 2023, falling to the lowest level since 2014. The combined number of federal Section 11 and state 1933 Act filings decreased 62% from 50 filings in 2022 to 19 filings in 2023. The number of special purpose acquisition company (SPAC), COVID-19-related, and cryptocurrency-related filings fell in 2023, and the 2023 Banking Turbulence trend category emerged.[2]

## Number and Size of Filings

- Plaintiffs filed 215 **new securities class action filings** (filings) in 2023, despite a large decline in **federal Section 11** and state filings with **claims under the Securities Act of 1933** (1933 Act). (page 4)

- The **DDL Index** fell by nearly half from $618 billion in 2022 to $335 billion in 2023, returning to 2019–2021 levels. The **MDL Index** increased to $3.2 trillion, the second-highest amount on record. (pages 11, 13, and 14)

- Both the total number of initial public offerings (**IPOs**) and filings with 1933 Act claims fell in 2023, declining to their lowest points in the past 14 and 10 years, respectively. (pages 4 and 23)

*While the number of core filings increased slightly in 2023, DDL dropped by 46% and MDL rose by 27%.*

Figure 1: Federal and State Class Action Filings Summary
(Dollars in 2023 billions)

| | Annual (1997–2022) | | | 2022 | 2023 |
|---|---|---|---|---|---|
| | Average | Maximum | Minimum | | |
| Class Action Filings | 227 | 427 | 120 | 208 | 215 |
| *Core Filings* | *192* | *267* | *120* | *201* | *209* |
| Disclosure Dollar Loss (DDL) | $226 | $618 | $72 | $618 | $335 |
| Maximum Dollar Loss (MDL) | $1,083 | $3,480 | $278 | $2,531 | $3,209 |

Note: This figure presents data on a combined federal and state filings basis. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. As a result, this figure's filing counts may not match those in Figures 4–9, 14, 16–21, 24, and 26–28, or Appendices 2–4 and 6–9. See Additional Notes to Figures for Counts and Totals Methodology.

[1] Reported MDL, DDL, and Dollar Loss on Offered Shares (DLOS) numbers are inflation-adjusted to 2023 dollars and will not match prior reports.

[2] 2023 Banking Turbulence filings include allegations related to a series of bank failures that occurred in rapid succession, beginning with Silvergate Bank on March 8, 2023. The initial complaint against Silvergate Capital Corporation, parent company of Silvergate Bank, was filed on December 7, 2022; the amended complaint was filed on May 11, 2023.

# Key Trends in Federal and State Filings

In 2023, MDL was the second highest on record while DDL decreased by 46%. The combined number of federal Section 11 and state 1933 Act filings fell to the lowest level in the last 10 years. The share of core federal filings related to SPACs, COVID-19, and cryptocurrency fell to less than 20% in 2023, and the 2023 Banking Turbulence trend category emerged.

## Section 11 and M&A Filings

- The number of class action filings increased slightly despite a large decline in **federal Section 11 and state 1933 Act filings**. (page 4)

- The number of state court–only filings (two) was the lowest number since 2014. (page 4)

- Core federal filings without Section 11 allegations increased 26% to 190 in 2023 from 151 in 2022, while federal **M&A filings** (six) remained low. (page 4)

## Mega Filings

- There were 44 **mega MDL filings** in 2023 with a **total mega MDL** of $2.9 trillion, a 30% increase from $2.2 trillion in 2022 and the second-highest value on record. (page 14)

- There were 16 **mega DDL filings** in 2023, down from 18 in 2022. **Total mega DDL** decreased 60% from $529 billion to $211 billion, nearly returning to 2021 levels. (page 14)

## Core SPAC Filings

- **Core SPAC filings** fell by 39%, from 28 in 2022 to 17 in 2023—about half of the peak of 33 filings in 2021. (page 5)

- From 2019 to 2022, 35% of **core SPAC filings** were resolved, just over half of the **resolution rate** for all other core federal filings. (page 7)

## Cryptocurrency-Related Filings

- **Cryptocurrency-related filings** fell by 39% from the peak in 2022. Eleven of the 14 cryptocurrency-related filings in 2023 were filed in 2023 H1. (page 5)

- Filings involving **allegations against an exchange** accounted for seven of the 14 (50%) total cryptocurrency-related filings in 2023. (page 9)

## Trend Filings

- Nine securities class actions related to the **2023 Banking Turbulence** were filed (one in 2022 H2 and eight in 2023), representing a new emerging trend category. (page 5)

- **COVID-19-related filings** fell by 50% from the peak of 20 filings in 2022 to 10 filings in 2023, the lowest yearly total since the pandemic began in 2020. (page 5)

## By Industry

- Total DDL in the **Communications sector** decreased eightfold from the record high in 2022. (page 26)

- The number of filings in the **Financial sector** more than doubled relative to that in 2022, accounting for 12% of filings in 2023, driven in part by the turbulence in the banking industry in early 2023. (page 26)

## By Circuit

- Core federal filings in the **Second Circuit** declined for the second consecutive year, falling to 50 in 2023, below the 1997–2022 annual average of 56. (page 27)

- The **Ninth Circuit** made up 32% of all core federal filings in 2023, while accounting for 56% of total federal MDL. (page 27)

## U.S. Issuers

- The percentage of **U.S. exchange-listed companies** subject to filings increased slightly to 3.3%, but is still the second lowest since 2012 and below the 1997–2022 annual average of 3.9%. Similarly, the percentage of these companies subject to core filings in 2023 decreased to its second-lowest point in the last 10 years (3.2%). (page 16)

- The likelihood of an **S&P 500 company** being the subject of a core federal filing nearly doubled year-over-year to 7.1%. (pages 17–18)

# Featured: Annual Rank of Filing Intensity

- In 2023, total DDL fell by 46% from the record high in 2022.

- The MDL Index reached $3.2 trillion in 2023, the second-highest amount on record, increasing by 27% from 2022.

*While the number of core filings in 2023 increased slightly relative to that in 2022, DDL dropped by 46% and MDL rose by 27%.*

- The number of 1933 Act filings in state and federal courts plummeted to the lowest number since 2013, decreasing 62% relative to the number in 2022.

- The number of M&A filings decreased 14% to the lowest level on record.

- The rate of filings against U.S. exchange-listed companies remained consistently low in 2023.

- The percentage of S&P 500 companies subject to a core filing almost doubled from 3.8% in 2022 to 7.1% in 2023, reaching a level not seen since 2019.

Figure 2: Annual Rank of Measurements of Federal and State Filing Intensity

| | 2021 | 2022 | 2023 |
|---|---|---|---|
| **Number of Total Filings** | 10th | 15th | 13th |
| Core Filings | 14th | 13th | 10th |
| M&A Filings | 9th | 13th | 15th |
| **Size of Core Filings** | | | |
| Disclosure Dollar Loss | 10th | 1st | 7th |
| Maximum Dollar Loss | 12th | 4th | 2nd |
| **Percentage of U.S. Exchange-Listed Companies Sued** | | | |
| Total Filings | 7th | 15th | 12th |
| Core Filings | 6th | 16th | 11th |
| **Percentage of S&P 500 Companies Subject to Core Federal Filings** | 21st | 16th | 6th |

Note: This figure presents combined federal and state data in the rankings in all categories beginning in 2010, except the Percentage of S&P 500 Companies Subject to Core Federal Filings, which excludes state data. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. As a result, the filing counts determining the rankings in this figure may not match those in Figures 4–9, 14, 16–21, 24, and 26–28, or Appendices 2–4 and 6–9. Rankings cover 1997 through 2022 with the exceptions of M&A filings, which have been tracked as a separate category since 2009, and analysis of the litigation likelihood of S&P 500 companies, which began in 2001. M&A filings are securities class actions filed in federal courts that have Section 14 claims, but no Rule 10b-5, Section 11, or Section 12(a) claims, and involve merger and acquisition transactions. Core filings are all state 1933 Act class actions and all federal securities class actions excluding those defined as M&A filings.

# Combined Federal and State Filing Activity

- Plaintiffs filed 215 new securities class actions in federal and state courts in 2023, slightly more than in 2022 (208 filings).

- The combined number of federal Section 11 and state 1933 Act filings decreased 62% from 50 filings in 2022 to 19 filings in 2023.

*The number of filings increased slightly despite a large decline in federal Section 11 and state 1933 Act filings.*

- In 2023, core federal filings without Section 11 allegations, including Section 10(b)–only filings, increased 26% to 190 from 151 in 2022. This increase more than compensated for the large decline in Section 11 filings.

- The number of state court–only filings dropped from 11 in 2022 to two in 2023, an 82% decrease.

- Federal court–only filings made up 84% of federal Section 11 and state 1933 Act filings in 2023, the highest share in the last 10 years. This share has continued to increase from 66% in 2021 and 74% in 2022.

- Federal M&A filing activity remained low (six filings).

Figure 3: Federal Filings and State 1933 Act Filings by Venue 2014–2023



| Federal Section 11 and State 1933 Act Filings | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| Federal Courts Only | 21 | 21 | 12 | 11 | 9 | 13 | 13 | 23 | 37 | 16 |
| State Courts Only | 2 | 11 | 13 | 3 | 16 | 28 | 14 | 7 | 11 | 2 |
| Parallel Filings | 3 | 6 | 14 | 13 | 16 | 25 | 8 | 5 | 2 | 1 |
| Total | 26 | 38 | 39 | 27 | 41 | 66 | 35 | 35 | 50 | 19 |

Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse; Bloomberg Law; Institutional Shareholder Services' Securities Class Action Services (ISS' SCAS)

Note: This figure presents combined federal and state data. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. As a result, this figure's filing counts may not match those in Figures 4–9, 14, 16–21, 24, and 26–28, or Appendices 2–4 and 6–9. See Additional Notes to Figures for more detailed information and Counts and Totals Methodology.

# Summary of Core Federal Trend Filings

This figure highlights recent trend categories that have appeared in core federal filing activity. See the Glossary for the definition of a trend category.

- The number of filings in the top three trend categories—SPAC (17 filings), cryptocurrency (14 filings), and COVID-19 (10 filings)—comprised less than 20% of core federal filings in 2023, down from 35% in 2022.

- Core SPAC filings fell by 39%, from 28 in 2022 to 17 in 2023—about half of the peak of 33 filings in 2021.

- Cryptocurrency-related filings fell by 39% from the peak in 2022 to a level in line with 2020 and 2021. Eleven of the 14 cryptocurrency-related filings in 2023 were filed in 2023 H1.

- COVID-19-related filings fell by 50% from the peak of 20 filings in 2022 to 10 filings in 2023, the lowest yearly total since the pandemic began in 2020.

*The number of filings related to SPACs, COVID-19, and cryptocurrency fell in 2023, and the 2023 Banking Turbulence trend category emerged.*

- There were three cybersecurity-related filings in 2023, down from four in 2022.

- There were only two cannabis-related filings in 2023, the same number as in 2022, and far below the peak of 13 filings in 2019.

- Nine securities class actions related to the 2023 Banking Turbulence were filed (one in 2022 H2 and eight in 2023), representing a new emerging trend category.[3] More than 50% of 2023 Banking Turbulence trend category filings were either mega MDL or mega DDL filings.

Figure 4: Summary of Trend Filings—Core Federal Filings 2019–2023



Note: All trend categories only count core federal filings. As such, this figure excludes M&A SPAC filings. There were five, two, one, one, and one of such filings in 2019, 2020, 2021, 2022, and 2023, respectively. As a result, this figure's filing counts may not match Figure 9. Some filings may be included in more than one trend category. See Additional Notes to Figures for trend category definitions, more detailed information, and Counts and Totals Methodology.

[3] 2023 Banking Turbulence filings include allegations related to a series of bank failures that occurred in rapid succession, beginning with Silvergate Bank on March 8, 2023. The initial complaint against Silvergate Capital Corporation, parent company of Silvergate Bank, was filed on December 7, 2022; the amended complaint was filed on May 11, 2023.

# Status of Core Federal Filings by Trend Category

This analysis compares filing groups to determine whether filing outcomes of core federal cryptocurrency-related, SPAC, and COVID-19-related trend category filings differ from outcomes of other types of core federal filings.

The figure below compares the outcomes as of 2023 of cryptocurrency-related filings that were filed in 2018–2022 to the outcomes of all other core federal filings in the same period. As each cohort ages, a larger percentage of filings are resolved—whether through dismissal, settlement, remand, or by trial.

- The settlement and dismissal rates for other core federal and cryptocurrency-related filings were similar for filings from 2018 to 2019.

*In contrast to earlier years, cryptocurrency-related filings in 2022 were resolved at a much lower rate than other core federal filings.*

- Filings related to cryptocurrency in 2020 and 2021 had a higher dismissal rate than other core federal filings.

- The dismissal rate of other core federal filings brought in 2022 was about six times the dismissal rate of cryptocurrency-related filings brought in 2022.

- In April 2020, two law firms filed 11 similar cryptocurrency-related securities class actions. Of these 11 filings, nine were dismissed, one was settled, and one is ongoing.

Figure 5: Status of Core Federal Cryptocurrency-Related Filings 2018–2022

Note: Percentages may not sum to 100% due to rounding. Because a high percentage of lawsuits in 2023 are ongoing, this figure excludes the 2023 cohort.

This figure compares the outcomes of core federal SPAC filings to the outcomes of all other core federal filings from 2019 to 2022.

- More than half of SPAC filings from 2019 to 2020 (four filings) were settled, compared to just over a third of all other core federal filings from 2019 to 2020.

- The dismissal rate for filings in the 2021 SPAC cohort was less than half the dismissal rate of all other core federal filings in the 2021 cohort.

*From 2019 to 2022, 35% of SPAC filings were resolved, just over half of the resolution rate for all other core federal filings.*

- While filings in the 2022 SPAC cohort and all other core federal filings from 2022 were resolved at a similar rate, filings in the 2022 SPAC cohort were dismissed at a lower rate but settled at a higher rate.

Figure 6: Status of Core Federal SPAC Filings
2019–2022



Note: Percentages may not sum to 100% due to rounding. This figure excludes M&A SPAC filings. There were five, two, one, one, and one of such filings in 2019, 2020, 2021, 2022, and 2023, respectively. Because of the low volume of lawsuits in 2019 and 2020 (seven total), these two years have been combined. Because a high percentage of lawsuits in 2023 are ongoing, this figure excludes the 2023 cohort.

This figure compares the outcomes of core federal COVID-19-related filings to the outcomes of all other core federal filings from 2020 to 2022.

- No COVID-19-related filings in the 2021 cohort have settled as of the end of 2023, compared to 19% of all other core federal filings in the 2021 cohort.

- The resolution rates of COVID-19-related and all other core federal filings from 2020 and 2021 were nearly the same. This differs from the 2022 cohort, where COVID-19-related filings were resolved at a higher rate than all other filings.

- Early outcomes for the 2022 COVID-19-related filing cohort indicate a higher dismissal rate than for all other core federal filings.

*On average, COVID-19-related filings had higher dismissal rates and lower settlement rates than all other core federal filings.*

Figure 7: Status of Core Federal COVID-19-Related Filings
2020–2022



Note: Percentages may not sum to 100% due to rounding. Because a high percentage of lawsuits in 2023 are ongoing, this figure excludes the 2023 cohort.

# Summary of Federal Cryptocurrency-Related Filings

This figure categorizes cryptocurrency-related filings since 2016. See Additional Notes to Figures for definitions and Appendix 8 for a detailed breakdown of total filings. See also Cornerstone Research's latest report on *SEC Cryptocurrency Enforcement—2023 Update*.

- Filings involving allegations against cryptocurrency exchanges—including all five filings with multiple cryptocurrency classifications—accounted for seven of the 14 (50%) total cryptocurrency-related filings in 2023. This is up from the 2022 share of 43% and up substantially from the 2016–2022 average of 30%.

- From 2016 to 2019, only 8% of cryptocurrency-related filings included allegations against cryptocurrency exchanges. From 2020 to 2023, 43% of cryptocurrency-related filings had allegations against an exchange.

*Cryptocurrency-related filings in 2023 declined substantially due to relatively few cryptocurrency-related filings in 2023 H2.*

- From 2016 to 2020, 73% of cryptocurrency-related filings included allegations against cryptocurrency issuers. Following 2020, this figure dropped sharply to 31% of cryptocurrency-related filings.

- When accounting for filings with multiple cryptocurrency classifications, the number of filings in each category in 2023 was less than or equal to the number of filings in the same category in 2022. See Appendix 8.

Figure 8: Summary of Cryptocurrency-Related Filings—Core Federal Filings 2016–2023



Note: Filings with multiple classifications include allegations relating to two or more of the cryptocurrency classifications; therefore, total counts by category discussed may not match counts shown in the figure (see Appendix 8). See Additional Notes to Figures for Counts and Totals Methodology and cryptocurrency filing classifications.

# Federal SPAC Filing Allegations

The figure below illustrates how the types of allegations in filings against current and former SPACs have changed over time. Allegations are based on first identified complaints.

*The first Section 11–only SPAC filing and the first Section 12(a)–only SPAC filing occurred in 2023.*

- For the fourth consecutive semiannual period, in 2023 H2 there was at least one filing with both Section 10(b) and Section 11 allegations. There were no such filings in 2020 or 2021.

- After a large decline in 2022 H2, the number of federal SPAC filings has plateaued over the past three semiannual periods.

- Since 2020, The Rosen Law Firm P.A., Pomerantz LLP, and Glancy Prongay & Murray LLP accounted for 72% of first identified core federal SPAC filings, compared to 58% of all first identified core federal filings.

- Three of the 17 core federal SPAC filings (18%) in 2023 alleged that short-seller reports caused stock price drops.

Figure 9: Federal SPAC Filing Allegations
2020 H1–2023 H2



Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse; *SPAC Insider*
Note: This figure includes both core and M&A SPAC filings. As a result, total filing counts may not match Figure 4. SPAC filings concern companies that went public for the express purpose of acquiring an existing company in the future. These include current and former SPACs. See Additional Notes to Figures for Counts and Totals Methodology. One filing in 2021 included both Section 10(b) and M&A allegations. This filing is characterized as Section 10(b) rather than M&A.

# Market Capitalization Losses for Federal and State Filings

**Disclosure Dollar Loss Index® (DDL Index®)**

This index measures the aggregate annual DDL for all federal and state filings. DDL is the dollar-value change in the defendant firm's market capitalization between the trading day immediately preceding the end of the class period and the trading day immediately following the end of the class period. DDL is inflation-adjusted to 2023 dollars. See the Glossary for additional discussion on market capitalization losses and DDL.

*The DDL Index fell by almost half from 2022 to 2023, returning to 2019–2021 levels.*

- Overall, the DDL Index has increased substantially since 2017. The average DDL Index from 2009 to 2017 was $129 billion, compared to $386 billion from 2018 to 2023.

- In 2023 the DDL Index decreased by 46% relative to that in 2022, despite the median DDL increasing by 28% (see Figure 11). This divergence is driven by a decrease in DDL from mega filings (filings with a DDL of at least $5 billion) from $529 billion in 2022 to $211 billion in 2023 (see Figure 13). See Appendix 1 for DDL totals, averages, and medians from 1997 to 2023.

Figure 10: Disclosure Dollar Loss Index® (DDL Index®)
2009–2023

(Dollars in 2023 billions)



Note: This figure begins including DDL associated with state 1933 Act filings in 2010. As a result, this figure's DDL Index will not match those in Appendices 6–7, which summarize federal filings. DDL associated with parallel class actions is only counted once. There are core filings for which data are not available to estimate DDL accurately; these filings are excluded from DDL analysis. The numbers shown in this figure have been inflation-adjusted to 2023 dollars and will not match prior reports. See Additional Notes to Figures for Counts and Totals Methodology.

- As shown by the gold line in the figure below, since 2014, the typical (i.e., median) percentage stock price drop at the end of the class period has oscillated between about 15% and 20% of the predisclosure market capitalization. That measure was 20% in 2023, the highest percentage since 2013.

- In 2023, for the largest issuers—those with market capitalization above $10 billion—median DDL as a percentage of predisclosure market capitalization was below 10%, half the median of all issuers.

*Median DDL in 2023 grew by 28% from its 2022 measure and is the third-highest median DDL in the past 15 years.*

**Figure 11: Median Disclosure Dollar Loss**
**2009–2023**
(Dollars in 2023 millions)



Note: This figure begins including DDL associated with state 1933 Act filings in 2010. As a result, this figure's DDL Index will not match those in Appendices 6–7, which summarize federal filings. DDL associated with parallel class actions is only counted once in this figure. There are core filings for which data are not available to estimate DDL accurately; these filings are excluded from DDL analysis. The numbers shown in this figure have been inflation-adjusted to 2023 dollars and will not match prior reports. See Additional Notes to Figures for Counts and Totals Methodology.

**Maximum Dollar Loss Index® (MDL Index®)**

This index measures the aggregate annual MDL for all federal and state core filings. MDL is the dollar-value change in the defendant firm's market capitalization from the trading day with the highest market capitalization during the class period to the trading day immediately following the end of the class period. MDL is inflation-adjusted to 2023 dollars. See the Glossary for additional discussion on market capitalization losses and MDL.

- The MDL Index reached $3.2 trillion in 2023, the second-highest amount on record, increasing by 27% from 2022. See Appendix 1 for MDL totals, averages, and medians from 1997 to 2023.

- The substantial divergence between MDL and DDL in 2023 is due to the difference in methodology; DDL captures the market capitalization losses at the end of the class period, whereas MDL captures the market capitalization difference between the highest point during the class period and the end of the class period.

- There were 44 mega MDL filings (filings with an MDL of at least $10 billion) in 2023, more than twice as many as the 1997–2022 annual average. See Figure 13.

- The 44 mega MDL filings accounted for $2.9 trillion, or 90% of total MDL in 2023. See Figure 13.

- This was the fourth year that the MDL Index surpassed $2 trillion (after adjusting for inflation) and was the sixth consecutive year the MDL Index exceeded $1 trillion. See Appendix 1.

*The MDL Index increased to $3.2 trillion, the second-highest amount on record.*

Figure 12: Maximum Dollar Loss Index® (MDL Index®)
2009–2023

(Dollars in 2023 billions)



Note: This figure begins including MDL associated with state 1933 Act filings in 2010. As a result, this figure's MDL Index will not match those in Appendices 6–7, which summarize federal filings. MDL associated with parallel class actions is only counted once in this figure. There are core filings for which data are not available to estimate MDL accurately; these filings are excluded from MDL analysis. The numbers shown in this figure have been inflation-adjusted to 2023 dollars and will not match prior reports. See Additional Notes to Figures for Counts and Totals Methodology.

# Mega Filings

Mega DDL filings have a DDL of at least $5 billion. Mega MDL filings have an MDL of at least $10 billion. MDL and DDL are inflation-adjusted to 2023 dollars.

- There were 44 mega MDL filings in 2023 with a total mega MDL of $2.9 trillion, a 30% increase from $2.2 trillion in 2022 and 241% above the 1997–2022 annual average.

- In 2023, the number and total index value of mega MDL filings, as well as the percentage of total MDL represented by mega filings, were second only to those from the 2002 tech crash.

- There were 16 mega DDL filings in 2023, decreasing from 18 in 2022. Total mega DDL decreased 60% from $529 billion to $211 billion, nearly returning to the 2021 level.

- In 2023, the percentage of total DDL represented by mega filings fell to the 1997–2022 annual average.

- Mega filings against companies in the Communications sector (Telecommunications, Internet, and Media) made up 18% of mega MDL filings and 37% of total MDL in 2023.

- Just over half of the core filings in the Communications sector (19 federal and two state) in 2023 were mega DDL or mega MDL filings (10 federal and one state).

- Filings against Technology companies (Software and Computers) made up 44% of mega DDL filings and 20% of mega MDL filings, but only 24% of total mega DDL and 14% of total mega MDL.

*The count and total index value of mega MDL filings in 2023 were the second highest on record.*

Figure 13: Mega Filings

| | Average 1997–2022 | 2021 | 2022 | 2023 |
|---|---|---|---|---|
| **Mega Disclosure Dollar Loss (DDL) Filings** | | | | |
| Mega DDL Filings | 9 | 13 | 18 | 16 |
| DDL ($ Billions) | $143 | $187 | $529 | $211 |
| Percentage of Total DDL | 63% | 61% | 86% | 63% |
| **Mega Maximum Dollar Loss (MDL) Filings** | | | | |
| Mega MDL Filings | 21 | 27 | 38 | 44 |
| MDL ($ Billions) | $848 | $777 | $2,235 | $2,894 |
| Percentage of Total MDL | 78% | 73% | 88% | 90% |

Note: This figure begins including DDL and MDL associated with state 1933 Act filings in 2010. As a result, this figure's DDL and MDL Index will not match those in Appendices 6–8, which summarize federal filings. DDL associated with parallel class actions is only counted once in this figure. There are filings for which data are not available to estimate DDL and MDL accurately; these filings are excluded from DDL and MDL analysis at counts. Mega DDL filings have a disclosure dollar loss of at least $5 billion. Mega MDL filings have a maximum dollar loss of at least $10 billion. The numbers shown in this figure have been inflation-adjusted to 2023 dollars and will not match prior reports. Sectors are based on the Bloomberg Industry Classification System. See Additional Notes to Figures for Counts and Totals Methodology.

# Classification of Federal Complaints

- The share of core federal filings with Section 11 claims fell from a five-year high of 21% in 2022 to a five-year low of 8% in 2023.

- The share of core federal filings with Section 12(a) claims fell from 14% in 2022 to 10% in 2023.

- Core federal filings with allegations of internal control weaknesses increased from 13% in 2022 to 17% in 2023, returning to pre-2021 levels.

- The share of core federal filings with underwriter defendant allegations fell sharply from 13% in 2022 to 4% in 2023.

*The share of core federal filings with Rule 10b-5 claims rose to the highest level in more than five years.*

- Of core federal filings in 2023, 94% contained a Rule 10b-5 claim (up from 83% in 2022).

- Core federal filings with allegations of trading by company insiders in 2023 remained at the lowest level (2%) in the last five years.

Figure 14: Allegations Box Score—Core Federal Filings

| | Percentage of Filings | | | | |
| --- | --- | --- | --- | --- | --- |
| | 2019 | 2020 | 2021 | 2022 | 2023 |
| **Allegations in Core Federal Filings** | | | | | |
| Rule 10b-5 Claims | 87% | 85% | 91% | 83% | 94% |
| Section 11 Claims | 16% | 10% | 14% | 21% | 8% |
| Section 12(a) Claims | 7% | 11% | 6% | 14% | 10% |
| Misrepresentations in Financial Documents | 98% | 90% | 90% | 89% | 90% |
| False Forward-Looking Statements | 47% | 43% | 43% | 39% | 46% |
| Trading by Company Insiders | 5% | 4% | 6% | 2% | 2% |
| Accounting Violations | 23% | 27% | 22% | 24% | 23% |
| Announced Restatements | 8% | 5% | 3% | 9% | 10% |
| Internal Control Weaknesses | 18% | 18% | 9% | 13% | 17% |
| Announced Internal Control Weaknesses | 10% | 7% | 4% | 8% | 11% |
| Underwriter Defendant | 11% | 9% | 10% | 13% | 4% |
| Auditor Defendant | 0% | 0% | 0% | 1% | 2% |

Note: Core federal filings are all federal securities class actions excluding those defined as M&A filings. Allegations reflect those made in the first identified complaint (FIC). The percentages do not sum to 100% because complaints may include multiple allegations. In each of 2019 and 2020, there was one filing with allegations against an auditor defendant. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 10–13, 15, and 22, or Appendices 1 and 5. See Additional Notes to Figures for more detailed information.

# U.S. Exchange-Listed Companies

The percentage of companies subject to a filing is calculated as the unique number of companies listed on the NYSE or Nasdaq subject to federal or state securities fraud class actions in a given year divided by the unique number of companies listed on the NYSE or Nasdaq at the start of the same year.

- The percentage of U.S. exchange-listed companies subject to filings increased slightly from 3.1% in 2022 to 3.3% in 2023, the second-lowest percentage since 2012 and below the 1997–2022 annual average of 3.9%. Similarly, the percentage of companies subject to core filings increased slightly from 3.0% in 2022 to 3.2% in 2023.

- The percentage of U.S. exchange-listed companies subject to M&A filings remained at 0.1%.

*The likelihood of core filings targeting U.S. exchange-listed companies in 2023 increased slightly from 2022 but is still the second lowest in the last 10 years.*

- In 2023, the volume of federal filings against Nasdaq-listed firms increased by 12%, but total DDL for these filings decreased by 69%. Total federal filings and DDL against NYSE-listed firms increased by 12% and 46%, respectively, in 2023. See Appendix 7.

- Between the beginning of 2022 and the beginning of 2023, the overall number of U.S. exchange-listed companies decreased by 0.9%.

Figure 15: Percentage of U.S. Exchange-Listed Companies Subject to Federal or State Filings 2008–2023



| | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Number of Firms | 5,339 | 5,042 | 4,764 | 4,660 | 4,529 | 4,411 | 4,416 | 4,578 | 4,593 | 4,411 | 4,406 | 4,318 | 4,514 | 4,759 | 5,741 | 5,688 |
| Percent Change | (2.3%) | (5.6%) | (5.5%) | (2.2%) | (2.8%) | (2.6%) | 0.1% | 3.7% | 0.3% | (4.0%) | (0.1%) | (2.0%) | 4.5% | 5.4% | 20.6% | (0.9%) |

Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse; Center for Research in Security Prices (CRSP)

Note: This figure presents combined federal and state data. Filings in federal courts may have parallel lawsuits filed in state courts. All federal filings are counted only once. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. The figure begins including issuers facing suits in state 1933 Act filings in 2010. See Additional Notes to Figures for more detailed information and Counts and Totals Methodology.

# Heat Maps: S&P 500 Securities Litigation™ for Federal Core Filings

The Heat Maps analysis illustrates federal court securities class action activity by industry sector for companies in the S&P 500 index. Starting with the composition of the S&P 500 at the beginning of each year, the Heat Maps examine each sector by:

(1) The percentage of these companies subject to new securities class actions in federal court during each calendar year.

(2) The percentage of the total market capitalization of these companies subject to new securities class actions in federal court during each calendar year.

- Of the companies in the S&P 500 at the beginning of 2023, approximately one in 14 (7.1%) was subject to a core federal filing, which is above the 2001–2022 annual average. See Appendix 2A for the percentage of filings by sector from 2001 to 2023.

*The likelihood of an S&P 500 company being the subject of a core federal filing nearly doubled year-over-year to 7.1%.*

- In 2023, the likelihood of a core federal filing against a company in the Communication Services/Telecommunications/Information Technology sector increased to 11.6%, the highest likelihood since 2018.

- The percentage of Health Care companies subject to a core federal filing increased to 10.9%.

- The percentage of Consumer Staples companies subject to a core federal filing increased to 10.5% in 2023, over twice the 2001–2022 annual average.

- The likelihood of a core federal filing against all sectors excluding the Utilities sector increased in 2023.

**Figure 16: Heat Maps of S&P 500 Securities Litigation™ Percentage of Companies Subject to Core Federal Filings**

| | Average 2001–2022 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Consumer Discretionary | 5.0% | 8.4% | 1.2% | 0.0% | 3.6% | 8.5% | 10.0% | 3.1% | 8.1% | 0.0% | 3.3% | 3.8% |
| Consumer Staples | 3.7% | 0.0% | 0.0% | 5.0% | 2.6% | 2.7% | 11.8% | 12.1% | 3.1% | 6.3% | 0.0% | 10.5% |
| Energy/Materials | 1.7% | 0.0% | 1.3% | 0.0% | 4.5% | 3.3% | 1.8% | 3.7% | 1.9% | 5.7% | 0.0% | 1.9% |
| Financials/Real Estate | 6.8% | 0.0% | 1.2% | 1.2% | 6.9% | 3.3% | 7.0% | 2.0% | 5.3% | 0.0% | 2.1% | 4.8% |
| Health Care | 8.4% | 5.7% | 0.0% | 1.9% | 17.9% | 8.3% | 16.1% | 12.9% | 6.3% | 0.0% | 7.8% | 10.9% |
| Industrials | 3.9% | 0.0% | 4.7% | 0.0% | 6.1% | 8.7% | 8.8% | 10.1% | 2.7% | 1.4% | 4.2% | 7.7% |
| Communication Services/ Telecommunications/ Information Technology | 6.2% | 9.1% | 0.0% | 4.2% | 6.8% | 8.5% | 12.7% | 10.0% | 2.0% | 5.1% | 6.0% | 11.6% |
| Utilities | 5.0% | 0.0% | 0.0% | 3.4% | 3.4% | 7.1% | 7.1% | 6.9% | 7.1% | 0.0% | 3.6% | 3.3% |
| **All S&P 500 Companies** | 5.3% | 3.4% | 1.2% | 1.6% | 6.6% | 6.4% | 9.4% | 7.2% | 4.4% | 2.2% | 3.8% | 7.1% |

| 0% | 0–5% | 5–15% | 15–25% | 25%+ |
|---|---|---|---|---|

Note:

1. The figure is based on the composition of the S&P 500 as of the last trading day of the previous year. Sectors are based on the Global Industry Classification Standard (GICS), which differ from those in the Bloomberg Industry Classification System used in Figure 13 and Figure 25.

2. Percentage of Companies Subject to Core Federal Filings equals the number of companies subject to new securities class action filings in federal courts in each sector divided by the total number of companies in that sector.

3. In August 2016, GICS added a new industry sector, Real Estate. This analysis begins using the Real Estate industry sector in 2017. In 2018, the Telecommunication Services sector was incorporated into a new sector, Communication Services. With this name change, all companies previously classified as Telecommunication Services and some companies classified as Consumer Discretionary (such as Netflix, Comcast, and CBS) and Information Technology (such as Alphabet and Meta) were reclassified into the Communication Services sector.

4. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 10–13, 15, and 22, or Appendices 1 and 5.

- The percentage of total market capitalization of S&P 500 companies subject to core federal filings rose from 8.4% in 2022 to 10.1% in 2023. See Appendix 2B for market capitalization percentage by sector from 2001 to 2023.

- The percentage of market capitalization exposure for the Communication Services/ Telecommunication/Information Technology sector increased sharply, from 4.0% in 2022 to 17.3% in 2023, a more than fourfold increase.

- The percentage of market capitalization exposure for the Utilities sector rose from 7.2% in 2022 to 16.0% in 2023, a more than twofold increase and well above the 2001–2022 annual average.

- The percentage of market capitalization exposure in the Health Care sector fell from 12.3% in 2022 to 8.1% in 2023.

- The percentage of market capitalization exposure in the Consumer Discretionary sector dropped to 13.1% in 2023 from an over 20-year high of 30.3% in 2022, but remained above the 2001–2022 annual average.

- The percentage of market capitalization exposure in the Financials/Real Estate sector in 2023 was well below the 2001–2022 annual average, despite the banking turmoil in the early part of 2023.

*At 17.3%, the Communication Services/ Telecommunications/Information Technology sector had the highest percentage of market capitalization exposure.*

Figure 17: Heat Maps of S&P 500 Securities Litigation™ Percentage of Market Capitalization Subject to Core Federal Filings

| | Average 2001–2022 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Consumer Discretionary | 7.2% | 4.4% | 2.5% | 0.0% | 2.8% | 8.2% | 4.7% | 0.5% | 2.2% | 0.0% | 30.3% | 13.1% |
| Consumer Staples | 4.8% | 0.0% | 0.0% | 1.9% | 1.0% | 6.7% | 15.2% | 9.1% | 1.8% | 17.7% | 0.0% | 7.4% |
| Energy/Materials | 2.9% | 0.0% | 0.2% | 0.0% | 19.8% | 2.3% | 1.4% | 1.2% | 0.4% | 12.0% | 0.0% | 0.6% |
| Financials/Real Estate | 12.5% | 0.0% | 0.3% | 3.0% | 11.9% | 1.5% | 12.5% | 2.2% | 16.9% | 0.0% | 4.7% | 2.0% |
| Health Care | 10.6% | 4.4% | 0.0% | 3.1% | 13.2% | 2.7% | 26.3% | 6.6% | 4.7% | 0.0% | 12.3% | 8.1% |
| Industrials | 8.0% | 0.0% | 1.7% | 0.0% | 8.7% | 22.3% | 19.4% | 21.6% | 4.9% | 0.5% | 6.1% | 8.3% |
| Communication Services/ Telecommunications/ Information Technology | 7.9% | 16.6% | 0.0% | 7.0% | 12.3% | 4.4% | 19.4% | 18.0% | 1.6% | 8.2% | 4.0% | 17.3% |
| Utilities | 5.8% | 0.0% | 0.0% | 3.7% | 4.4% | 9.6% | 6.5% | 7.9% | 6.6% | 0.0% | 7.2% | 16.0% |
| All S&P 500 Companies | 8.1% | 4.7% | 0.6% | 2.8% | 10.0% | 6.1% | 14.9% | 10.0% | 4.3% | 5.1% | 8.4% | 10.1% |

| 0% | 0–5% | 5–15% | 15–25% | 25%+ |
|---|---|---|---|---|

Note:

1. The figure is based on the composition of the S&P 500 as of the last trading day of the previous year. Sectors are based on the Global Industry Classification Standard (GICS), which differ from those in the Bloomberg Industry Classification System used in Figure 13 and Figure 25.

2. Percentage of Market Capitalization Subject to Core Federal Filings equals the market capitalization of companies subject to new securities class action filings in federal courts in each sector divided by the total market capitalization of companies in that sector.

3. In August 2016, GICS added a new industry sector, Real Estate. This analysis begins using the Real Estate industry sector in 2017. In 2018, the Telecommunication Services sector was incorporated into a new sector, Communication Services. With this name change, all companies previously classified as Telecommunication Services and some companies classified as Consumer Discretionary (such as Netflix, Comcast, and CBS) and Information Technology (such as Alphabet and Meta) were reclassified into the Communication Services sector.

4. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 10–13, 15, and 22, or Appendices 1 and 5.

# Status of Core Federal Securities Class Action Filings

This analysis compares filing groups to determine whether filing outcomes have changed over time. As each cohort ages, a larger percentage of filings are resolved—whether through dismissal, settlement, remand, or by trial. In the first few years after filing, a larger proportion of core federal lawsuits are dismissed rather than settled, but in later years, more are resolved through settlement than dismissal.

*In 2023, one securities class action lawsuit filed in 2018 went to trial.*

- From 1997 to 2023, 46% of core federal filings were settled, 43% were dismissed, 0.5% were remanded, and 10% are continuing. During this time, only 0.4% of core federal filings (or 21 lawsuits) reached trial.

- More recent cohorts have too many ongoing filings to determine their ultimate resolution rates. For example, of filings that are ongoing, 83% were filed between 2021 and 2023, while 17% were filed before 2021.

- As shown in Appendix 3, contrary to trends in core federal filings, M&A filings from 2013 to 2022 were largely resolved through dismissal, with 93% of filings dismissed and 6% settled.

Figure 18: Status of Filings by Year—Core Federal Filings 2014–2023



Note: Percentages may not sum to 100% due to rounding. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from Figures 1–3, 10–13, 15, and 22, and Appendices 1 and 5, which account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis.

# 1933 Act Filings in State Courts

The following data include 1933 Act filings in California, New York, and other state courts. Filings from prior years are added retrospectively when identified. These filings may include Section 11, Section 12, and Section 15 claims, but do not include Section 10(b) claims.

- There were four state 1933 Act filings in 2023, down 67% from 2022. Of these filings, two were in California, and two were in New York. There were no 1933 Act filings in other state courts.



*State 1933 Act filing activity plummeted in 2023, falling to the lowest level since 2013.*

- In line with the *Sciabacucchi* decision in 2020, which enforced forum selection clauses that require 1933 Act claims to be brought in federal courts, the number of 1933 Act filings in state courts in 2023 was much lower than the number of 1933 Act filings in state courts prior to 2020.

- The period between the *Cyan* and *Sciabacucchi* decisions (March 2018–March 2019) changed the availability of state courts as a forum for 1933 Act claims. In *Cyan*, the U.S. Supreme Court confirmed that state and federal courts have concurrent jurisdiction over 1933 Act claims. In *Sciabacucchi*, the Delaware Supreme Court upheld forum-selection provisions in corporate charters mandating that 1933 Act claims only be brought in federal court. Since then, many state courts have followed *Sciabacucchi*.

Figure 19: State 1933 Act Filings by State
2013–2023



Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse; Bloomberg Law; ISS' SCAS

Note: This analysis counts all filings in state courts. It does not present data on a combined federal and state basis, nor does it identify or account for lawsuits that have parallel filings in both state and federal courts. As a result, totals in this analysis may not match Figures 3, 22, or 23. See Additional Notes to Figures for more detailed information and for Counts and Totals Methodology.

# Dollar Loss on Offered Shares™ (DLOS Index™) in Federal Section 11–Only and State 1933 Act Filings

This analysis calculates the loss of market value of class members' shares offered in securities issuances that are subject to 1933 Act claims. It is calculated as the shares offered at issuance (e.g., in an IPO, a seasoned equity offering (SEO), or a corporate merger or spinoff) acquired by class members multiplied by the difference between the offering price of the shares and their price on the filing date of the first identified complaint.

This alternative measure of losses has been calculated for federal filings involving only Section 11 claims (i.e., no Section 10(b) claims) and 1933 Act filings in state courts. This measure, Dollar Loss on Offered Shares (DLOS), aims to capture, more precisely than MDL, the dollar loss associated with the specific shares at issue as alleged in a complaint.

- From 2022 to 2023, total DLOS decreased sharply for federal Section 11 filings, alongside a steep decrease in the number of federal Section 11 filings.

- The 2023 federal median DLOS was less than half of the 2014–2022 median, while the 2023 state median DLOS was 48% greater than the 2014–2022 median.

*In 2023, DLOS from federal Section 11 filings fell to $0.2 billion from $17.7 billion in 2022.*

Figure 20: Dollar Loss on Offered Shares™ (DLOS Index™) for Federal Section 11–Only and State 1933 Act Filings 2014–2023

(Dollars in 2023 billions)



| Median DLOS (Dollars in 2023 millions) | 2014–2022 | 2023 |
|---|---|---|
| Federal Courts | $141.9 | $62.4 |
| State Courts | $143.5 | $212.5 |

Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse; Bloomberg Law; ISS' SCAS; CRSP; SEC EDGAR

Note: This figure does not identify or account for parallel filings. Counts and totals in each period are based on the date of each filing, rather than the earliest of the parallel state and federal filing dates. As a result, this figure differs in counts and totals from other figures that rely on parallel filing identification. The numbers shown in this figure have been inflation-adjusted to 2023 dollars and will not match prior reports. See Additional Notes to Figures for more detailed information and for Counts and Totals Methodology.

# Type of Security Issuance Underlying Federal Section 11 and State 1933 Act Filings

The figure below illustrates Section 11 claims in federal courts and 1933 Act claims in state courts based on the type of security issuance underlying the lawsuit.

*In 2023, state court filings dropped from 12 to four and were only related to IPOs.*

- Following an increase in 2022, the number of federal Section 11 filings in 2023 dropped to the lowest total since 2013.

- In 2023, IPOs accounted for 47% of Section 11 filings in federal courts.

- In 2021 and 2022, 1933 Act filings in state courts were relatively evenly distributed across all issuance types. In 2023, all state court filings were related to IPOs.

- Federal Section 11 filings related to mergers or spinoffs and SEOs stayed at the same levels as in 2022, while filings related to IPOs in federal courts decreased to eight in 2023, down 74% relative to the number in 2022.

Figure 21: Federal Section 11 and State 1933 Act Class Action Filings by Type of Security Issuance 2019–2023



Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse; Bloomberg Law; ISS' SCAS

Note: This figure does not identify or account for parallel filings. Counts and totals in each period are based on the date of each filing, rather than the earliest of the parallel state and federal filing dates. As a result, this figure differs in counts and totals from other figures that rely on parallel filing identification. See Additional Notes to Figures for more detailed information and for Counts and Totals Methodology.

# IPO Activity and Federal Section 11 and State 1933 Act Filings

This figure compares IPO activity (operating company IPOs and SPAC IPOs) with counts of federal Section 11 and state 1933 Act filings.

- Although historically SPACs have represented only a small portion of IPOs, SPACs took on an increasingly large share of IPO activity from 2020 to 2022. In 2022, however, the number of SPAC IPOs declined sharply, dropping 86% relative to that in 2021.

........................................................

*Both the total number of IPOs and filings with federal Section 11 and state 1933 Act claims fell in 2023, declining to their lowest points in the past 14 and 10 years, respectively.*

........................................................

- The number of SPAC IPOs continued to decline in 2023, dropping 64% compared to 2022.

- Operating company IPOs increased 42% in 2023, after a sharp drop in 2022. The 54 operating company IPOs in 2023 are less than half of the average annual number of operating company IPOs from 2002 to 2022.

- In 2023, there were more operating company IPOs than SPAC IPOs for the first time since 2019.

- Generally, heavier IPO activity appears to be correlated with increased levels of federal Section 11 and state 1933 Act filings in the ensuing year. This general trend continued in 2023 as federal Section 11 and state 1933 Act filings decreased following a drop in IPO activity from 2021 to 2022.

Figure 22: Number of IPOs on Major U.S. Exchanges and Number of Filings of Federal Section 11 and State 1933 Act Claims 2014–2023



Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse; Jay R. Ritter, "Initial Public Offerings: Updated Statistics," University of Florida, January 19, 2024

Note: Operating company IPOs exclude the following offerings: those with an offer price of below $5.00, ADRs, unit offers, closed-end funds, REITs, natural resource limited partnerships, small best-efforts offers, banks and S&Ls, and stocks not included in the CRSP database (CRSP includes Amex, NYSE, and Nasdaq stocks). SPAC IPOs include unit and non-unit SPAC IPOs, as defined by Professor Ritter. This figure presents combined federal and state data. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. As a result, this figure's filing counts may not match those in Figures 4–9, 14, 16–21, 24, and 26–28, or Appendices 2–4 and 6–9. The federal Section 11 lawsuits displayed may include Rule 10b-5 claims, but state 1933 Act filings do not.

# Lag between IPO and Federal Section 11 and State 1933 Act Filings

This analysis reviews the number of days between the IPO of a company and the filing date of a federal Section 11 or state 1933 Act securities class action.

- The IPO filing lag has varied substantially since 2010, but is fairly centered around the 2010–2022 median filing lag of 303 days.

- The IPO filing lag rose to 508 days in 2023 from 426 days in 2022, a 19% increase. The IPO filing lag has increased since 2021.

- The 2023 IPO filing lag was at its highest level since at least 2010.

*Between 2010 and 2022, the median filing lag for an IPO subject to a federal Section 11 or state 1933 Act claim was roughly 10 months.*

Figure 23: Lag between IPO and Federal Section 11 and State 1933 Act Filings
2014–2023



Note: These data only consider IPOs with a subsequent federal Section 11 or state 1933 Act class action complaint. Only complaints that exclusively referred to an IPO were considered. Federal filings that also include Rule 10b-5 allegations are not considered. Years in the figure refer to the year in which the complaint was filed. This figure presents combined federal and state data. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings.

# Non-U.S. Core Federal Filings

This index tracks the number of core federal filings against foreign issuers (i.e., companies headquartered outside the United States) relative to total core federal filings.

- The number of federal filings against non-U.S. issuers continued to decline since the recent high in 2020, falling to 32, well below the 2014–2022 annual average of 45.

- The number of federal filings against U.S. issuers increased from 156 in 2022 to 175 in 2023, above the 2014–2022 annual average of 154.

- As a percentage of total core federal filings, the number of core federal filings against non-U.S. issuers continued to decline to 15% from a recent high of 33% in 2020, below the 2014–2022 annual average of 22%.

*The number of core federal filings against non-U.S. issuers as a percentage of total core federal filings continued to decline from the recent high in 2020.*

Figure 24: Annual Number of Class Action Filings by Location of Headquarters—Core Federal Filings 2014–2023



Note: This analysis only considers federal filings. It does not present M&A lawsuits or combined federal and state data, and filings are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 10–13, 15, and 22, or Appendices 1 and 5. See Additional Notes to Figures for Counts and Totals Methodology.

# Industry Comparison of Core Filings

This analysis of core federal and state filings encompasses both smaller companies and large capitalization companies, such as those included in the S&P 500.

- The number of filings in the Financial sector more than doubled relative to that in 2022, accounting for 12% of filings in 2023, driven in part by the turbulence in the banking industry in early 2023.

- In 2023, filings in the Technology sector accounted for 28% of total DDL, and this sector's DDL was more than twice the 1997–2022 annual average DDL. See Appendix 5.

- The Consumer Non-Cyclical sector remained the sector with the most filings (55 filings), just above the 1997–2022 annual average of 54 filings.

- The number of Industrial sector filings in 2023 (21 filings) more than doubled relative to that in 2022, above the annual average of 17 filings from 1997 to 2022.

- MDL from Communications sector filings in 2023 comprised 37% of total MDL, while filings in the Communications sector only accounted for 10% of core federal and state filings in 2023. See Appendix 5.

*Total DDL in the Communications sector decreased eightfold from the record high in 2022.*

Figure 25: Filings by Industry—Core Filings



Note: Filings with missing sector information or infrequently used sectors may be excluded. As a result, numbers in this chart may not match other total counts listed in this report. This figure presents combined core and federal state data. It does not present M&A lawsuits. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. As a result, this figure's filing counts may not match those in Figures 4–9, 14, 16–21, 24, and 26–28, or Appendices 2–4 and 6–9. Sectors are based on the Bloomberg Industry Classification System. See Additional Notes to Figures for Counts and Totals Methodology.

# Core Federal Filings by Circuit

- Core federal filings in the Second Circuit declined for the second consecutive year, falling to 50 in 2023, below the 1997–2022 annual average of 56.

- Core federal filings in the Sixth Circuit increased to nine in 2023, above the 1997–2022 annual average of eight and up from only one in 2022.

- Core federal filings in the Third Circuit more than doubled in 2023, reaching 36 filings, the most on record.

- In 2023, total MDL in the Ninth Circuit rose to $1.8 trillion, more than five times the 1997–2022 annual average and 68% greater than the 1997–2022 annual average for all circuits. However, total DDL in the Ninth Circuit dropped by 74% to $111 billion in 2023, but remained well above the 1997–2022 annual average. See Appendix 6.

*While the Ninth Circuit comprised 32% of all core federal filings in 2023, it accounted for 56% of total federal MDL.*

Figure 26: Filings by Circuit—Core Federal Filings



Note: This analysis only considers federal filings. It does not present M&A lawsuits or combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 10–13, 15, and 22, or Appendices 1 and 5. Similarly, MDL and DDL figures discussed on this page will not match Figures 1–3, 10–13, and 25, or Appendices 1 and 5. See Additional Notes to Figures for Counts and Totals Methodology.

# Status of Core Federal Filings by Plaintiff Counsel

Three law firms—The Rosen Law Firm P.A., Pomerantz LLP, and Glancy Prongay & Murray LLP—have been responsible for 59% of first identified core securities class action complaints in federal courts from 2017 to 2022. The figure below examines litigation outcomes for core federal filings for which these three firms were listed as counsel of record. These outcomes are compared with filings for which other plaintiff law firms are the counsel of record.

*Complaints filed by three plaintiff law firms have been dismissed more frequently than those filed by other law firms for all years analyzed.*

- From 2017 through 2022, these three firms have had 57% of their core federal operative complaint class actions dismissed, compared to 44% for all other plaintiff firms. A larger set of filings and more careful consideration of other factors such as circuit, court, industry, type of allegation, and other factors would be necessary to determine if differences between these two groups are statistically significant.

- Prior analysis of these three firms by Michael Klausner, Professor of Law at Stanford Law School, and Jason Hegland, Executive Director of Stanford Securities Litigation Analytics, indicated these firms had higher dismissal rates between 2006 and 2015 as well. See "Guest Post: Deeper Trends in Securities Class Actions 2006–2015," The D&O Diary, June 23, 2016.

Figure 27: Status by Plaintiff Law Firm of Record—Core Federal Filings 2017–2022



Note: The analysis relies on the counsel of record. Of core federal filings in 2022, 4% do not have counsel of record assigned yet; these filings are excluded from this analysis. Percentages may not sum to 100% due to rounding. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from Figures 1–3, 10–13, 15, and 22, and Appendices 1 and 5, which account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. See Additional Notes to Figures for Counts and Totals Methodology.

# Filings Referencing Short-Seller Reports by Plaintiff Counsel

This analysis examines which plaintiff law firms reference reports by short sellers most frequently.

- In 2023, 19 core federal first identified complaints, or about 9%, alleged stock price drops related to reports published by short sellers, a decline of 17% relative to the number in 2022.

- Of these 19 core federal filings, 14 (74%) were made by three plaintiff law firms—The Rosen Law Firm P.A., Pomerantz LLP, and Glancy Prongay & Murray LLP. These firms' share of core federal filings referencing short-seller reports greatly exceeded their share of all core federal filings (54%) in 2023.

- Of the five filings referencing short sellers made by other law firms, Block & Leviton LLP filed three.

*In 2023, three plaintiff law firms— The Rosen Law Firm P.A., Pomerantz LLP, and Glancy Prongay & Murray LLP— filed 74% of the core federal filings that referenced reports published by short sellers.*

Figure 28: Core Federal Filings Referencing Short-Seller Reports by Plaintiff Counsel
2023



Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse

Note: Only short-seller reports mentioned in the first identified complaint are included in this analysis. Filings that contained at least one of the four plaintiff law firms were included in the relevant category; otherwise, they were included in "Other." Four of the filings made by The Rosen Law Firm P.A., Pomerantz LLP, Glancy Prongay & Murray LLP, and Block & Leviton LLP also included an additional law firm. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 10–13, 15, and 22, or Appendices 1 and 5. See Additional Notes to Figures for Counts and Totals Methodology.

# New Developments

## Class Decertified in *Arkansas Teacher Retirement System v. Goldman Sachs Group*

On August 10, 2023, the Second Circuit Court of Appeals reversed the district court's decision to grant class certification in *Arkansas Teacher Retirement System v. Goldman Sachs Group*, and ordered that the class be decertified.[1]

In a prior ruling in this matter, the U.S. Supreme Court held that the "inference [] that the back-end price drop equals front-end inflation [] starts to break down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure." In particular, the Court ruled that "when the earlier misrepresentation is generic (e.g., 'we have faith in our business model') and the later corrective disclosure is specific (e.g., 'our fourth quarter earnings did not meet expectations'), . . . it is less likely that the specific disclosure actually corrected the general misrepresentation, which means that there is less reason to infer front-end price inflation—that is, price impact—from the back-end drop."[2]

The Second Circuit held that "there is an insufficient link between the corrective disclosures and the alleged misrepresentations. Defendants have demonstrated, by a preponderance of the evidence, that the misrepresentations did not impact Goldman's stock price, and, by doing so, rebutted *Basic*'s presumption of reliance."[3]

Following the Second Circuit's decision to decertify the class, the district court entered the voluntary dismissal of the action.[4]

## Whether Failure to Disclose Under Item 303 May Support a Claim Under Section 10(b)

On January 16, 2024, the U.S. Supreme Court in *Macquarie Infrastructure Corp. v. Moab Partners LP* heard oral argument in a case that may determine whether a failure to make a disclosure required under Item 303 of Securities Exchange Commission Regulation S-K (Item 303) can support a claim of securities fraud under Section 10(b), even absent an otherwise misleading statement.[5] *(continued in next column)*

In *Macquarie*, investors accused the company of failing to warn them that a forthcoming ban on high-sulfur fuels could damage the company.[6]

A decision by the Court could resolve a circuit split regarding whether failing to disclose trends or uncertainties that could harm a company under Item 303 can be the basis for Section 10(b) liability. A decision is expected later this year.

## Class Certification Denied in *In re: January 2021 Short Squeeze Trading Litigation*

In *In re: January 2021 Short Squeeze Trading Litigation*, the U.S. District Court for the Southern District of Florida declined to certify a class of investors who alleged that they were harmed when Robinhood, a trading platform, engaged in market manipulation when it suspended purchases of a number of "meme stocks."[7]

In seeking class certification, Plaintiffs argued that the stocks at issue generally traded in efficient markets over a time period before Robinhood put the purchase restrictions in place.[8] In denying the motion for class certification, the Court explained: "Plaintiffs ask the Court to accept an extraordinary interpretation of *Basic*: that the presumption may apply if a market was generally efficient prior to any alleged manipulation, even if it was unquestionably inefficient when a plaintiff traded. This is nonsense."[9] The Court consequently concluded that Plaintiffs "failed to show that common issues predominate because they have not offered a method of proving reliance class wide or otherwise assured the Court that individualized issues of reliance will not predominate."[10] Plaintiffs have asked the Court for permission to file a renewed motion for class certification.

1. Arkansas Teacher Retirement System v. Goldman Sachs Group, 77 F.4th 74, 81 (2d Cir. 2023).
2. Goldman Sachs Group. Inc. v. Arkansas Teacher Retirement System, 141 S. Ct. 1951, 1961 (2021).
3. Arkansas Teacher Retirement System v. Goldman Sachs Group, 77 F.4th 74, 105 (2d Cir. 2023).
4. Stipulation of Voluntary Dismissal with Prejudice, In Re Goldman Sachs Group, Inc. Securities Litigation, Case No. 1:10-cv-03461 (S.D.N.Y., Nov. 17, 2023).
5. "High Court Signals Narrow Ruling against Shareholder Suits," Law360, January 16, 2024.
6. Macquarie Infrastructure Corp. v. Moab Partners LP, Case No. 22-1165.
7. In re: January 2021 Short Squeeze Trading Litigation, Case No. 1:21-md-02989, slip op. at 1–2 (S.D. Fla. Nov. 13, 2023).
8. Ibid., slip op. at 60.
9. Ibid., slip op. at 61.
10. Ibid., slip op. at 72.

# Glossary

**Annual Number of Class Action Filings by Location of Headquarters** (formerly known as the Class Action Filings Non-U.S. Index) tracks the number of core federal filings against non-U.S. issuers (companies headquartered outside the United States) relative to total core federal filings.

**Class Action Filings Index® (CAF Index®)** tracks the number of federal securities class action filings.

**Core filings** are all state 1933 Act class actions and all federal securities class actions, excluding those defined as M&A filings.

*Cyan* refers to *Cyan Inc. v. Beaver County Employees Retirement Fund.* In this March 2018 opinion, the U.S. Supreme Court ruled that 1933 Act claims may be brought to state venues and are not removable to federal court.

**De-SPAC Transaction** refers to the transaction by which a SPAC acquires and merges with a previously private company, which assumes the SPAC's exchange listing.

**Disclosure Dollar Loss Index® (DDL Index®)** measures the aggregate DDL for all federal and state filings over a period of time. DDL is the dollar-value change in the defendant firm's market capitalization between the trading day immediately preceding the end of the class period and the trading day immediately following the end of the class period. DDL should not be considered an indicator of liability or measure of potential damages. Instead, it estimates the impact of all information revealed at the end of the class period, including information unrelated to the litigation. Reported DDL is inflation-adjusted to 2023 dollars (from the year of the end of the alleged class period for filings with Section 10(b) claims and the filing year for all other lawsuits) using the Consumer Price Index for All Urban Consumers (CPI-U).

**Dollar Loss on Offered Shares Index™ (DLOS Index™)** measures the aggregate DLOS for federal filings with only Section 11 claims and for state 1933 Act filings. DLOS is the change in the dollar-value of shares acquired by members of the putative class. It is the difference in the price of offered shares (i.e., from the date the registration statement becomes effective through the filing date of the first identified complaint multiplied by the shares offered). DLOS should not be considered an indicator of liability or measure of potential damages. *(continued in next column)*

Instead, it estimates the impact of all information revealed between the date of the registration statement and the complaint filing date, including information unrelated to the litigation. Reported DLOS is inflation-adjusted to 2023 dollars from the filing year using the Consumer Price Index for All Urban Consumers (CPI-U).

**Filing lag** is the number of days between the end of a class period and the filing date of the securities class action.

**First identified complaint** is the first complaint filed of one or more securities class action complaints with the same underlying allegations against the same defendant or set of defendants. When there is no federal complaint and multiple state complaints are filed, they are treated as separate filings.

**Market capitalization losses** measure changes to market values of the companies subject to class action filings. This report tracks market capitalization losses for defendant firms during and at the end of class periods. They are calculated for publicly traded common equity securities, closed-ended mutual funds, and exchange-traded funds where data are available. Declines in market capitalization may be driven by market, industry, and/or firm-specific factors. To the extent that the observed losses reflect factors unrelated to the allegations in class action complaints, indices based on class period losses would not be representative of potential defendant exposure in class actions. This is especially relevant in the post-*Dura* securities litigation environment. In April 2005, the U.S. Supreme Court ruled that plaintiffs in a securities class action are required to establish a causal connection between alleged wrongdoing and subsequent shareholder losses. This report tracks market capitalization losses at the end of each class period using DDL, and market capitalization losses during each class period using MDL.

**Maximum Dollar Loss Index® (MDL Index®)** measures the aggregate MDL for all federal and state filings over a period of time. MDL is the dollar-value change in the defendant firm's market capitalization from the trading day with the highest market capitalization during the class period to the trading day immediately following the end of the class period. MDL should not be considered an indicator of liability or measure of potential damages. Instead, it estimates the impact of all information revealed during or at the end of the class period, including information unrelated to the litigation. *(continued on next page)*

**Maximum Dollar Loss Index® (MDL Index®),** *continued*
Reported MDL is inflation-adjusted to 2023 dollars (from the year of the end of the alleged class period for filings with Section 10(b) claims and the filing year for all other lawsuits) using the Consumer Price Index for All Urban Consumers (CPI-U).

**Merger and acquisition (M&A) filings** are securities class actions filed in federal courts that have Section 14 claims, but no Section 10(b), Section 11, or Section 12(a) claims, and involve merger and acquisition transactions.

**Trend categories** are categories of related securities class actions filed in federal courts. Current trend categories include SPAC, Cannabis, COVID-19, Cryptocurrency, Cybersecurity or Data Breach, and 2023 Banking Turbulence.

*Sciabacucchi* refers to *Salzberg v. Sciabacucchi*. On March 18, 2020, the Delaware Supreme Court held that forum-selection provisions in corporate charters requiring that some class action securities claims under the 1933 Act be adjudicated in federal courts are enforceable.

**Securities Class Action Clearinghouse** is an authoritative source of data and analysis on the financial and economic characteristics of federal securities fraud class action litigation, cosponsored by Cornerstone Research and Stanford Law School.

**State 1933 Act filing** is a class action filed in a state court that asserts claims under Section 11 and/or Section 12 of the Securities Act of 1933. These filings may also have Section 15 claims, but do not have Section 10(b) claims.

# Additional Notes to Figures

## Counts and Totals Methodology

1. A parallel filing is a filing in federal court that has a related filing in state court.

2. For a state court filing to be considered parallel it must be filed against the same defendant, concern the same security, and contain similar allegations to the federal filing.

3. Any additional filing against the same defendant brought in a different state without an additional federal court filing is counted as a unique state filing.

4. When parallel lawsuits are filed in different years or semiannual periods, only the earliest filing is reflected in filing counts and totals.

5. Parallel filings are only used in figures that show combined counts or totals across federal and state courts.

6. Figures that separately present state and federal counts or totals do not identify parallel filings. Therefore, counts and totals in each period are based on the date of each filing, rather than the earliest of the parallel state and federal filing dates. As a result, these figures differ in counts and totals from other figures that rely on parallel filing identification.

7. Figures that only present state counts or totals similarly do not identify parallel filings. Therefore, counts and totals in each period are only based on the dates of state filings. As a result, these figures differ in counts and totals from other figures that rely on parallel filing identification.

8. Figures that only present federal counts or totals similarly do not identify parallel filings. Therefore, counts and totals in each period are only based on the dates of federal filings. As a result, these figures differ in counts and totals from other figures that rely on parallel filing identification.

## Figure 3: Federal Filings and State 1933 Act Filings by Venue

1. The federal Section 11 data displayed may contain Section 10(b) claims, but state 1933 Act filings do not.

2. Beginning in 2018, California state filings may contain either Section 11 or Section 12 claims. Of the 16 filings in California in 2018, six filings contained Section 12 claims without also containing Section 11 claims. Since 2018, there have been two such filings.

## Figure 4: Summary of Trend Filings—Core Federal Filings

### Definitions of Trend Categories:

**Cybersecurity**-related filings are those in which allegations relate to data breaches or security vulnerabilities.

**Cryptocurrency**-related filings include blockchain or cryptocurrency companies that engaged in the sale or exchange of tokens (commonly initial coin offerings) or non-fungible tokens (NFTs), cryptocurrency mining, cryptocurrency derivatives, or that designed blockchain-focused software.

**Cannabis**-related filings include companies financing, farming, distributing, or selling cannabis and cannabidiol products.

**COVID-19**-related filings include allegations related to companies negatively impacted by the pandemic or looking to address demand for products as a result of the pandemic.

**SPAC** filings concern companies that went public for the express purpose of acquiring an existing company in the future. These include current and former SPACs.

**2023 Banking Turbulence** filings include allegations related to a series of bank failures that occurred in rapid succession, beginning with Silvergate Bank on March 8, 2023.

*(continued in next column)*

In 2023, one filing against a SPAC also had cryptocurrency-related allegations and one filing had both 2023 Banking Turbulence allegations and cryptocurrency-related allegations. In 2022, two filings against SPACs also had cryptocurrency-related allegations. One filing against a SPAC also had COVID-19-related allegations and one filing involving the 2023 Banking Turbulence trend category also had cryptocurrency-related allegations. In 2021, one filing had both cryptocurrency-related allegations and cybersecurity allegations. One filing against a cannabis company also had COVID-19-related allegations. In 2020, one filing against a SPAC also had cryptocurrency-related allegations. In 2018, one filing had cryptocurrency-related allegations and involved a company in the cannabis industry.

## Figure 8: Summary of Cryptocurrency-Related Filings—Core Federal Filings

### Definitions of Cryptocurrency Filing Classifications:

**Cryptocurrency Financial Product** filings include allegations related to a financial product comprised of cryptocurrencies.

**Cryptocurrency Exchange** filings include allegations related to the creation or operation of an exchange that allows for the transfer and/or sale of cryptocurrencies or tokens.

**Cryptocurrency Issuer** filings include allegations related to the creation or issuance of a cryptocurrency or an NFT.

**Cryptocurrency Miner** filings include allegations against a company that operates a cryptocurrency mining service or provides the resources for cryptocurrency mining.

**Cryptocurrency-Adjacent** filings include allegations against a company that does not issue, mine, offer cryptocurrency financial products, or offer exchange services for cryptocurrency, but is still involved in the cryptocurrency industry. Examples include companies selling mining rigs and chips, companies attempting to enter the cryptocurrency space, and companies partnering with cryptocurrency companies to provide services.

Filings with **Multiple Classifications** include allegations relating to two or more of the above cryptocurrency classifications.

In 2023, all five filings with multiple classifications included allegations against an exchange. Two of these filings only had allegations relating to a cryptocurrency financial product and against an exchange; two only had allegations against an exchange and an issuer; and one had allegations relating to a cryptocurrency financial product, against an exchange, and against an issuer. In 2022, filings with multiple classifications included one filing against an issuer and an exchange; three filings relating to a cryptocurrency financial product and against an exchange; two filings relating to a cryptocurrency financial product and against an issuer; one filing against an issuer and a cryptocurrency-adjacent company; and one filing relating to a cryptocurrency financial product, against an issuer, and against an exchange. In 2021, filings with multiple classifications included one filing against an exchange and a cryptocurrency-adjacent company. In 2020, filings with multiple classifications included one filing against an issuer and an exchange. In 2019, filings with multiple classifications included one filing against an issuer and a miner. In 2018, filings with multiple classifications included two filings against an issuer and an exchange; one filing against an issuer and a miner; and one filing against a miner and a cryptocurrency-adjacent company. In 2016, filings with multiple classifications included one filing relating to a cryptocurrency financial product, against an issuer, and against a miner.

## Figure 14: Allegations Box Score—Core Federal Filings

**Definitions:**

**Misrepresentations in financial documents** are allegations made in the first identified complaint (FIC) that financial documents included misrepresentations. Financial documents include, but are not limited to, those filed with the U.S. Securities and Exchange Commission (SEC) (e.g., Form 10-Ks and registration statements) and press releases announcing financial results.

**Accounting violations** are allegations made in the FIC of U.S. GAAP violations or violations of other reporting standards such as IFRS. In some lawsuits, plaintiff(s) may not have expressly referenced violations of U.S. GAAP or other reporting standards; however, the allegations, if true, would represent violations of U.S. GAAP or other reporting standards.

**Announced restatements** are alleged when the FIC includes accounting violations and refers to an announcement during or subsequent to the class period that the company will restate, may restate, or has unreliable financial statements.

**Internal control weaknesses** are allegations made in the FIC of internal control weaknesses over financial reporting.

**Announced internal control weaknesses** are alleged when the FIC includes internal control weaknesses and refers to an announcement during or subsequent to the class period that the company has internal control weaknesses over financial reporting.

## Figure 15: Percentage of U.S. Exchange-Listed Companies Subject to Federal or State Filings

1. Percentages are calculated by dividing the count of issuers listed on the NYSE or Nasdaq subject to filings by the number of companies listed on the NYSE or Nasdaq as of the beginning of the year. Percentages may not sum due to rounding.
2. Core Filings and M&A Filings do not include instances in which a company has been subject to both a core and M&A filing in the same year. These are reported separately in the category labeled Both Core and M&A Filings. Since 2009 there have been 22 instances in which a company has been subject to both core and M&A filings in the same year. In 2017, 0.14% of U.S. exchange-listed companies were subject to both a core and M&A filing in the same year. In 2009, 2010, 2013, 2015, 2016, 2019, 2020, and 2021, less than 0.1% of U.S. exchange-listed companies were subject to both a core and M&A filing in the same year. In all other years since 2009 there were no companies subject to both core and M&A filings in the same year.
3. Listed companies were identified by taking the count of listed securities at the beginning of each year and accounting for cross-listed companies or companies with more than one security traded on a given exchange. Securities were counted if they were classified as common stock or American depositary receipts (ADRs) and listed on the NYSE or Nasdaq.
4. This figure presents combined federal and state data. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in Figure 12. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. The figure begins including issuers facing suits in state 1933 Act filings in 2010.

## Figure 19: State 1933 Act Filings by State

1. All Others contains filings in Alabama, Arizona, Colorado, Florida, Georgia, Illinois, Indiana, Iowa, Massachusetts, Michigan, Nevada, New Hampshire, New Jersey, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Utah, Washington, West Virginia, and Wisconsin.
2. Beginning in 2018, California state filings may contain either Section 11 or Section 12 claims. Of the 16 filings in California in 2018, six filings contained Section 12 claims without also containing Section 11 claims. Since 2018, there have been two such filings.
3. This analysis compares all Section 11 filings in federal courts with all 1933 Act filings in state courts. It does not present data on a combined federal and state basis, nor does it identify or account for lawsuits that have parallel filings in both state and federal courts. The numbers shown in this figure have been inflation-adjusted to 2023 dollars and will not match prior reports.

## Figure 20: Dollar Loss on Offered Shares™ (DLOS Index™) for Federal Section 11–Only and State 1933 Act Filings

1. Federal filings included in this analysis must contain a Section 11 claim and may contain a Section 12 claim, but do not contain Section 10(b) claims. Beginning in 2018, California state filings may contain either Section 11 or Section 12 claims. Of the 16 filings in California in 2018, six filings contained Section 12 claims without also containing Section 11 claims. Since 2018, there have been two such filings.
2. Starting with Cornerstone Research's *Securities Class Action Filings—2021 Year in Review*, the DLOS methodology has been changed from using the difference between the offering price of the shares and their closing price on the day of the first identified complaint's first alleged corrective disclosure (if none were mentioned, instead the price the day after the complaint filing day was used instead), to using the difference between the offering price of the shares and their closing price on the filing date of the first identified complaint.

## Figure 21: Federal Section 11 and State 1933 Act Class Action Filings by Type of Security Issuance

1. The federal Section 11 data displayed may contain Section 10(b) claims, but state 1933 Act filings do not.
2. Beginning in 2018, California state filings may contain either Section 11 or Section 12 claims. Of the 16 filings in California in 2018, six filings contained Section 12 claims without also containing Section 11 claims. Since 2018, there have been two such filings.
3. There was one federal court filing in 2019 related to both a merger-related issuance and an SEO. This analysis categorizes this filing as relating to a merger-related issuance to avoid double-counting. Similarly, there was an SEO and other state filing in 2021 marked as SEO, a merger-related and other federal filing in 2022 marked as merger-related, and an IPO/SEO and other state filing in 2022 marked as IPO/SEO, all for the same reason.

# Appendices

Appendix 1: Basic Filings Metrics

| Year | Class Action Filings | Core Filings | Disclosure Dollar Loss | | | Maximum Dollar Loss | | | U.S. Exchange-Listed Firms: Core Filings | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | DDL Total ($ Billions) | Average ($ Millions) | Median ($ Millions) | MDL Total ($ Billions) | Average ($ Millions) | Median ($ Millions) | Number | Number of Listed Firms Sued | Percentage of Listed Firms Sued |
| 1997 | 174 | 174 | $80 | $519 | $109 | $278 | $1,808 | $770 | 8,113 | 165 | 2.0% |
| 1998 | 242 | 242 | $150 | $684 | $114 | $419 | $1,907 | $549 | 8,190 | 225 | 2.7% |
| 1999 | 209 | 209 | $257 | $1,395 | $186 | $667 | $3,625 | $691 | 7,771 | 197 | 2.5% |
| 2000 | 216 | 216 | $426 | $2,217 | $211 | $1,348 | $7,022 | $1,240 | 7,418 | 205 | 2.8% |
| 2001 | 180 | 180 | $344 | $2,112 | $159 | $2,583 | $15,844 | $1,328 | 7,197 | 168 | 2.3% |
| 2002 | 224 | 224 | $341 | $1,678 | $232 | $3,480 | $17,141 | $2,532 | 6,474 | 204 | 3.2% |
| 2003 | 192 | 192 | $129 | $754 | $167 | $962 | $5,625 | $797 | 5,999 | 181 | 3.0% |
| 2004 | 228 | 228 | $234 | $1,198 | $174 | $1,189 | $6,098 | $815 | 5,643 | 210 | 3.7% |
| 2005 | 182 | 182 | $146 | $935 | $242 | $574 | $3,681 | $774 | 5,593 | 168 | 3.0% |
| 2006 | 120 | 120 | $79 | $756 | $165 | $451 | $4,334 | $624 | 5,525 | 114 | 2.1% |
| 2007 | 177 | 177 | $234 | $1,500 | $229 | $1,039 | $6,658 | $1,051 | 5,467 | 158 | 2.9% |
| 2008 | 224 | 224 | $314 | $2,154 | $304 | $1,162 | $7,956 | $1,525 | 5,339 | 170 | 3.2% |
| 2009 | 164 | 157 | $119 | $1,182 | $196 | $782 | $7,740 | $1,513 | 5,042 | 118 | 2.3% |
| 2010 | 174 | 135 | $102 | $973 | $203 | $669 | $6,371 | $836 | 4,764 | 107 | 2.2% |
| 2011 | 189 | 146 | $156 | $1,159 | $125 | $718 | $5,316 | $614 | 4,660 | 127 | 2.7% |
| 2012 | 154 | 142 | $130 | $1,017 | $203 | $543 | $4,210 | $863 | 4,529 | 119 | 2.6% |
| 2013 | 165 | 152 | $136 | $983 | $200 | $365 | $2,642 | $700 | 4,411 | 137 | 3.1% |
| 2014 | 170 | 158 | $72 | $488 | $212 | $285 | $1,923 | $680 | 4,416 | 144 | 3.3% |
| 2015 | 217 | 183 | $154 | $864 | $186 | $534 | $2,998 | $659 | 4,578 | 169 | 3.7% |
| 2016 | 288 | 204 | $135 | $705 | $212 | $1,078 | $5,617 | $1,327 | 4,593 | 188 | 4.1% |
| 2017 | 412 | 214 | $157 | $799 | $186 | $641 | $3,269 | $827 | 4,411 | 186 | 4.2% |
| 2018 | 420 | 238 | $403 | $1,928 | $362 | $1,604 | $7,673 | $1,300 | 4,406 | 211 | 4.8% |
| 2019 | 427 | 267 | $338 | $1,424 | $259 | $1,420 | $5,992 | $1,204 | 4,318 | 237 | 5.5% |
| 2020 | 331 | 232 | $316 | $1,567 | $212 | $1,786 | $8,840 | $1,185 | 4,514 | 192 | 4.3% |
| 2021 | 218 | 200 | $309 | $1,755 | $424 | $1,064 | $6,043 | $1,596 | 4,759 | 181 | 3.8% |
| 2022 | 208 | 201 | $618 | $3,720 | $262 | $2,531 | $15,246 | $2,224 | 5,741 | 172 | 3.0% |
| 2023 | 215 | 209 | $335 | $1,838 | $336 | $3,209 | $17,634 | $2,275 | 5,688 | 181 | 3.2% |
| Average 1997–2022 | 227 | 192 | $226 | $1,326 | $213 | $1,083 | $6,368 | $1,085 | 5,539 | 172 | 3.2% |

Note: This figure presents combined federal and state data. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. State 1933 Act filings in state courts are included in the data beginning in 2010. As a result, this figure's filing counts may not match those in Figures 4–9, 14, 16–21, 24, and 26–28, or Appendices 2–4 and 6–9. Average and median numbers are calculated only for filings with MDL and DDL data. There are core filings for which data are not available to estimate MDL and DDL accurately; these filings are excluded from MDL and DDL analysis. The number and percentage of U.S. exchange-listed firms sued are based on core filings and include companies that were subject to both an M&A filing and a core filing in the same year. This differs from Figure , which separately categorizes companies with both an M&A filing and a core filing in the same year. The numbers shown in this figure have been inflation-adjusted to 2023 dollars and will not match prior reports.

Appendix 2A: S&P 500 Securities Litigation—Percentage of S&P 500 Companies Subject to Core Federal Filings

| Year | Consumer Discretionary | Consumer Staples | Energy/ Materials | Financials/ Real Estate | Health Care | Industrials | Telecomm./ Comm./IT | Utilities | All S&P 500 Companies |
|---|---|---|---|---|---|---|---|---|---|
| 2001 | 2.4% | 8.3% | 0.0% | 1.4% | 7.1% | 0.0% | 18.0% | 7.9% | 5.6% |
| 2002 | 10.2% | 2.9% | 3.1% | 16.7% | 15.2% | 6.0% | 11.0% | 40.5% | 12.0% |
| 2003 | 4.6% | 2.9% | 1.7% | 8.6% | 10.4% | 3.0% | 5.6% | 2.8% | 5.2% |
| 2004 | 3.4% | 2.7% | 1.8% | 19.3% | 10.6% | 8.5% | 3.2% | 5.7% | 7.2% |
| 2005 | 10.3% | 8.6% | 1.7% | 7.3% | 10.7% | 1.8% | 6.7% | 3.0% | 6.6% |
| 2006 | 4.4% | 2.8% | 0.0% | 2.4% | 6.9% | 0.0% | 8.1% | 0.0% | 3.6% |
| 2007 | 5.7% | 0.0% | 0.0% | 10.3% | 12.7% | 5.8% | 2.3% | 3.1% | 5.4% |
| 2008 | 4.5% | 2.6% | 0.0% | 31.2% | 13.7% | 3.6% | 2.5% | 3.2% | 9.2% |
| 2009 | 3.8% | 4.9% | 1.5% | 9.5% | 3.7% | 6.9% | 1.2% | 0.0% | 4.2% |
| 2010 | 5.1% | 0.0% | 4.3% | 10.3% | 13.5% | 0.0% | 2.4% | 0.0% | 4.8% |
| 2011 | 3.8% | 2.4% | 0.0% | 1.2% | 2.0% | 1.7% | 7.1% | 0.0% | 2.6% |
| 2012 | 4.9% | 2.4% | 2.7% | 3.7% | 1.9% | 1.6% | 3.8% | 0.0% | 3.0% |
| 2013 | 8.4% | 0.0% | 0.0% | 0.0% | 5.7% | 0.0% | 9.1% | 0.0% | 3.4% |
| 2014 | 1.2% | 0.0% | 1.3% | 1.2% | 0.0% | 4.7% | 0.0% | 0.0% | 1.2% |
| 2015 | 0.0% | 5.0% | 0.0% | 1.2% | 1.9% | 0.0% | 4.2% | 3.4% | 1.6% |
| 2016 | 3.6% | 2.6% | 4.5% | 6.9% | 17.9% | 6.1% | 6.8% | 3.4% | 6.6% |
| 2017 | 8.5% | 2.7% | 3.3% | 3.3% | 8.3% | 8.7% | 8.5% | 7.1% | 6.4% |
| 2018 | 10.0% | 11.8% | 1.8% | 7.0% | 16.1% | 8.8% | 12.7% | 7.1% | 9.4% |
| 2019 | 3.1% | 12.1% | 3.7% | 2.0% | 12.9% | 10.1% | 10.0% | 6.9% | 7.2% |
| 2020 | 8.1% | 3.1% | 1.9% | 5.3% | 6.3% | 2.7% | 2.0% | 7.1% | 4.4% |
| 2021 | 0.0% | 6.3% | 5.7% | 0.0% | 0.0% | 1.4% | 5.1% | 0.0% | 2.2% |
| 2022 | 3.3% | 0.0% | 0.0% | 2.1% | 7.8% | 4.2% | 6.0% | 3.6% | 3.8% |
| 2023 | 3.8% | 10.5% | 1.9% | 4.8% | 10.9% | 7.7% | 11.6% | 3.3% | 7.1% |
| Average 2001–2022 | 5.0% | 3.7% | 1.7% | 6.8% | 8.4% | 3.9% | 6.2% | 5.0% | 5.3% |

Appendix 2B: S&P 500 Securities Litigation—Percentage of Market Capitalization of S&P 500 Companies Subject to Core Federal Filings

| Year | Consumer Discretionary | Consumer Staples | Energy/ Materials | Financials/ Real Estate | Health Care | Industrials | Telecomm./ Comm./IT | Utilities | All S&P 500 Companies |
|---|---|---|---|---|---|---|---|---|---|
| 2001 | 1.3% | 6.3% | 0.0% | 0.8% | 5.4% | 0.0% | 32.6% | 17.4% | 10.9% |
| 2002 | 24.7% | 0.3% | 1.2% | 29.2% | 35.2% | 13.3% | 9.1% | 51.0% | 18.8% |
| 2003 | 2.0% | 2.3% | 0.4% | 19.9% | 16.3% | 4.6% | 1.7% | 4.3% | 8.0% |
| 2004 | 7.9% | 0.1% | 29.7% | 46.1% | 24.1% | 8.8% | 1.2% | 4.8% | 17.7% |
| 2005 | 5.7% | 11.4% | 1.6% | 22.2% | 10.1% | 5.6% | 10.3% | 5.6% | 10.7% |
| 2006 | 8.9% | 0.8% | 0.0% | 8.2% | 18.1% | 0.0% | 8.3% | 0.0% | 6.7% |
| 2007 | 4.4% | 0.0% | 0.0% | 18.1% | 22.5% | 2.2% | 3.4% | 5.5% | 8.2% |
| 2008 | 7.2% | 2.6% | 0.0% | 55.0% | 20.0% | 26.4% | 1.4% | 4.0% | 16.2% |
| 2009 | 1.9% | 3.9% | 0.8% | 30.7% | 1.7% | 23.2% | 0.3% | 0.0% | 7.6% |
| 2010 | 4.9% | 0.0% | 5.2% | 31.1% | 32.7% | 0.0% | 5.9% | 0.0% | 11.1% |
| 2011 | 4.6% | 0.8% | 0.0% | 6.9% | 0.7% | 2.1% | 13.4% | 0.0% | 5.0% |
| 2012 | 1.6% | 14.0% | 0.9% | 11.0% | 0.8% | 1.2% | 2.2% | 0.0% | 4.3% |
| 2013 | 4.4% | 0.0% | 0.0% | 0.0% | 4.4% | 0.0% | 16.6% | 0.0% | 4.7% |
| 2014 | 2.5% | 0.0% | 0.2% | 0.3% | 0.0% | 1.7% | 0.0% | 0.0% | 0.6% |
| 2015 | 0.0% | 1.9% | 0.0% | 3.0% | 3.1% | 0.0% | 7.0% | 3.7% | 2.8% |
| 2016 | 2.8% | 1.0% | 19.8% | 11.9% | 13.2% | 8.7% | 12.3% | 4.4% | 10.0% |
| 2017 | 8.2% | 6.7% | 2.3% | 1.5% | 2.7% | 22.3% | 4.4% | 9.6% | 6.1% |
| 2018 | 4.7% | 15.2% | 1.4% | 12.5% | 26.3% | 19.4% | 19.4% | 6.5% | 14.9% |
| 2019 | 0.5% | 9.1% | 1.2% | 2.2% | 6.6% | 21.6% | 18.0% | 7.9% | 10.0% |
| 2020 | 2.2% | 1.8% | 0.4% | 16.9% | 4.7% | 4.9% | 1.6% | 6.6% | 4.3% |
| 2021 | 0.0% | 17.7% | 12.0% | 0.0% | 0.0% | 0.5% | 8.2% | 0.0% | 5.1% |
| 2022 | 30.3% | 0.0% | 0.0% | 4.7% | 12.3% | 6.1% | 4.0% | 7.2% | 8.4% |
| 2023 | 13.1% | 7.4% | 0.6% | 2.0% | 8.1% | 8.3% | 17.3% | 16.0% | 10.1% |
| Average 2001–2022 | 7.2% | 4.8% | 2.9% | 12.5% | 10.6% | 8.0% | 7.9% | 5.8% | 8.1% |

Note: Average figures are calculated as the sum of the market capitalization subject to core filings in a given sector from 2001 to 2022 divided by the sum of market capitalization in that sector from 2001 to 2022.

## Appendix 3: M&A Federal Filings Overview

| Year | M&A Filings | M&A Case Status | | | | | Case Status of All Other Federal Filings | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Dismissed | Settled | Remanded | Continuing | Trial | Dismissed | Settled | Remanded | Continuing | Trial |
| 2013 | 13 | 7 | 6 | 0 | 0 | 0 | 86 | 65 | 1 | 0 | 0 |
| 2014 | 12 | 9 | 3 | 0 | 0 | 0 | 66 | 87 | 2 | 1 | 0 |
| 2015 | 34 | 27 | 7 | 0 | 0 | 0 | 95 | 71 | 4 | 2 | 1 |
| 2016 | 84 | 70 | 14 | 0 | 0 | 0 | 92 | 79 | 6 | 8 | 1 |
| 2017 | 198 | 190 | 7 | 1 | 0 | 0 | 114 | 90 | 4 | 5 | 0 |
| 2018 | 182 | 176 | 5 | 0 | 1 | 0 | 123 | 81 | 0 | 15 | 1 |
| 2019 | 160 | 156 | 2 | 0 | 2 | 0 | 126 | 96 | 0 | 20 | 0 |
| 2020 | 99 | 98 | 0 | 0 | 1 | 0 | 123 | 62 | 0 | 33 | 0 |
| 2021 | 18 | 14 | 1 | 0 | 3 | 0 | 70 | 33 | 1 | 89 | 0 |
| 2022 | 7 | 3 | 1 | 0 | 3 | 0 | 42 | 11 | 0 | 137 | 0 |
| 2023 | 6 | 1 | 0 | 0 | 5 | 0 | 12 | 0 | 0 | 195 | 0 |
| Average (2013–2022) | 81 | 75 | 5 | 0 | 1 | 0 | 94 | 68 | 2 | 31 | 0 |

Note: The Securities Class Action Clearinghouse began tracking M&A filings as a separate category in 2009. Case status is as of January 10, 2024. Filings are grouped by complaint filing year, not the year of the most recent change in case status. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 10–13, 15, and 22, or Appendices 1 and 5.

## Appendix 4: Status by Year—Core Federal Filings

| | In the First Year | | | In the Second Year | | | In the Third Year | | |
|---|---|---|---|---|---|---|---|---|---|
| Filing Year | Settled | Dismissed | Total Resolved within One Year | Settled | Dismissed | Total Resolved within Two Years | Settled | Dismissed | Total Resolved within Three Years |
| 1997 | 0.6% | 7.5% | 8.0% | 14.9% | 8.6% | 31.6% | 17.8% | 4.0% | 53.4% |
| 1998 | 0.8% | 7.4% | 8.3% | 16.1% | 12.8% | 37.2% | 15.7% | 7.9% | 60.7% |
| 1999 | 0.5% | 6.7% | 7.2% | 11.0% | 12.0% | 30.1% | 18.2% | 9.1% | 57.4% |
| 2000 | 1.9% | 4.2% | 6.0% | 11.6% | 13.0% | 30.6% | 15.7% | 10.6% | 57.4% |
| 2001 | 1.7% | 6.7% | 8.3% | 11.7% | 10.6% | 30.6% | 18.3% | 5.0% | 53.9% |
| 2002 | 0.9% | 5.8% | 7.1% | 6.7% | 9.4% | 23.2% | 14.7% | 11.6% | 49.6% |
| 2003 | 1.0% | 7.8% | 8.9% | 7.8% | 13.5% | 30.2% | 14.1% | 14.6% | 58.9% |
| 2004 | 0.0% | 10.5% | 10.5% | 9.6% | 16.2% | 36.4% | 12.3% | 9.6% | 58.3% |
| 2005 | 0.5% | 11.5% | 12.1% | 6.6% | 19.8% | 38.5% | 18.1% | 8.8% | 65.4% |
| 2006 | 0.8% | 9.2% | 10.0% | 8.3% | 17.5% | 35.8% | 16.7% | 7.5% | 60.0% |
| 2007 | 0.6% | 7.3% | 7.9% | 7.9% | 18.1% | 33.9% | 19.2% | 11.9% | 65.0% |
| 2008 | 0.0% | 13.0% | 13.9% | 4.9% | 20.2% | 39.0% | 10.3% | 10.3% | 59.6% |
| 2009 | 0.0% | 9.6% | 9.6% | 6.4% | 22.9% | 38.9% | 8.3% | 9.6% | 56.7% |
| 2010 | 1.5% | 11.0% | 13.2% | 8.8% | 20.6% | 42.6% | 5.9% | 13.2% | 61.8% |
| 2011 | 0.0% | 12.4% | 13.1% | 4.1% | 18.6% | 35.9% | 22.1% | 11.7% | 69.7% |
| 2012 | 0.7% | 12.9% | 15.1% | 4.3% | 25.9% | 45.3% | 18.0% | 6.5% | 69.8% |
| 2013 | 0.0% | 19.1% | 19.7% | 10.5% | 25.0% | 55.3% | 14.5% | 5.3% | 75.0% |
| 2014 | 0.6% | 10.9% | 12.8% | 9.6% | 21.8% | 44.2% | 18.6% | 7.7% | 70.5% |
| 2015 | 0.0% | 17.3% | 19.7% | 6.9% | 23.7% | 50.3% | 11.0% | 8.7% | 69.9% |
| 2016 | 0.0% | 14.4% | 16.0% | 8.0% | 22.5% | 47.1% | 11.2% | 7.5% | 66.8% |
| 2017 | 0.0% | 18.3% | 19.7% | 5.2% | 22.5% | 47.9% | 11.3% | 7.5% | 66.7% |
| 2018 | 0.0% | 13.2% | 13.2% | 6.8% | 22.7% | 42.7% | 9.1% | 11.8% | 63.6% |
| 2019 | 0.0% | 14.5% | 14.5% | 6.2% | 24.8% | 45.5% | 15.3% | 7.4% | 68.2% |
| 2020 | 0.5% | 17.4% | 17.9% | 5.0% | 24.3% | 47.2% | 12.4% | 10.6% | 70.2% |
| 2021 | 0.0% | 13.5% | 14.0% | 5.7% | 16.6% | 36.3% | 11.4% | 6.2% | 53.9% |
| 2022 | 0.5% | 12.1% | 12.6% | 5.3% | 10.0% | 27.9% | - | - | - |
| 2023 | 0.0% | 5.8% | 5.8% | - | - | - | - | - | - |

Note: Percentages may not sum due to rounding. Percentages below the dashed lines indicate cohorts for which data are not complete. Status is reported as of the last significant docket update as determined by the Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse and is up to date as of the end of 2023. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 10–13, 15, and 22, or Appendices 1 and 5.

Cornerstone Research | Securities Class Action Filings—2023 Year in Review

## Appendix 5: Filings by Industry—Core Filings

(Dollars in 2023 billions)

| Industry | Class Action Filings | | | | Disclosure Dollar Loss | | | | Maximum Dollar Loss | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Average 1997–2022 | 2021 | 2022 | 2023 | Average 1997–2022 | 2021 | 2022 | 2023 | Average 1997–2022 | 2021 | 2022 | 2023 |
| Financial | 30 | 18 | 11 | 26 | $29 | $7 | $29 | $39 | $186 | $37 | $194 | $207 |
| Consumer Non-Cyclical | 54 | 71 | 68 | 55 | $64 | $72 | $134 | $70 | $247 | $231 | $661 | $345 |
| Industrial | 17 | 10 | 9 | 21 | $19 | $6 | $4 | $24 | $68 | $12 | $37 | $104 |
| Technology | 24 | 31 | 25 | 27 | $35 | $47 | $36 | $93 | $145 | $116 | $253 | $475 |
| Consumer Cyclical | 21 | 24 | 29 | 30 | $16 | $50 | $23 | $57 | $91 | $152 | $235 | $804 |
| Communications | 27 | 22 | 21 | 20 | $52 | $108 | $386 | $42 | $272 | $308 | $1,105 | $1,191 |
| Energy | 7 | 10 | 7 | 7 | $6 | $15 | $3 | $5 | $39 | $199 | $39 | $32 |
| Basic Materials | 5 | 4 | 5 | 4 | $3 | $3 | $2 | $2 | $19 | $8 | $6 | $12 |
| Utilities | 3 | 0 | 2 | 2 | $2 | $0 | $0 | $2 | $15 | $0 | $2 | $40 |
| Unknown/ Unclassified | 4 | 10 | 24 | 17 | $0 | $0 | $0 | $0 | $1 | $0 | $0 | $0 |
| Total | 192 | 200 | 201 | 209 | $226 | $309 | $618 | $335 | $1,083 | $1,064 | $2,531 | $3,209 |

Note: Figures may not sum due to rounding. Filings with missing sector information or infrequently used sectors may be excluded. As a result, numbers in this chart may not match other total counts listed in the report. This figure presents combined core federal and state data. It does not present M&A lawsuits. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. The numbers shown in this figure have been inflation-adjusted to 2023 dollars and will not match prior reports. As a result, this figure's filing counts, DDL, and MDL may not match 4–9, 14, 16–21, 24, and 26–28, or Appendices 2–4 and 6–9.

Appendices (continued)

## Appendix 6: Filings by Circuit—Core Federal Filings

(Dollars in 2023 billions)

| Circuit | Class Action Filings | | | | Disclosure Dollar Loss | | | | Maximum Dollar Loss | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Average 1997–2022 | 2021 | 2022 | 2023 | Average 1997–2022 | 2021 | 2022 | 2023 | Average 1997–2022 | 2021 | 2022 | 2023 |
| 1st | 8 | 4 | 3 | 6 | $10 | $2 | $2 | $5 | $30 | $5 | $34 | $20 |
| 2nd | 56 | 82 | 73 | 50 | $67 | $122 | $75 | $100 | $363 | $418 | $383 | $486 |
| 3rd | 17 | 15 | 16 | 36 | $28 | $16 | $54 | $32 | $111 | $61 | $309 | $384 |
| 4th | 6 | 6 | 7 | 7 | $4 | $6 | $3 | $6 | $19 | $20 | $19 | $17 |
| 5th | 11 | 8 | 7 | 7 | $10 | $13 | $1 | $2 | $60 | $178 | $23 | $48 |
| 6th | 8 | 6 | 1 | 9 | $10 | $2 | $1 | $10 | $39 | $9 | $7 | $122 |
| 7th | 8 | 4 | 7 | 6 | $11 | $1 | $27 | $8 | $46 | $2 | $113 | $40 |
| 8th | 5 | 1 | 1 | 2 | $4 | $0 | $9 | $29 | $19 | $2 | $51 | $64 |
| 9th | 50 | 57 | 59 | 67 | $69 | $127 | $420 | $111 | $331 | $307 | $1,473 | $1,803 |
| 10th | 6 | 3 | 7 | 4 | $4 | $1 | $6 | $6 | $19 | $3 | $36 | $24 |
| 11th | 13 | 7 | 8 | 12 | $7 | $7 | $1 | $8 | $33 | $18 | $7 | $142 |
| D.C. | 1 | 0 | 1 | 1 | $1 | $0 | $1 | $15 | $4 | $0 | $1 | $51 |
| Total | 188 | 193 | 190 | 207 | $224 | $296 | $599 | $332 | $1,073 | $1,021 | $2,455 | $3,201 |

Note: Figures may not sum due to rounding. The numbers shown in this figure have been inflation-adjusted to 2023 dollars and will not match prior reports. This analysis only considers core federal filings. It does not present M&A lawsuits or combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts, DDL, and MDL may not match Figures 1–3, 10–13, 15, and 22, or Appendices 1 and 5.

## Appendix 7: Filings by Exchange Listing—Core Federal Filings

| | Average (1997–2022) | | 2022 | | 2023 | |
|---|---|---|---|---|---|---|
| | NYSE/Amex | Nasdaq | NYSE | Nasdaq | NYSE | Nasdaq |
| **Class Action Filings** | 91 | 115 | 74 | 98 | 83 | 110 |
| *Core Filings* | *76* | *96* | *71* | *94* | *78* | *109* |
| **Disclosure Dollar Loss** | | | | | | |
| DDL Total ($ Billions) | $133 | $90 | $126 | $473 | $184 | $148 |
| Average ($ Millions) | $1,943 | $946 | $1,940 | $5,202 | $2,454 | $1,440 |
| Median ($ Millions) | $417 | $165 | $333 | $203 | $646 | $203 |
| **Maximum Dollar Loss** | | | | | | |
| MDL Total ($ Billions) | $661 | $406 | $816 | $1,630 | $1,272 | $1,929 |
| Average ($ Millions) | $9,467 | $4,259 | $12,551 | $17,913 | $16,956 | $18,727 |
| Median ($ Millions) | $2,118 | $783 | $3,030 | $1,941 | $4,961 | $1,444 |

Note: Average and median numbers are calculated only for filings with MDL and DDL data. NYSE/Amex was renamed NYSE MKT in May 2012. The numbers shown in this figure have been inflation-adjusted to 2023 dollars and will not match prior reports. This analysis only considers core federal filings. It does not present M&A lawsuits or combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts, DDL, and MDL may not match Figures 1–3, 10–13, 15, and 22, or Appendices 1 and 5.

Appendix 8: Cryptocurrency-Related Filings by Cryptocurrency Classification—Core Federal Filings

| Cryptocurrency Classification Box Score—Core Federal Filings | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| Cryptocurrency-Adjacent Company | 0 | 0 | 2 | 1 | 1 | 3 | 2 | 2 |
| Cryptocurrency Exchange | 0 | 0 | 2 | 0 | 5 | 4 | 10 | 7 |
| Cryptocurrency Financial Product | 1 | 0 | 0 | 0 | 0 | 0 | 7 | 4 |
| Cryptocurrency Issuer | 1 | 5 | 10 | 3 | 8 | 1 | 10 | 4 |
| Cryptocurrency Miner | 1 | 0 | 4 | 1 | 0 | 4 | 3 | 3 |
| Multiple Cryptocurrency Classifications | 1 | 0 | 4 | 1 | 1 | 1 | 8 | 5 |
| Total Cryptocurrency-Related Filings | 1 | 5 | 14 | 4 | 13 | 11 | 23 | 14 |

Note: Filings with multiple classifications include allegations relating to two or more of the cryptocurrency classifications; therefore, total counts by category may not match counts shown in Figure 8. This analysis only considers core federal filings. It does not present M&A lawsuits or combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis.

# Research Sample

- The Securities Class Action Clearinghouse, cosponsored by Cornerstone Research and Stanford Law School, has identified 6,525 federal securities class action filings between January 1, 1996, and December 31, 2023 (securities.stanford.edu). The analysis in this report is based on data identified by Stanford as of January 10, 2024.

- The sample used in this report includes federal filings that typically allege violations of Sections 11 or 12 of the Securities Act of 1933, or Sections 10(b) or 14(a) of the Securities Exchange Act of 1934.

- The sample is referred to as the "classic filings" sample and excludes IPO allocation, analyst, and mutual fund filings (313, 68, and 25 filings, respectively).

- Multiple filings related to the same allegations against the same defendant(s) are consolidated in the database through a unique record indexed to the first identified complaint.

- In addition to federal filings, class actions filed in state courts since January 1, 2010, alleging violations of the Securities Act of 1933 are also separately tracked.

- An additional 219 state class action filings in state courts, from January 1, 2010, to December 31, 2023, have also been identified.

The views expressed herein do not necessarily represent the views of Cornerstone Research.

The authors request that you reference Cornerstone Research and the Stanford Law School Securities Class Action Clearinghouse in any reprint of the information or figures included in this report.

Please direct any questions to:

**Alexander Aganin**
650.853.1660
aaganin@cornerstone.com

## Cornerstone Research

Cornerstone Research provides economic and financial consulting and expert testimony in all phases of complex disputes and regulatory investigations. The firm works with an extensive network of prominent academics and industry practitioners to identify the best-qualified expert for each assignment. Cornerstone Research has earned a reputation for consistently high quality and effectiveness by delivering rigorous, state-of-the-art analysis since 1989. The firm has over 900 staff in nine offices across the United States and Europe.

www.cornerstone.com

© 2024 by Cornerstone Research.
All rights reserved. Cornerstone Research is a registered service mark of Cornerstone Research, Inc.
C and design is a registered trademark of Cornerstone Research, Inc.