# Exhibit 7

**EXHIBIT 7**

*City of Miami Fire Fighters' and Police Officers' Retirement Trust v. Cerence Inc.*,
Case No. 1:22-cv-10321-ADB (D. Mass.)

**COMPENDIUM OF UNPUBLISHED AUTHORITY
CITED IN FEE MEMORANDUM**

| Exhibit | |
|---|---|
| 7A | *Machado v. Endurance Int'l Grp. Holdings, Inc.*, Case No. 1:15-cv-11775-GAO, slip op. (D. Mass. Sept. 13, 2019), ECF No. 98 |
| 7B | *Gerneth v. Chiasma, Inc.*, No. 1:16-cv-11082-DJC, slip op. (D. Mass. June 27, 2019), ECF No. 225 |
| 7C | *Godinez v. Alere Inc.*, No. 1:16-cv-10766-PBS, slip op. (D. Mass. June 6, 2019), ECF No. 283 |
| 7D | *In re CVS Corp. Sec. Litig.*, No. 01-11464 (JLT), slip op. at 7 (D. Mass. Sept. 7, 2005), ECF No. 195 |
| 7E | Edward Flores & Svetlana Starykh, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2023 FULL-YEAR REVIEW (NERA Economic Consulting, Jan. 23, 2024) |
| 7F | *In re FibroGen, Inc., Sec. Litig.*, Case No. 3:21-cv-02623-EMC, slip op. (N.D. Cal. Aug. 1, 2024), ECF No. 259 |
| 7G | *In re James River Group Holdings, Ltd. Sec. Litig.*, Case No. 3:21-cv-00444-DJN, slip op. (E.D. Va. May 24, 2024), ECF No. 131 |
| 7H | *In re SolarWinds Corp. Sec. Litig.*, Case No. 1:21-cv-00138-RP, slip op. (W.D. Tex. July 28, 2023), ECF No. 111 |
| 7I | *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, Case No. 2:20-cv-00856-RDP, slip op. (N.D. Ala. Jan. 17, 2024), ECF No. 171 |
| 7J | *Hayden v. Portola Pharms. Inc.*, Case No. 3:20-cv-00367-VC, slip op. (N.D. Cal. Mar. 6, 2023), ECF No. 259 |
| 7K | *Fulton County Employees' Ret. Sys. v. Blankfein*, Case No. 1:19-cv-01562-VSB, slip op. (S.D.N.Y. Jan. 20, 2023), ECF No. 106 |
| 7L | *In re Novo Nordisk Sec. Litig.*, Case No. 3:17-cv-00209-ZNQ-LHG, slip op. (D.N.J. July 13, 2022), ECF No. 361 |
| 7M | *In re: Party City Holdco, Inc., et al., Debtors*, Case No. 23-90005 (DRJ), Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Goodwin Procter LLP as Attorneys for the Audit Committee of Party City Holdco Inc. (Bankr. S.D. Tex. Apr. 27, 2023), ECF No. 927 |

| Exhibit | |
|---|---|
| 7N | *In re LL Flooring Holdings, Inc., et al., Debtors,* No. 24-11680-BLS, Application of the Debtors for Entry of an Order (I) Authorizing the Retention and Employment of Skadden, Arps, Slate, Meagher & Flom LLP as Counsel to the Debtors Effective as of the Petition Date and (II) Granting Related Relief (Bankr. D. Del. Aug. 23, 2024), ECF No 127 |
| 7O | *Ahearn v. Credit Suisse First Boston LLC*, No. 03-CV-10956 (JLT), slip op. (D. Mass. June 7, 2006), ECF No. 82 |
| 7P | *Public Employees' Ret. Sys. of Miss. v. Mohawk Industries, Inc*., No. 4:20-cv-00005-WMC, slip op. (N.D. Ga. May 31, 2023), ECF No. 138 |
| 7Q | *In re Jeld-Wen Holding, Inc. Sec. Litig*., No. 3:20-cv-00112-JAG, slip op. (E.D. Va. Nov. 22, 2021), ECF No. 300 |

# Exhibit 7A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CHRISTOPHER MACHADO, and MICHAEL RUBIN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

ENDURANCE INTERNATIONAL GROUP HOLDINGS, INC., HARI RAVICHANDRAN, and TIVANKA ELLAWALA,

Defendants.

Case No. 1:15-cv-11775-GAO

## ORDER AWARDING ATTORNEYS' FEES
## AND REIMBURSEMENT OF LITIGATION EXPENSES

This matter came on for hearing on September 13, 2019 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated July 6, 2018 (ECF No. 77-1) (the "Stipulation") and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7)), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 33 1/3 % of the Settlement Fund and $ 155,370.34             in reimbursement of Plaintiffs' Counsel's litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution and settlement of the Action. In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

2

(a)  The Settlement has created a fund of $18,650,000 million in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Counsel;

(b)  Copies of the Postcard Notice were mailed to over 30,000 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not exceed 33 1/3% of the Settlement Fund and reimbursement of Litigation Expenses in an amount not to exceed $225,000. There were no objections to the requested attorneys' fees and expenses;

(c)  Lead Counsel has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(d)  The Action raised a number of complex issues;

(e)  Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other members of the Settlement Class may have recovered less or nothing from Defendants;

(f)  Plaintiff's Counsel devoted 7,433.15 hours, with a lodestar value of approximately $3,508,288.75 to achieve the Settlement;

(g)  The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases; and

6.  Lead Plaintiff Christopher Machado is hereby awarded $ 5,000 from the Settlement Fund as reimbursement for his reasonable costs and expenses directly related to his representation of the Settlement Class.

3

7.      Named Plaintiff Michael Rubin is hereby awarded $ 2,000 from the Settlement Fund as reimbursement for his reasonable costs and expenses directly related to his representation of the Settlement Class.

8.      Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

9.      Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

10.     In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

11.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

Dated:      September 13, 2019

/s/ George A. O'Toole, Jr.

HON. GEORGE A. O'TOOLE
UNITED STATES DISTRICT JUDGE

4

# Exhibit 7B

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN J. GERNETH, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 1:16-cv-11082-DJC |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | [~~PROPOSED~~] ORDER AWARDING ATTORNEYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF |
| CHIASMA, INC., et al., | ) ) | PURSUANT TO 15 U.S.C. §77z-1(a)(4) |
| Defendants. | ) ) ) | |

4835-7295-0426.v1

This matter having come before the Court on June 27, 2019, on Lead Counsel's motion for an award of attorneys' fees and expenses ("Fee Motion"), the Court, having considered all papers filed and proceedings conducted herein, having found the settlement of this class action (the "Litigation") to be fair, reasonable and adequate, and otherwise being fully informed in the premises and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. All of the capitalized terms used herein shall have the same meanings as set forth in the Stipulation of Settlement ("Stipulation" or "Settlement") filed with the Court. *See* ECF No. 197.

2. This Court has jurisdiction over the subject matter of this application and all matters relating thereto, including all Members of the Class who have not timely and validly requested exclusion.

3. Notice of Lead Counsel's Fee Motion was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the Fee Motion met the requirements of Rules 23 and 54 of the Federal Rules of Civil Procedure, 15 U.S.C. §77z-1(a)(7), the Securities Act of 1933, as amended by the Private Securities Litigation Reform Act of 1995, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. The Court hereby awards Lead Counsel attorneys' fees of 30% of the $18,750,000 Settlement Amount, plus expenses in the amount of $133,501.54, together with the interest earned on such amounts for the same time period and at the same rate as that earned by the Settlement Fund. The Court finds that the amount of fees awarded is appropriate, fair, and reasonable under the "percentage-of-recovery" method.

- 1 -

4835-7295-0426.v1

5.      The fees and expenses shall be allocated among Lead Plaintiff's Counsel in a manner which, in Lead Counsel's good-faith judgment, reflects the contributions of such counsel to the prosecution and settlement of the Litigation.

6.      The awarded attorneys' fees and expenses shall be paid immediately to Lead Counsel subject to the terms, conditions, and obligations of the Stipulation.

7.      In making the award to Lead Counsel of attorneys' fees and litigation expenses to be paid from the recovery, the Court has considered and found that:

(a)      The Settlement has created a common fund of $18,750,000 in cash and that numerous Class Members who submit acceptable Proofs of Claim will benefit from the Settlement created by the efforts of Lead Counsel;

(b)      The requested attorneys' fees and payment of litigation expenses have been approved as fair and reasonable by the Lead Plaintiff;

(c)      Notice was disseminated to Class Members stating that Lead Counsel would be moving for attorneys' fees not to exceed 30% of the Settlement Amount and payment of litigation expenses in an amount not to exceed $250,000, plus interest earned on both amounts;

(d)      Lead Counsel have expended substantial time and effort pursuing the Litigation on behalf of the Class;

(e)      Lead Counsel pursued the Litigation on a contingent basis, having received no compensation during the Litigation, and any fee award has been contingent on the result achieved;

(f)      The Litigation involves complex factual and legal issues and, in the absence of the Settlement, would involve lengthy proceedings whose resolution would be uncertain;

(g)      Lead Counsel conducted the Litigation and achieved the Settlement with skillful and diligent advocacy;

- 2 -

4835-7295-0426.v1

(h)     Public policy concerns favor the award of reasonable attorneys' fees in securities class action litigation;

(i)     The amount of attorneys' fees awarded is fair and reasonable and consistent with awards in similar cases within the First Circuit; and

(j)     Lead Plaintiff's Counsel devoted 6,237 hours, with a lodestar value of $3,785,640.00 to achieve the Settlement.

8.     Any appeal or any challenge affecting this Court's approval regarding any attorneys' fee and expense application shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

9.     Pursuant to 15 U.S.C. §77z-1(a)(4), the Court awards $10,000.00 to Lead Plaintiff Laurent Sberro in connection with his representation of the Class.

10.     In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this Order shall be rendered null and void to the extent provided by the Stipulation and shall be vacated in accordance with the Stipulation.

IT IS SO ORDERED.

DATED: _June 27, 2019_

_____

THE HONORABLE DENISE J. CASPER
UNITED STATES DISTRICT JUDGE

- 3 -

# Exhibit 7C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| |
|---|
| JUDITH GODINEZ, Individually and on Behalf of All Others Similarly Situated, |
| Plaintiffs, |
| v. |
| ALERE INC., *et al.*, |
| Defendants. |

Civil Action No. 1:16-cv-10766-PBS

## [PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND EXPENSES AND APPROVING COMPENSATORY PAYMENT TO LEAD PLAINTIFFS

Lead Counsel's Motion for Award of Attorneys' Fees Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses and Compensatory Award for Lead Plaintiffs (ECF No. 273) is GRANTED as follows:

1. The Court hereby awards Class Counsel 28% of the Settlement Fund ($5,600,000) in attorneys' fees. The Court also awards Class Counsel reimbursement of $792,081.56 of expenses in the aggregate. These awards are to be allocated in the sole discretion of Class Counsel.

2. The Court hereby awards Class Plaintiffs OFI and Glazer reimbursement of $30,000 each for the time and expenses they incurred in prosecuting this action.

2. The attorneys' fees and expenses approved by the Court herein shall be payable from the Settlement Fund to Class Counsel within seven (7) days after entry of this Order, notwithstanding the existence of any potential appeal or collateral attack on this Order or the on the Court's Judgment Approving Class Action Settlement. The reimbursement awards approved by the Court herein shall be payable from the Settlement Fund to the respective Class Plaintiffs within seven (7) days after the Effective Date.

SO ORDERED this _____6_____ day of _____July_____, 2019.

Patti B. Saris
Chief United States District Judge

# Exhibit 7D

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

—————————————————————————x
                              :

IN RE CVS CORPORATION SECURITIES    :    C.A. No. 01-11464 (JLT)
LITIGATION                           :
                              :
—————————————————————————x

## ORDER AND FINAL JUDGMENT

This matter came before the Court for hearing pursuant to an Order dated

June 8, 2005 (the "Preliminary Approval Order"), on the application of the parties for

approval of the settlement provided for in the Stipulation and Agreement of Compromise,

Settlement and Release of Securities Action dated June 6, 2005 (the "Securities

Stipulation"); and

Due and adequate notice having been given to members of the Class (as

defined below), as required in the Preliminary Approval Order, and following such

notice, a hearing having been held before this Court on September 7, 2005 (the

"Settlement Hearing") to determine the matters contemplated herein; and

The Court having considered all papers and filings had herein and

otherwise being fully informed of the premises and good cause appearing therefore; and

All capitalized terms herein having the same meanings defined in the

Securities Stipulation.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND

DECREED THAT:

1.      The Court has jurisdiction over the subject matter of the Securities

Action, Lead Plaintiff, all members of the Class and the Defendants.

2. For the reasons set forth in the Court's Order dated October 16, 2003, the Court finds that the prerequisites for a class action under Federal Rules of Civil Procedure 23 (a) and (b)(3) have been satisfied in that: (a) the number of members of the Class are so numerous that joinder of all members in the Class is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the Class Representative are typical of the claims of the Class it seeks to represent; (d) the Class Representative has and will fairly and adequately represent the interests of the Class; (e) the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

3. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finally certifies this action as a class action on behalf of a plaintiff class (the "Class") consisting of all persons or entities who purchased the common stock of CVS Corporation ("CVS") between February 6, 2001 and October 30, 2001, inclusive, and who were allegedly damaged thereby. Excluded from the Class are the Defendants, all of the officers, directors and partners thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any of the foregoing have or had a controlling interest. Also excluded from the Class are the persons and/or entities who previously excluded themselves from the Class by filing a request for exclusion in response to the Notice of Pendency, as listed on Exhibit 1 annexed hereto.

2

4. The Notice of the Proposed Settlement of Class Action, Motion For Attorneys' Fees, and Settlement Fairness Hearing, which was previously approved by the Court, was given to all members of the Class who could be identified with reasonable effort. The Court finds that the form of notice specified in the Court's Preliminary Approval Order has been given. The form and method of notice as so provided constituted the best notice practicable under the circumstances, satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. 78u-4(a)(7) as amended, and due process, and constituted due and sufficient notice to all persons and entities entitled thereto.

5. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby approves the settlement set forth in the Securities Stipulation (the "Settlement") and finds that the Settlement is, in all respects, fair, reasonable and adequate to members of the Class. The parties are authorized and directed to consummate the Settlement in accordance with the terms and provisions of the Securities Stipulation.

6. Except as to any individual claim of those persons who have validly and timely requested exclusion from the Class, the Court hereby dismisses the Securities Action with prejudice and without costs (except as otherwise provided in the Securities Stipulation) as to any and all Settled Claims, including Unknown Claims, that were or could have been asserted in the Securities Action by or on behalf of Lead Plaintiff and the Class Members.

7. All Class Members and the successors and assigns of any of them, are hereby permanently barred and enjoined from instituting, commencing or prosecuting

3

any and all claims, whether known or unknown (including Unknown Claims), and whether arising under federal, state, or any other law, against the Released Parties, which have been, or could have been, asserted in the Securities Action or in any court or forum, relating to or arising from the acts, facts, transactions and circumstances that were alleged in the Complaint and which relate to or arise from the purchase or sale of CVS common stock during the Class Period (the "Settled Claims"). The "Released Parties" are any of the Defendants, and any of the families, heirs, executors, trustees, personal representatives, estates or administrators, attorneys, counselors, insurers, financial or investment advisors of any such Defendant who is a natural person, and the affiliates, partners, subsidiaries, predecessors, successors or assigns, past or present officers, directors, associates, controlling persons, representatives, employees, attorneys, counselors, insurers, financial or investment advisors, dealer managers, consultants, accountants, investment bankers, commercial bankers, engineers, advisors or agents of CVS, all in their capacities as such. The Settled Claims are hereby compromised, settled, released, discharged and dismissed as against the Released Parties on the merits and with prejudice by virtue of the proceedings herein and this Order and Final Judgment. "Settled Claims" do not include any claims against the Released Parties arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") that are the subject of another class action pending in the United States District Court, District of Massachusetts, Fescina v. CVS Corp., et al., Civil Action No. 04-12309-JLT, other than claims that the price of CVS common stock purchased on the open market during the Class Period was artificially inflated as alleged in the Complaint.

4

8.      Upon the Effective Date, Lead Plaintiff and all Class Members shall be deemed to have covenanted not to sue any of the Released Parties in any individual, class or other representative capacity with respect any Settled Claim.

9.      The Defendants, the successors and assigns of any of them, and, to the extent of their authority to act on behalf of the Released Parties, the Released Parties, are hereby permanently barred and enjoined from instituting, commencing or prosecuting all claims, whether known or unknown (including Unknown Claims), and whether arising under federal, state, or any other law, which have been, or could have been, asserted in the Securities Action or in any court or forum, by the Defendants or any of them or the successors and assigns of any of them against any of the Plaintiffs, Class Members or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Securities Action (except for claims to enforce the Securities Stipulation or the Settlement) (the "Settled Defendants' Claims"). The Settled Defendants' Claims are hereby compromised, settled, released, discharged and dismissed on the merits and with prejudice by virtue of the proceedings herein and this Order and Final Judgment.

10.      This Order and Final Judgment, the Securities Stipulation and its exhibits, the terms and provisions thereof, and any of the negotiations or proceedings connected with them, and any of the documents or statements referred to therein shall not be:

(a)      offered or received against any of the Defendants or other Released Parties as evidence of or a presumption, concession, or admission by any Defendant or other Released Party of the truth of any fact alleged by any of the plaintiffs or the validity of any claim that has been or could have been asserted in the Securities Action or in any

5

litigation, or the deficiency of any defense that has been or could have been asserted in the Securities Action or in any litigation, or of any liability, negligence, fault, or wrongdoing on the part of any of the Defendants or other Released Parties;

(b)     offered or received against any of the Defendants or other Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant or Released Party;

(c)     offered or received against any of the Defendants or other Released Parties as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Defendants or Released Parties, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Securities Stipulation; provided, however, that the Defendants and the Released Parties may refer to it to effectuate the liability protection granted them hereunder;

(d)     construed against the Defendants or other Released Parties as an admission or concession that the consideration to be given hereunder represents the amount which could or would have been recovered after trial in the Securities Action; or

(e)     construed as or received in evidence as an admission, concession or presumption against plaintiffs or any of the Class Members that any of their claims are without merit, or that any defenses asserted by the Defendants have any merit, or that damages recoverable under the Complaint would not have exceeded the Settlement Fund.

6

11. The Plan of Allocation is approved as fair and reasonable, and Lead Plaintiff's Co-Lead Counsel and the Claims Administrator are directed to administer the Settlement in accordance with its terms and provisions.

12. The Court finds that all parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

13. Plaintiffs' Counsel are hereby awarded __25__% of the Settlement Fund in attorneys' fees, which sum the Court finds to be fair and reasonable, and $__2,472,092.30__ in reimbursement of expenses, which amounts shall be paid to Lead Plaintiff's Co-Lead Counsel from the Settlement Fund with interest from the date such Settlement Fund was funded to the date of payment at the same net rate that the Settlement Fund earns. The award of attorneys' fees shall be allocated among Plaintiffs' Counsel in the Securities Action in a fashion which, in the opinion of Lead Plaintiff's Co-Lead Counsel, fairly compensates Plaintiffs' Counsel for their respective contributions in the prosecution of the Securities Action. Attorneys' fees and expenses awarded by the court in the Derivative Action to derivative plaintiff's counsel in the amount up to $750,000 shall be payable from the award to Lead Plaintiff's Co-Lead Counsel in the Securities Action.

14. In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a) the Settlement has created a fund of $110 million in cash (which is already on deposit), plus interest thereon, and that numerous Class Members who submit

7

acceptable Proofs of Claim will benefit from the Settlement created by Lead Plaintiff's Co-Lead Counsel;

(b) Over 320,000 copies of the Settlement Notice were disseminated to putative Class Members indicating that Plaintiffs' Counsel were moving for attorneys' fees from the Settlement Fund in an amount of up to twenty-five percent (25%) of the Settlement Fund and for reimbursement of their expenses in the approximate amount of $2,700,000 and two (2) objections were filed against the terms of the proposed Settlement or the ceiling on the fees and expenses requested by Plaintiffs' Counsel contained in the Notice;

(c) Lead Plaintiff's Co-Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(d) The Securities Action involves complex factual and legal issues and was actively prosecuted over almost four years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

(e) Had Lead Plaintiff's Co-Lead Counsel not achieved the Settlement there would remain a significant risk that Plaintiffs and the Class may have recovered less or nothing from the Defendants; and

(f) The amount of attorneys' fees awarded and expenses reimbursed from the Settlement Fund are consistent with awards in similar cases.

15.     Without affecting the finality of this Judgment in any way, the Court hereby retains jurisdiction over (a) implementation of the Settlement and any award or distribution from the Settlement Fund; (b) disposition of the Settlement Fund; (c) any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the members of the Class; and (d) over the parties and Class Members for all matters relating to this Securities Action, including the administration, interpretation, effectuation or enforcement of the Securities Stipulation and this Order and Final Judgment.

16.     Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Securities Stipulation.

17.     There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54 (b) of the Federal Rules of Civil Procedure.

SO ORDERED this 27' day of ___September___, 2005.

_____
U.S.D.J.

9

# Exhibit 7E



# RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION:
## 2023 FULL-YEAR REVIEW

By Edward Flores and Svetlana Starykh[1]

23 January 2024

# FOREWORD

I am excited to share NERA's "Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review" with you. This year's edition builds on work carried out over more than three decades by many of NERA's securities and finance experts. Although space does not permit us to present all the analyses the authors have undertaken while working on this year's edition or to provide details on the statistical analysis of settlement amounts, we hope you will contact us if you want to learn more about our research or our work in securities litigations. On behalf of NERA's securities and finance experts, I thank you for taking the time to review this year's report and hope you find it informative.

**DAVID TABAK, PhD**
Senior Managing Director

# INTRODUCTION

There were 228 new federal securities class action suits filed in 2023, ending a four-year decline in filings seen from 2019 to 2022. The increase in filings was mainly driven by an increase in the number of suits alleging Rule 10b-5 violations. Fueled by turmoil in the banking industry, filings in the finance sector more than doubled in 2023, comprising 18% of new filings. The number of filings related to the environment quadrupled in 2023 compared to 2022.

For the sixth consecutive year, there was a decline in the number of resolutions. There were 190 cases resolved in 2023, consisting of 90 settlements and 100 dismissals, marking the lowest recorded level of resolutions in the last 10 years. More than half of the decline in resolutions was driven by a decrease in the number of settled cases with Rule 10b-5, Section 11, and/or Section 12 claims.

Aggregate settlements totaled $3.9 billion in 2023, with the top 10 settlements of the year accounting for over 66% of this amount. Aggregate plaintiffs' attorneys' fees and expenses totaled $972 million, accounting for 24.9% of the 2023 aggregate settlement value. The average settlement value increased by 17% in 2023 to $46 million, though this was largely driven by the presence of a $1 billion settlement. The median settlement value for 2023 was $14 million, a nominal 7% increase from the inflation-adjusted median settlement value in 2022.



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# TRENDS IN FILINGS

From 2019 to 2022, there was a decline in the number of federal filings. In 2023, there were 228 new cases filed, an increase from the 206 cases filed in 2022 (see Figure 1).[2] Standard cases, which contain alleged violations of Rule 10b-5, Section 11, and/or Section 12, accounted for most new filings with 206.[3] In particular, filings involving only Rule 10-5 claims increased by 34% from 137 in 2022 to 184 in 2023. On the other hand, there were only seven merger-objection suits filed in 2023, marking a 10-year low. There was also a decline in filings involving crypto unregistered securities, dropping to 11 in 2023 from the 16 observed in 2022.[4] See Figure 2.

Figure 1.  Federal Filings and Number of Companies Listed in the United States
January 1996–December 2023



Note: Listed companies include those listed on the NYSE and Nasdaq. Listings data obtained from World Federation of Exchanges (WFE). The 2023 listings data are as of October 2023.

Figure 2.  **Federal Filings by Type**
January 2014–December 2023



Excluding merger-objection and crypto unregistered securities cases, the electronic technology and technology services sector accounted for 22% of new filings, the largest proportion of any sector. After hitting a five-year low in 2022, there was a resurgence in filings in the finance sector in 2023, accounting for 18% of new filings. This is more than double the percentage in 2022 and was partly due to the banking crisis in early 2023. On the other hand, the percentage of suits in the health technology and services sector declined from 27% in 2022 to 19% in 2023, partially driven by a decline in COVID-19-related suits. See Figure 3.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 3. **Percentage of Federal Filings by Sector and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2019–December 2023



Note: This analysis is based on the FactSet Research Systems, Inc. economic sector classification. Some of the FactSet economic sectors are combined for presentation.

The Second, Third, and Ninth Circuits continue to be the jurisdictions with the most cases filed, together accounting for 155 of the 210 non-merger-objections, non-crypto unregistered securities filings. The Ninth Circuit witnessed 66 new filings, marking a 22% increase from 2022. The number of filings in the Second Circuit declined by 24% to 54, marking a five-year low. The Third Circuit accounted for 35 filings, more than double the number of cases in 2022. Elsewhere, there were 14 cases filed in the Eleventh Circuit, marking a five-year high. See Figure 4.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 4.  **Federal Filings by Circuit and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2019–December 2023



Among filings of standard cases, 31% included an allegation related to missed earnings guidance and 29% included an allegation related to misled future performance.[5] Meanwhile, the percentage of standard cases containing an allegation related to merger-integration issues declined by one-third to 11%, partially driven by a decline in SPAC-related filings. See Figure 5.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 5.  **Allegations**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2019–December 2023



# FILINGS AGAINST FOREIGN COMPANIES

Historically, foreign companies with securities listed on US exchanges have been targeted with securities class action suits at a higher rate than their proportion of US listings, though this trend has reversed over the past two years.[6] In 2023, 18.9% of filings of standard cases were against foreign companies, compared to 24.1% of US listings represented by foreign companies. See Figure 6.

In 2023, there were 39 standard suits filed against foreign companies, a slight increase from 2022 (see Figure 7). Suits against companies in Asia accounted for 19 filings, while another 14 filings were against European companies. Nearly 36% of cases involving foreign companies had an allegation related to regulatory issues, compared to 23% for US companies. See Figure 8.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 6.  **Foreign Companies: Share of Filings and Share of Companies Listed on US Exchanges**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 7.  Filings Against Foreign Companies

Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, or Section 12 by Region
January 2014–December 2023



Note: Foreign issuer status determined based on location of principal executive offices.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 8. Allegations by US and Foreign Companies
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2023–December 2023



# EVENT-DRIVEN AND OTHER SPECIAL CASES

In this section, we summarize trends in filings in potential development areas that we have identified for securities class actions over the past five years (see Figures 9 and 10). Due to the small number of cases in some categories, the findings summarized here may be driven by one or two cases.

## Crypto Cases

Since 2020, there have been at least 10 crypto-related federal filings each year, comprised of cases involving unregistered securities and shareholder suits involving companies operating in or adjacent to the cryptocurrency sector. In 2023, there were 16 crypto-related federal filings, a 28% decline from the 26 filings observed in 2022.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 9.  **Number of Crypto Federal Filings**
January 2016–December 2023



## 2023 Banking Turmoil

The first securities class action suit alleging problems in the banking industry was filed on 7 December 2022 against bank holding company Silvergate Capital Corporation, which provided a banking platform through its subsidiary, Silvergate Bank.[7] Silvergate Bank's voluntary liquidation on 8 March 2023 started a rapid chain of bank failures that intensified during the spring, which saw the collapse of Silicon Valley Bank, Signature Bank, and First Republic Bank,[8] and continued through 3 November 2023, when Citizens Bank of Sac City was closed by the Iowa Division of Banking.[9] Between December 2022 and October 2023, there were 12 securities class action suits filed against banking institutions. Of those, 11 cases were filed in 2023, representing nearly 30% of all filings in the finance sector. Four of the 11 cases were filed against Credit Suisse Group AG, after Credit Suisse, the second-largest bank in Switzerland, collapsed in March 2023 and was bought by rival UBS Group AG.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

## Environment

In recent years, there has been an increased focus by governments and regulators on issues related to the environment, fossil fuel emissions, quality of drinking water, and climate change. During the past five years, there have been 20 environment-related securities class action suits filed. Eight of these cases were filed in 2023, quadruple the number from the two cases filed in 2022. Among the cases filed in 2023 include a suit against Hawaiian Electric Industries, Inc. in connection with wildfires in Hawaii, two cases related to train derailments with severe environmental consequences against Norfolk Southern Corporation, and three cases involving telecommunication companies AT&T, Verizon Communications, and Lumen Technologies for ownership of thousands of miles of lead-covered cables.

## Cannabis

In 2019, there were 13 securities class action suits filed against defendants in the cannabis industry. The number of filings has declined in subsequent years, with only one suit filed per year in each of 2022 and 2023.

## Money Laundering

In each of 2019 and 2020, three cases were filed with claims related to money laundering. In 2021, there were no such cases filed, while in 2022 and 2023, only one such suit was filed in each year.

## Cybersecurity and Customer Privacy Breach

Since 2019, there have been at least three securities class action suits filed each year related to a cybersecurity and/or customer privacy breach. While there were seven such filings in 2021, there were only three filings in 2023.

## COVID-19

Since March 2020, there have been 85 securities class actions filed with claims related to the COVID-19 pandemic. Of these, 33 cases were filed in 2020. In 2021 and 2022, the number of suits declined to 20 each year, while in 2023, there were only 12 such filings.

## SPAC

Filings related to special purpose acquisition companies (SPACs) peaked in 2021 with 31 securities class action suits filed that year. Since then, new federal filings related to SPACs have declined each year to 24 in 2022 and 14 in 2023.

Figure 10.  Event-Driven and Other Special Cases by Filing Year
January 2019–December 2023



# TRENDS IN RESOLUTIONS

In 2023, the number of resolved cases declined by 15% to 190 from 223 in 2022, continuing a six-year decline in resolutions seen since 2018 and marking the lowest recorded level of resolutions in the last 10 years. Of these resolved cases, 90 were settlements and 100 were dismissals.[10] While resolutions declined across all categories of cases, more than half of this decline was due to

a reduction in the number of settled standard cases, which had a record-setting year in 2022. The number of merger-objection cases resolved declined to nine in 2023, consistent with the reduced number of filings of such cases in recent years. See Figure 11.

Since 2015, more cases filed have been dismissed than settled. This is consistent with historical trends, which indicate that dismissals tend to occur earlier in the litigation cycle and settlements occur later (see Figure 12). For cases filed in 2023, 5% of cases have been dismissed while 95% remain pending as of December 2023.

For cases filed and resolved over the past 20 years, over two-thirds were resolved within three years of the filing of the first complaint, while 16% of cases take longer than four years to resolve (see Figure 13). The median time to resolution is 2.1 years.

Figure 11.    **Number of Resolved Cases: Dismissed or Settled**
January 2014–December 2023



Figure 12.  **Status of Cases as Percentage of Federal Filings by Filing Year**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2014–December 2023



Note: Dismissals may include dismissals without prejudice and dismissals under appeal. Component values may not add to 100% due to rounding.

The number of resolved cases decreased by 15% to 190 from 223 in 2022, continuing a six-year decline in resolutions seen since 2018 and marking the lowest recorded level of resolutions in the last 10 years.

Figure 13.   **Time from First Complaint Filing to Resolution**
Excluding Merger Objections and Crypto Unregistered Securities
Cases Filed January 2004–December 2019 and Resolved January 2004–December 2023



# ANALYSIS OF MOTIONS

NERA's federal securities class action database tracks filing and resolution activity as well as decisions on motions to dismiss, motions for class certification, and the status of any motion as of the resolution date. For this analysis, we include securities class actions that were filed and resolved over the 2014–2023 period in which purchasers of common stock are part of the class and in which a violation of Rule 10b-5, Section 11, and/or Section 12 is alleged.

## Motion to Dismiss

A motion to dismiss was filed in 96% of the securities class action suits filed and resolved. A decision was reached in 74% of these cases, while 17% were voluntarily dismissed by plaintiffs, 8% settled before a court decision was reached, and 1% of motions were withdrawn by defendants. Among the cases in which a decision was reached, 60% of motions were granted (with or without prejudice) while 40% were denied either in part or in full. See Figure 14.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 14.  Filing and Resolutions of Motions to Dismiss
Cases Filed and Resolved January 2014–December 2023



## Motion for Class Certification

A motion for class certification was filed in only 18% of the securities class action suits filed and resolved, as most cases are either dismissed or settled before the class certification stage is reached. A decision was reached in 60% of the cases in which a motion for class certification was filed, while nearly all remaining 40% of cases were resolved with a settlement. Among the cases in which a decision was reached, the motion for class certification was granted (with or without prejudice) in 86% of cases. See Figure 15.

Approximately 64% of decisions on motions for class certification occur within three years of the filing of the first complaint, with nearly all decisions occurring within five years (see Figure 16). The median time is about 2.7 years.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 15.  Filing and Resolutions of Motions for Class Certification
Cases Filed and Resolved January 2014–December 2023



Figure 16.  Time from First Complaint Filing to Class Certification Decision
Cases Filed and Resolved January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# TRENDS IN SETTLEMENT VALUES[11]

Aggregate settlements for 2023 totaled $3.9 billion, which marks a slight decline from the inflation-adjusted total of $4.2 billion from 2022.[12]  In 2023, the average settlement value was approximately $46 million, a 17% increase over the 2022 inflation-adjusted average settlement value of $39 million and the second consecutive year that this value has increased (see Figure 17). The increase in the average settlement value is largely driven by a $1 billion settlement by Wells Fargo & Company.[13]

Figure 17.   **Average Settlement Value**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2014–December 2023



When excluding settlements of $1 billion or higher, the average settlement value was $34 million, a decrease of 12% from the $39 million inflation-adjusted amount in 2022 (see Figure 18). The median settlement value was $14.4 million, which is a slight increase from the $13.5 million inflation-adjusted value seen in 2022 (see Figure 19). Aside from a decrease in the percentage of settlements between $10 and $19.9 million and a roughly similar increase in the percentage of settlements between $20 to $49.9 million in 2023, the distribution of settlement values in 2023 looks similar to that of 2022 (see Figure 20).

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 18.   Average Settlement Value
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2014–December 2023



> When excluding settlements of $1 billion or higher, the average settlement value was $34 million in 2023, a decrease of 12% from the $39 million inflation-adjusted amount in 2022.

   ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 19.  **Median Settlement Value**
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2014–December 2023



Figure 20.  **Distribution of Settlement Values**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2019–December 2023



Aggregate settlements for 2023 totaled $3.9 billion, which marks a slight drop relative to the inflation-adjusted total of $4.2 billion from 2022.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# TOP SETTLEMENTS

The 10 largest settlements in 2023 ranged from $90 million to $1 billion and together accounted for over 66% of the $3.9 billion aggregate settlement amount reached in 2023. Wells Fargo & Company appears twice on this list, taking the top spot in a $1 billion settlement in a case involving misrepresentations regarding its progress in overhauling its internal controls[14] as well as the third-highest spot in a $300 million settlement in a matter involving allegations of misconduct in its auto insurance practices.[15] The Second, Seventh, and Ninth circuits accounted for nine of the top 10 settlements.

Table 1.  **Top 10 2023 Securities Class Action Settlements**

| Rank | Defendant | Filing Date | Settlement Date | Total Settlement Value ($Million) | Plaintiffs' Attorneys' Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|
| 1 | Wells Fargo & Company (2020) (S.D.N.Y.) | 11 Jun 2020 | 8 Sep 2023 | $1,000.0 | $181.1 | 2nd | Finance |
| 2 | The Kraft Heinz Company (N.D. Ill.) | 24 Feb 2019 | 12 Sep 2023 | $450.0 | $92.7 | 7th | Consumer Non-Durables |
| 3 | Wells Fargo & Company (2018) | 14 Feb 2019 | 17 Aug 2023 | $300.0 | $77.0 | 9th | Finance |
| 4 | Exelon Corporation (2019) | 16 Dec 2019 | 7 Sep 2023 | $173.0 | $45.3 | 7th | Utilities |
| 5 | McKesson Corporation | 25 Oct 2018 | 2 Jun 2023 | $141.0 | $36.3 | 9th | Distribution Services |
| 6 | Alexion Pharmaceuticals, Inc. (D. Conn.) | 17 Nov 2016 | 20 Dec 2023 | $125.0 | $32.8 | 2nd | Health Technology |
| 7 | Cardinal Health, Inc. (2019) | 1 Aug 2019 | 11 Sep 2023 | $109.0 | $33.4 | 6th | Distribution Services |
| 8 | Micro Focus International plc (S.D.N.Y.) (SEC 11) | 28 Mar 2018 | 27 Jul 2023 | $107.5 | $36.7 | 2nd | Technology Services |
| 9 | Grupo Televisa S.A.B. | 5 Mar 2018 | 8 Aug 2023 | $95.0 | $29.6 | 2nd | Communications |
| 10 | The Allstate Corporation | 10 Nov 2016 | 19 Dec 2023 | $90.0 | $27.1 | 7th | Finance |
| | **Total** | | | **$2,590.0** | **$591.9** | | |

Table 2 lists the 10 largest federal securities class action settlements through 31 December 2023. Since the Valeant Pharmaceuticals partial settlement of $1.2 billion in 2020, this list has remained unchanged, with settlements ranging from $1.1 to $7.2 billion.

Table 2.  **Top 10 Federal Securities Class Action Settlements (As of 31 December 2023)**

| Rank | Defendant | Filing Date | Settlement Year(s) | Total Settlement Value ($Million) | Financial Institutions Value ($Million) | Accounting Firms Value ($Million) | Plaintiffs' Attorney's Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|---|---|
| 1 | ENRON Corp. | 22 Oct 2001 | 2003–2010 | $7,242 | $6,903 | $73 | $798 | 5th | Industrial Services |
| 2 | WorldCom, Inc. | 30 Apr 2002 | 2004–2005 | $6,196 | $6,004 | $103 | $530 | 2nd | Communications |
| 3 | Cendant Corp. | 16 Apr 1998 | 2000 | $3,692 | $342 | $467 | $324 | 3rd | Finance |
| 4 | Tyco International, Ltd. | 23 Aug 2002 | 2007 | $3,200 | No codefendant | $225 | $493 | 1st | Producer Manufacturing |
| 5 | Petroleo Brasileiro S.A.-Petrobras | 8 Dec 2014 | 2018 | $3,000 | $0 | $50 | $205 | 2nd | Energy Minerals |
| 6 | AOL Time Warner Inc. | 18 July 2002 | 2006 | $2,650 | No codefendant | $100 | $151 | 2nd | Consumer Services |
| 7 | Bank of America Corp. | 21 Jan 2009 | 2013 | $2,425 | No codefendant | No codefendant | $177 | 2nd | Finance |
| 8 | Household International, Inc. | 19 Aug 2002 | 2006–2016 | $1,577 | Dismissed | Dismissed | $427 | 7th | Finance |
| 9 | Valeant Pharmaceuticals International, Inc.* | 22 Oct 2015 | 2020 | $1,210 | $0 | $0 | $160 | 3rd | Health Technology |
| 10 | Nortel Networks | 2 Mar 2001 | 2006 | $1,143 | No codefendant | $0 | $94 | 2nd | Electronic Technology |
| | **Total** | | | **$32,334** | **$13,249** | **$1,017** | **$3,358** | | |

* Denotes a partial settlement, which is included here due to its sizeable amount. Note that this case is not included in any of our resolution or settlement statistics.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# NERA-DEFINED INVESTOR LOSSES

To estimate the potential aggregate loss to investors as a result of investing in the defendant's stock during the alleged class period, NERA has developed a proprietary variable, NERA-Defined Investor Losses, using publicly available data. The NERA-Defined Investor Loss measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that of the S&P 500 Index. Over the years, NERA has reviewed and examined more than 2,000 settlements and found, of the variables analyzed, this proprietary variable to be the most powerful predictor of settlement amount.[16]

A statistical review reveals that while settlement values and NERA-Defined Investor Losses are highly correlated, the relationship is not linear. The ratio is higher for cases with lower NERA-Defined Investor Losses than for cases with higher Investor Losses. For instance, in cases with less than $20 million in Investor Losses, the median settlement value comprises 23% of Investor Losses, while in cases with more than $50 million in Investor Losses, the median settlement value is less than 4% of Investor Losses. See Figure 21.

Since 2014, annual median Investor Losses have ranged from a low of $358 million to a high of $984 million. For cases settled in 2023, the median Investor Losses were $923 million, a 6% decline from 2022 and the second highest recorded value during the 2014–2023 period. Since 2021, the median ratio of settlement amount to Investor Losses has remained stable at 1.8%. See Figure 22.

Figure 21.  **Median Settlement Value as a Percentage of NERA-Defined Investor Losses**
By Level of Investor Losses
Cases Settled January 2014–December 2023



The median Investor Losses were $923 million, a 6% decline relative to 2022 and the second highest recorded value during the 2014–2023 period.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 22.  Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year
January 2014–December 2023



NERA has identified the following key factors as driving settlement amounts:

- NERA-Defined Investor Losses;

- The market capitalization of the issuer immediately after the end of the class period;

- The types of securities (in addition to common stock) alleged to have been affected by the fraud;

- Variables that serve as a proxy for the merit of plaintiffs' allegations (e.g., whether the company has already been sanctioned by a government or regulatory agency or paid a fine in connection with the allegations);

- The stage of litigation at the time of settlement; and

- Whether an institution or public pension fund is named lead plaintiff (see Figure 23).

Among cases settled between January 2012 and December 2023, these factors in NERA's statistical model can explain over 70% of the variation observed in actual settlements.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 23.   **Predicted vs. Actual Settlements**
Investor Losses Using S&P 500 Index
Cases Settled January 2012–December 2023



# TRENDS IN PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES

Over the past 10 years, annual aggregate plaintiffs' attorneys' fees and expenses have ranged from a low of $489 million in 2017 to a high of $1.6 billion in 2016. In 2023, aggregate plaintiffs' attorneys' fees and expenses totaled $972 million, a slight decline from the $1.0 billion seen in 2022 (see Figure 24). Plaintiffs' attorneys' fees and expenses comprised roughly 24.9% of the $3.9 billion aggregate settlement value in 2023.

A historical analysis of plaintiffs' attorneys' fees and expenses for cases that have settled since the passage of the PSLRA in 1996 reveals that fees and expenses as a percentage of the settlement amount decline as the settlement size increases. For instance, for cases settled during the 2014–2023 period, median percent fees and expenses ranged from 36.1% in settlements of $5 million or lower to 18.6% in settlements of $1 billion or higher.

In the past 10 years, median percent attorneys' fees have increased for settlements under $5 million and for settlements over $500 million relative to the 1996–2013 period. This increase is more pronounced for settlements of $1 billion or higher, although this is partly due to this category having only five cases in the post-2013 period (see Figure 25).

Figure 24.  Aggregate Plaintiffs' Attorneys' Fees and Expenses by Settlement Size
January 2014–December 2023



Plaintiffs' attorneys' fees and expenses comprised roughly 24.9% of the $3.9 billion aggregate settlement value in 2023.

Figure 25.   Median of Plaintiffs' Attorneys' Fees and Expenses by Size of Settlement
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class



Note: Component values may not add to total value due to rounding.

# CONCLUSION

In 2023, federal filings increased by 11% from 206 in 2022 to 228 in 2023, ending a four-year period of annual declines in filings from 2019 to 2022. Of the 228 cases filed in 2023, 206 were standard cases with alleged violations of Rule 10b-5, Section 11, and/or Section 12, and 18.9% of standard cases were against foreign companies. Filings against companies in the information technology and technology services, health technology and services, and the finance sectors accounted for 59% of non-merger objections, non-crypto unregistered securities filings.

The number of resolved cases declined by 15% from 223 in 2022 to 190 in 2023. There were 90 settlements and 100 dismissals, marking the lowest level of both settlements and dismissals in the last 10 years. Excluding the presence of settlements of $1 billion or higher, the average settlement value for 2023 was $34 million and the median settlement value was $14 million. Aggregate settlements totaled $3.9 billion in 2023, with aggregate plaintiffs' attorneys' fees and expenses accounting for $972 million, or 24.9%, of the 2023 aggregate settlement value. Over the last 10 years, the median plaintiffs' attorneys' fees and expenses as a percentage of settlement value has ranged from 18.6% for settlements of $1 billion or higher to 36.1% for settlements of $5 million or lower.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# NOTES

1   This edition of NERA's report on "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, Janeen McIntosh, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank Vlad Lee, Daniel Klotz, and other of NERA's securities and finance researchers for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to federal case filings and resolutions.

2   NERA tracks securities class actions that have been filed in federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. The first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings. Data for this report were collected from multiple sources, including Institutional Shareholder Services, Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, complaints, case dockets, and public press reports. IPO laddering cases are presented only in Figure 1.

3   Federal securities class actions that allege violations of Rule 10b-5, Section 11, and/or Section 12 have historically dominated federal securities class action dockets and have often been referred to as "standard" cases. In the analyses of this report, standard cases involve registered securities and do not include cases involving crypto unregistered securities, which will be considered as a separate category.

4   In this study, crypto cases consist of two mutually exclusive subgroups: (1) crypto shareholder class actions, which include a class of investors in common stock, American depositary receipts/American depositary shares (ADR/ADS), and/or other registered securities, along with crypto- or digital-currency-related allegations; and (2) crypto unregistered securities class actions, which do not have class investors in any registered securities that are traded on major exchanges (New York Stock Exchange, Nasdaq). We include crypto shareholder class actions in all our analyses that include standard cases. Crypto unregistered securities class actions are excluded from some analyses, which is noted in the titles of our figures.

5   Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included and thus the total number of allegations exceeds the total number of filings.

6   In our analysis, a company is defined as a foreign company based on the location of its principal executive office.

7   Class Action Complaint for Violations of the Federal Securities Laws, *In re Silvergate Capital Corporation Securities Litigation*, 7 December 2023.

8   Madeleine Ngo, "A Timeline of How the Banking Crisis Has Unfolded," *The New York Times*, 1 May 2023, available at https://www.nytimes.com/2023/05/01/business/banking-crisis-failure-timeline.html.

9   "Iowa Trust & Savings Bank, Emmetsburg, Iowa, Assumes All of the Deposits of Citizens Bank, Sac City, Iowa," FDIC Press Release, 3 November 2023, available at https://www.fdic.gov/news/press-releases/2023/pr23091.html.

10  "Dismissed" is used here as shorthand for all class actions resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an ultimately unsuccessful motion for class certification.

11  Unless otherwise noted, the analyses in this section exclude the 2020 partial settlement involving Valeant Pharmaceuticals.

12  For our analysis, NERA includes settlements that have had the first settlement-approval hearing. We do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. As a result, although we include the 2020 Valeant Pharmaceuticals partial settlement in Table 2 due to its settlement size, this case is not included in any of our resolution, settlement, or attorney fee statistics.

13  While annual average settlement values can be a helpful statistic, these values may be affected by one or a few very high settlement amounts. Unlike averages, the median settlement value is unaffected by these very high outlier settlement amounts. To understand what more typical cases look like, we analyze the average and median settlement values for cases with a settlement amount under $1 billion, thus excluding these outlier settlement amounts. For the analysis of settlement values, we limit our data to non-merger-objection and non–crypto unregistered securities cases with settlements of more than $0 to the class.

14  Jon Hill and Jessica Corso, "Wells Fargo Inks $1B Deal to End Investors' Compliance Suit," *Law360.com*, 16 May 2023, available at https://www.law360.com/articles/1677976/.

15  Lauren Berg, "Wells Fargo Investors Ink $300M Deal in Auto Insurance Suit," *Law360.com*, 7 February 2023, available at https://www.law360.com/articles/1573911/.

16  NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock based on one or more corrective disclosures moving the stock price to its alleged true value. As a result, we have not calculated this metric for cases such as merger objections.

## RELATED EXPERTS



**Edward Flores**
Senior Consultant
New York City: +1 212 345 2955
edward.flores@nera.com



**Svetlana Starykh**
Associate Director, Securities Class Actions Database
New York City: +1 914 448 4123
svetlana.starykh@nera.com



**SUBSCRIBE**

To receive publications, news, and insights from NERA, please visit **www.nera.com/subscribe**.

*The opinions expressed herein do not necessarily represent the views of NERA or any other NERA consultant.*

## ABOUT NERA

Since 1961, NERA has provided unparalleled guidance on the most important market, legal, and regulatory questions of the day. Our work has shaped industries and policy around the world. Our field-leading experts and deep experience allows us to provide rigorous analysis, reliable expert testimony, and data-powered policy recommendations for the world's leading law firms and corporations as well as regulators and governments. Our experience, integrity, and economic ingenuity mean you can depend on us in the face of your biggest economic and financial challenges.



www.nera.com

© Copyright 2024
National Economic Research Associates, Inc.
All rights reserved. Printed in the USA.

# Exhibit 7F

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Counsel for Lead Plaintiffs Employees' Retirement
System of the City of Baltimore, City of
Philadelphia Board of Pensions and Retirement,
and Plymouth County Retirement Association, and
Lead Counsel for the Settlement Class*

*[Additional Counsel listed on Signature Page]*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC |
| | **CLASS ACTION** |
| | [PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND EXPENSES |
| | Hearing Date: May 16, 2024<br>Time: 1:30 p.m.<br>Courtroom: 5 – 17th Floor<br>Judge: Hon. Edward M. Chen |

[PROPOSED] ORDER AWARDING
ATTORNEYS' FEES AND EXPENSES
3:21-cv-02623-EMC

This matter came before the Court for hearing (the "Settlement Hearing") on May 16, 2024 on Lead Counsel's: (1) Notice of Motion and Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses; and (2) Memorandum in of Law in Support Thereof (ECF No. 251). The Court having considered all matters submitted to it at the Settlement Hearing and otherwise, and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed or emailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the Settlement Hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and was transmitted over *PR Newswire* pursuant to the specifications of the Court, and that notice of the Settlement Hearing was also provided over the Internet; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses requested.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement, dated December 7, 2023 ("Stipulation"; ECF No. 236, Ex. 1), and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Litigation and over all parties to the Litigation, including all Settlement Class Members.

3. Pursuant to and in compliance with the Court's February 13, 2024 Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 244), Rule 23 of the Federal Rules of Civil Procedure, and all other applicable laws and rules, this Court hereby finds and concludes that due and adequate notice was directed to persons and entities who are Settlement Class Members, advising them of the motion requesting attorneys' fees and litigation expenses and of their right to object thereto, and a full and fair opportunity was accorded to persons and entities who are Settlement Class Members to be heard with respect to the attorneys' fees and expenses request. There have been no objections to the attorneys' fees and expenses request.

4. The Court hereby awards Lead Counsel attorneys' fees in the amount of 25% of the Settlement Amount, plus expenses in the amount of $641,900.33, together with the interest earned

[PROPOSED] ORDER AWARDING
ATTORNEYS' FEES AND EXPENSES
3:21-cv-02623-EMC

1

on both amounts for the same time period and at the same rate as that earned on the Settlement Fund until paid. The Court finds that the amount of fees awarded is appropriate and is fair and reasonable under the "percentage-of-recovery" method.

5. Pursuant to 15 U.S.C. §78u-4(a)(4), the Court hereby awards Lead Plaintiffs the Employees' Retirement System of the City of Baltimore $8,268.14, the City of Philadelphia Board of Pensions and Retirement $19,570.00, and Plymouth County Retirement Association $7,204.14, as reimbursements of costs and expenses directly related to their representation of the Settlement Class, which shall be paid from the Settlement Fund.

6. The awarded attorneys' fees and expenses and interest earned thereon shall immediately be paid to Lead Counsel from the Settlement Fund immediately upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated herein.

7. In making this award of attorneys' fees and expenses to be paid from the Settlement Fund, the Court has analyzed the factors considered within the Ninth Circuit and found that:

(a) The Settlement has created a fund of $28,500,000 in cash that has been placed in escrow pursuant to the terms of the Stipulation, and Settlement Class Members who submit acceptable Proofs of Claim will benefit from the Settlement that occurred through the efforts of Lead Counsel;

(b) The fee sought has been reviewed and approved by Lead Plaintiffs, sophisticated institutional investors that oversaw the Litigation and have a substantial interest in ensuring that any attorneys' fees paid are duly earned and not excessive;

(c) The amount of attorneys' fees is consistent with awards in similar cases and supported by public policy;

(d) Lead Counsel conducted the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy, and with considerable challenges from formidable opposition;

(e) Lead Counsel expended substantial time and effort prosecuting the Litigation on behalf of the Settlement Class;

[PROPOSED] ORDER AWARDING
ATTORNEYS' FEES AND EXPENSES
3:21-cv-02623-EMC

2

(f)     The Litigation raised a number of complex factual and legal issues, and, in the absence of the Settlement, would involve further lengthy proceedings with uncertain resolution if the case were to proceed to trial;

(g)     Lead Counsel pursued the Litigation on a contingent basis, having received no compensation during the Litigation, and any fee amount has been contingent on the result achieved;

(h)     The efforts of Lead Counsel resulted in an all-cash settlement at a stage in the proceedings that will permit Settlement Class Members to benefit from the recovery without any delay or expense;

(i)     No objections to the attorneys' fees and expenses requested by Lead Counsel have been received; and

(j)     The amount of expenses awarded is fair and reasonable and these expenses were necessary for the prosecution and settlement of the Litigation.

8.     Any appeal or challenge affecting the Court's approval regarding any attorneys' fees and expenses shall in no way disturb or affect the finality of the Order and Final Judgment entered with respect to the Settlement.

9.     The Court retains exclusive jurisdiction over the parties and Settlement Class Members for all matters relating to this Litigation, including the administration, interpretation, effectuation, or enforcement of the Stipulation and this Order.

10.     In the event the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

//

//

//

//

//

//

[PROPOSED] ORDER AWARDING
ATTORNEYS' FEES AND EXPENSES
3:21-cv-02623-EMC

3

11. There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this _____1st____ day of _____August_____, 2024.

_____
The Honorable Edward M. Chen
United States District Judge

# Exhibit 7G

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

IN RE JAMES RIVER GROUP HOLDINGS,
LTD. SECURITIES LITIGATION

Civil No. 3:21cv444 (DJN)

## ORDER
### (Granting Motion for Attorneys' Fees and Litigation Expenses)

This matter comes before the Court following the hearing on May 24, 2024 (the "Settlement Hearing") on Lead Counsel's Motion for Attorneys' fees and Litigation Expenses. ("Motion," ECF No. 124.) The Court having considered all matters submitted to it during the Settlement Hearing and otherwise; it appearing that: (i) the Notice of the Settlement Hearing was mailed to all Settlement Class Members who or which could be identified with reasonable effort substantially in the form approved by the Court and (ii) a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* and over *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested, hereby ORDERS that:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated December 22, 2023 (ECF No. 114-1) (the "Stipulation") and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3. Notice of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort. The

form and method of notifying the Settlement Class of the motion for attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.     Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 25% of the Settlement Fund, net of Litigation Expenses, or $7,344,570, plus interest earned at the same rate as the Settlement Fund.  Plaintiffs' Counsel are also hereby awarded $603,965.20 for payment of their litigation expenses.  These attorneys' fees and expenses shall be paid from the Settlement Fund and the Court finds these sums to be fair and reasonable.  Lead Counsel shall allocate the attorneys' fees awarded among Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.     In making this award of attorneys' fees and payment of litigation expenses from the Settlement Fund, the Court has considered and found that:

a.     The Settlement has created a fund of $30,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

b.     The fee sought is based on retainer agreements entered into by Lead Counsel and Lead Plaintiffs at the outset of the litigation and the requested fee has been again reviewed and approved as reasonable by Lead Plaintiffs, sophisticated institutional investors that actively supervised the Action, at the conclusion of the Action;

2

c.      Copies of the Notice were mailed to over 38,000 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $800,000 and no objections to the requested award of attorneys' fees or Litigation Expenses were submitted;

d.      Lead Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

e.      The Action raised a number of complex issues;

f.      Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from Defendants;

g.      Plaintiffs' Counsel devoted over 11,300 hours, with a lodestar value of approximately $7.4 million, to achieve the Settlement; and

h.      The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.      Lead Plaintiff Employees' Retirement Fund of the City of Fort Worth d/b/a Fort Worth Employees' Retirement Fund is hereby awarded $15,879.55 from the Settlement Fund for its reasonable costs and expenses directly related to its representation of the Settlement Class.

7.      Lead Plaintiff The City of Miami General Employees' & Sanitation Employees' Retirement Trust is hereby awarded $1,875.00 from the Settlement Fund for its reasonable costs and expenses directly related to its representation of the Settlement Class.

3

8. Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

9. Exclusive jurisdiction is hereby retained over the Parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

10. In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

11. There is no just reason for delay in the entry of this Order.

The Clerk is DIRECTED to provide a copy of this Order to all counsel of record and any party not represented by counsel.

It is so ORDERED.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date: May 24, 2024

4

# Exhibit 7H

**FILED**

July 28, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ **SO**

DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| IN RE SOLARWINDS CORPORATION SECURITIES LITIGATION | Case No. 1:21-cv-00138-RP<br><br>CLASS ACTION |

## [PROPOSED] ORDER AWARDING
## ATTORNEYS' FEES AND LITIGATION EXPENSES

This matter came on for hearing on July 28, 2023 (the "Settlement Fairness Hearing") on

Lead Counsel's motion for attorneys' fees and Litigation Expenses.  The Court having considered

all matters submitted to it at the Settlement Fairness Hearing and otherwise; it appearing that:

(i) the Notice of the Settlement Fairness Hearing was mailed to all Settlement Class Members who

or which could be identified with reasonable effort substantially in the form approved by the Court

and (ii) a summary notice of the hearing substantially in the form approved by the Court was

published in *The Wall Street Journal* and released over *PR Newswire* pursuant to the specifications

of the Court; and the Court having considered and determined the fairness and reasonableness of

the award of attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and

Agreement of Settlement dated November 28, 2022 (ECF No. 97-1) (the "Stipulation") and all

terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the

Action and all parties to the Action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for attorneys' fees and Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort.  The form and method of notifying the Settlement Class of the motion for attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 25% of the Settlement Fund, net of Litigation Expenses awarded, or $6,426,697 (plus interest earned at the same rate as the Settlement Fund).  Plaintiffs' Counsel are also hereby awarded $270,449.02 for payment of their litigation expenses.  These attorneys' fees and expenses shall be paid from the Settlement Fund and the Court finds these sums to be fair and reasonable.  Lead Counsel shall allocate the attorneys' fees awarded among Plaintiffs' Counsel in a manner in which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.      In making this award of attorneys' fees and payment of litigation expenses from the Settlement Fund, the Court has considered and found that:

a.      The Settlement has created a fund of $26,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

b.      The requested fee has been reviewed and approved as reasonable by Lead Plaintiff, an institutional investor that actively supervised the Action;

c.　Copies of the Notice were mailed to over 25,000 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $500,000 and no objections to the requested award of attorneys' fees or Litigation Expenses were submitted;

d.　Lead Counsel conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

e.　The Action raised a number of complex issues;

f.　Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other members of the Settlement Class may have recovered less or nothing from Defendants;

g.　Plaintiffs' Counsel devoted over 6,200 hours, with a lodestar value of approximately $3.4 million, to achieve the Settlement; and

h.　The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.　Lead Plaintiff New York City District Council of Carpenters Pension Fund is hereby awarded $22,760.30 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

7.　Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

3

8.      Exclusive jurisdiction is hereby retained over the Parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

9.      In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

10.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this 28th day of July, 2023.

_____
The Honorable Robert Pitman
United States District Judge

# Exhibit 7I

FILED

2024 Jan-17 PM 04:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| SHEET METAL WORKERS LOCAL 19 PENSION FUND, individually and on behalf of all others similarly situated, }<br><br>Plaintiffs, }<br><br>v. }<br><br>PROASSURANCE CORPORATION, et al., }<br><br>Defendants. } | Case No.: 2:20-cv-00856-RDP |

**ORDER AWARDING ATTORNEYS' FEES AND EXPENSES**

This matter is before the court on Lead Plaintiffs Central Laborers' Pension Fund and Plymouth County Retirement Association's ("Lead Plaintiffs" or "Class Representatives") Motion for an Award of Attorneys' Fees and Expenses. (Doc. # 167).

On August 25, 2023, the court granted preliminary approval to the proposed class action settlement set forth in the Settlement Agreement. (Doc. # 162). The court also approved the procedure for giving Class Notice to the members of the Class and set a Final Approval Hearing to take place on January 17, 2024. (*Id.*).

On January 17, 2024, after notice, this court held a Final Approval Hearing to consider: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate; (2) whether a judgment should be entered dismissing the Class Members' Released Claims on the merits and with prejudice; and (3) whether and in what amount to award attorneys' fees and expenses to Class Counsel.

The court has reviewed both Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses (Doc. # 167), the Memorandum of Law in Support of the Motion (Doc. # 168), and Lead Plaintiffs' Notice of Non-Opposition and Reply in Further Support (Doc. # 169). Based on the papers filed with the court and the presentations made to the court by the Parties and other interested persons at the Final Approval Hearing, it is hereby **ORDERED** as follows:

1.     This Order incorporates by reference the definitions in the Stipulation of Settlement, dated June 22, 2023 (Doc. # 157) (the "Stipulation"), and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.     The court has jurisdiction to enter this Order and over the subject matter of the Litigation and over all parties to the Litigation, including all Settlement Class Members.

3.     Pursuant to and in compliance with the court's August 25, 2023 Memorandum Opinion and Order Preliminarily Approving Settlement and Directing Notice to the Class (Doc. # 162), Rule 23 of the Federal Rules of Civil Procedure, and all other applicable laws and rules, this court hereby finds and concludes that due and adequate notice was directed to persons and entities who are Settlement Class Members, advising them of the motion requesting attorneys' fees and litigation expenses and of their right to object thereto, and a full and fair opportunity was accorded to persons and entities who are Settlement Class Members to be heard with respect to the attorneys' fees and expenses request.  There have been no objections to the attorneys' fees and expenses request.

4.     The court hereby **AWARDS** Lead Counsel attorneys' fees in the amount of 33% of the Settlement Amount, plus expenses in the amount of $1,240,844.77, together with the interest earned on both amounts for the same time period and at the same rate as that earned on the Settlement Fund until paid.  The court finds that the amount of fees awarded is appropriate and is

2

fair and reasonable under the "percentage-of-recovery" method. The majority of common fund fee awards fall between 20% to 30% of the fund. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). Of course, this benchmark percentage may be adjusted in accordance with the unique circumstances of each case. *Id.* at 775. Below, the court explains why an upward adjustment to 33% is warranted here. Additionally, the court notes counsel devoted over 27,200 hours to this case. (Doc. # 165-1 ¶ 91). The requested fee award of 33% of $28,000,000 (*i.e.*, $9,240,000) amounts to a very reasonable effective hourly rate of approximately $340.

5. Pursuant to binding precedent established in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244,1260-61 (11th Cir. 2020), Central Laborers' Pension Fund's request of $9,760.25 and Plymouth County Retirement Association's request of $8,281.05 as reimbursements of costs and expenses directly related to their representation of the Settlement Class is **DENIED.**

6. The awarded attorneys' fees and expenses and interest earned thereon shall immediately be paid to Lead Counsel from the Settlement Fund upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which are incorporated herein.

7. In making this award of attorneys' fees and expenses to be paid from the Settlement Fund, the court has analyzed the factors considered within the Eleventh Circuit and found that:

(a) The Settlement has created a fund of $28,000,000 in cash that has been placed into escrow pursuant to the terms of the Stipulation, and Settlement Class Members who submit acceptable Proofs of Claim will benefit from the Settlement that occurred through the efforts of Lead Counsel;

(b) The fee sought has been reviewed and approved by Lead Plaintiffs, sophisticated institutional investors that oversaw the Litigation and have a substantial interest in ensuring that any attorneys' fees paid are duly earned and not excessive;

3

(c)     The amount of attorneys' fees is consistent with awards in similar cases and supported by public policy;

(d)     Lead Counsel conducted the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy, and with considerable challenges from formidable opposition;

(e)     Lead Counsel expended substantial time and effort prosecuting the Litigation on behalf of the Settlement Class;

(f)     The Litigation raised a number of complex factual and legal issues, and, in the absence of Settlement, would involve further lengthy proceedings with uncertain resolution if the case were to proceed to trial;

(g)     Lead Counsel initiated and pursued the Litigation on a contingent basis, having received no compensation during the Litigation, and any fee amount has been contingent on the result achieved;

(h)     The efforts of Lead Counsel resulted in an all-cash settlement at a stage in the proceedings that will permit Settlement Class Members to benefit from the recovery without further delay or expense;

(i)     No objections to the attorneys' fees and expenses requested by Lead Counsel have been received; and

(j)     The amount of expenses awarded is fair and reasonable and these expenses were necessary for the prosecution and settlement of the Litigation.

8.     The fees and expenses shall be allocated among Lead Plaintiffs' Counsel in a manner which, in Lead Counsel's good-faith judgment, reflects each such counsel's contribution to the institution, prosecution, and resolution of the Litigation.

9.      Any appeal or any challenge affecting the court's approval regarding any attorneys' fees and expenses shall in no way disturb or affect the finality of the Order and Final Judgment entered with respect to the Settlement.

10.      The court retains exclusive jurisdiction over the parties and Settlement Class Members for all matters relating to this Litigation, including the administration, interpretation, effectuation, or enforcement of the Stipulation and this Order.

11.      In the event the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

**DONE** and **ORDERED** this January 17, 2024.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

5

# Exhibit 7J

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

<table>
<tr><td>
PAUL HAYDEN, et al.,<br><br>                Plaintiffs,<br><br>          v.<br><br>PORTOLA PHARMACEUTICALS<br>INC., et al.,<br><br>                Defendants.
</td><td>
No. 3:20-cv-00367-VC<br>Hon. Vince Chhabria
</td></tr>
</table>

**[PROPOSED] ORDER AWARDING (I) ATTORNEYS' FEES, (II) REIMBURSEMENT OF EXPENSES, AND (III) AWARD OF COSTS AND EXPENSES TO PLAINTIFFS**

This matter came for hearing before the Court on March 2, 2023 (the "Final Approval Hearing") on Lead Counsel's motion for (i) an award of attorneys' fees, (ii) reimbursement of litigation expenses incurred in this securities class action (the "Action"), and (iii) an award of costs and expenses to Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(4) (the "Fee and Expense Motion"). The Court, having considered all papers filed and the proceeding conducted herein, having found the Settlement reached in this action to be fair, reasonable, and adequate and otherwise being fully informed, finds as follows:

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. All capitalized terms not otherwise defined herein have the same meaning as set forth in the September 19, 2022 Stipulation and Agreement of Settlement (ECF No. 231-2) (the "Stipulation").

2. The Court has jurisdiction over the subject matter of this Action and all matters related thereto, including all members of the Settlement Class.[1]

---

[1] "Settlement Class" means the class defined in the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (ECF No. 242), at 2-3.

3. Pursuant to and in compliance with Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finds and concludes that due and adequate notice of these proceedings was directed to all persons and entities who are Settlement Class Members who could be identified with reasonable effort advising them of the Fee and Expense Motion and of their right to object thereto, and a full and fair opportunity was accorded to persons and entities who are Settlement Class Members to be heard with respect to the Fee and Expense Motion.

4. The Court hereby finds that the Notice to the Settlement Class of the Fee and Expense Motion met the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1, 78u-4, as amended, and all other applicable law and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto.

5. No Settlement Class Member has filed an objection to the Fee and Expense Motion, nor requested exclusion from the Settlement Class.

6. Lead Counsel is hereby awarded, on behalf of all Plaintiffs' Counsel, attorneys' fees in the amount of $4,375,000 (25% of the Settlement Fund), and $750,612.54, in payment of Plaintiffs' Counsel's litigation expenses, together with any interest earned thereon for the same time period and at the same rate as that earned on the Settlement Fund until paid pursuant to the terms set forth in the Stipulation.

7. The attorneys' fees awarded in paragraph 6, <u>supra</u>, is subject to the hold-back provision of paragraph 10, <u>infra</u>.

8. The Court finds that the amount of fees awarded is appropriate and is fair and reasonable under both the "percentage-of-the-fund" method and using the lodestar cross-check, particularly given the substantial risks of non-recovery, the substantial time and effort involved, and the results obtained for the Settlement Class in connection with the Settlement.

9. In accordance with 15 U.S.C. § 78u-4(a)(4), the Court hereby awards reimbursement of costs and expenses from the Settlement Fund to Lead Plaintiff Alameda

- 2 -

County Employees' Retirement Association ("ACERA") in the amount of $10,000 and Additional Named Plaintiff Oklahoma Firefighters Pension and Retirement System ("OFPRS") in the amount of $8,500—sums the Court finds to be fair and reasonable—in connection with their representation of the Settlement Class.

10.     Ninety percent (90%) of the total amount of attorneys' fees awarded and interest earned, as well as all litigation expenses and interest earned and reimbursement of costs and expenses to Plaintiffs, shall be paid from the Settlement Fund immediately upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated herein by reference.  Consistent with this Court's established practice, the Court orders that 10% of the total amount of attorneys' fees awarded shall be withheld until after a distribution of the Net Settlement Fund to Authorized Claimants has been made.  Pursuant to the Court's Standing Order for Civil Cases (at 17), with Lead Counsel's filing of the Post-Distribution Accounting, Lead Counsel will submit a proposed order to the Court requesting the release of the remainder of its fee award and applicable earned interest.

11.     In making the awards of attorneys' fees, reimbursement of litigation expenses, and reimbursement of Plaintiffs' costs and expenses to be paid from the Settlement Fund, the Court has considered and found that:

        a.     The Settlement constitutes a favorable result for the Settlement Class as it created a common fund of $17.5 million in cash from which numerous Settlement Class Members who submit valid and timely Proofs of Claim will benefit;

        b.     The requested attorneys' fees and payment of litigation expenses have been reviewed and approved as fair and reasonable by Lead Plaintiff and Additional Named Plaintiff OFPRS, institutional investors that have been directly involved in the prosecution and resolution of the Action and who have substantial interests in ensuring that any fees and expenses paid to counsel are duly earned and not excessive;

- 3 -

c. The requested 25% fee request is consistent with an *ex-ante* fee agreement negotiated by ACERA and entered into at the outset of the litigation;

d. The attorneys' fees awarded are consistent with awards in similar cases and with the Ninth Circuit's 25% "benchmark";

e. Notice was disseminated to Settlement Class Members stating that Lead Counsel would be submitting a request for attorneys' fees in an amount not to exceed 25% of the Settlement Amount plus accrued interest, payment of expenses incurred in connection with the prosecution of this Action in an amount not to exceed $840,000 plus accrued interest, and a payment of up to an aggregate of $20,000 to Plaintiffs, which payment includes but is not limited to reimbursement of Plaintiffs' reasonable costs and expenses directly related to their representation of the Settlement Class. No Settlement Class Members have filed an objection to that request for fees, expenses, or reimbursement to Plaintiffs;

f. Plaintiffs' Counsel have expended substantial time and effort pursuing the Action on behalf of the Settlement Class;

g. The Action raised many complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings against the Defendants, the resolution of which would be uncertain;

h. Plaintiffs' Counsel assumed substantial risk by pursuing the Action on a contingent basis, having received no compensation during the Action, and expecting any fee award would be contingent on the result achieved;

i. As set forth in the Fee and Expense Motion, Plaintiffs' Counsel devoted over 15,400 hours, collectively, to the prosecution of the Action;

j. The fee awarded results in a negative lodestar multiplier of less than 0.5 of the collective lodestar of Plaintiffs' Counsel, which confirms the reasonableness of the requested fee;

k. Public policy strongly favors rewarding firms for bringing successful securities class action litigation; and

- 4 -

l.      The amounts to be paid from the Settlement Fund for attorneys' fees, expenses, and an award for reimbursement of Plaintiffs' costs and expenses are fair and reasonable and consistent with awards in similar cases.

12.      Any appeal or any challenge affecting this Court's approval regarding any attorneys' fee and expense application shall in no way disturb or affect the finality of the Judgment and other orders entered with respect to the Settlement.

13.      Exclusive jurisdiction is hereby retained over the subject matter of this Action and over all parties to the Action, including the administration and distribution of the Net Settlement Fund to Settlement Class Members.

14.      In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this Order shall be rendered null and void to the extent provided by the Stipulation and shall be vacated in accordance with the Stipulation.

IT IS SO ORDERED.

DATED:   March 6, 2023

_____
THE HONORABLE VINCE CHHABRIA
UNITED STATES DISTRICT JUDGE

# Exhibit 7K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
                             :

FULTON COUNTY EMPLOYEES'        :
RETIREMENT SYSTEM, Derivatively on Be:
THE GOLDMAN SACHS GROUP, INC.,   :

                             :                19-CV-1562 (VSB)

           Plaintiff        :

                             :      **FINAL JUDGMENT AND**

        -against-        :      **ORDER OF DISMISSAL**

                             :

LLOYD BLANKFEIN, DAVID M.    :
SOLOMON, M. MICHELE BURNS, MARK :
A. FLAHERTY, WILLIAM W. GEORGE, :
JAMES A. JOHNSON, ELLEN J.     :
KULLMAN, LAKSHMI N. MITTAL,   :
ADEBAYO O. OGUNLESI, PETER    :
OPPENHEIMER, DAVID A. VINIAR, and :
MARK O. WINKELMAN,         :

                             :

        Defendants,       :

                             :

          and          :

                             :

THE GOLDMAN SACHS GROUP, INC.,  :

                             :

        Nominal      :
        Defendant.     :

                             :
----------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

      A hearing having been held before this Court on January 13, 2023, pursuant to the Court's

Order of September 16, 2022 (the "Preliminary Approval Order"), on the application of the Parties

for approval of the settlement set forth in the Stipulation and Agreement of Settlement, executed

on May 13, 2022 (the "Stipulation" or "Settlement"); due and adequate notice of the Settlement

having been given as required in said Preliminary Approval Order; and the Court having

considered all papers filed and proceedings held herein, and otherwise being fully informed, and

good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, this 20th day of January, 2023, that:

1.      This Final Judgment and Order of Dismissal incorporates by reference the definitions in the Stipulation, and all capitalized terms used herein shall have the meanings as set forth in the Stipulation.

2.      Notice has been given to shareholders of The Goldman Sachs Group, Inc. ("Goldman Sachs" or the "Company") pursuant to and in the manner directed by the Preliminary Approval Order; proof of publication of the required notice was filed with the Court; and a full opportunity to be heard has been afforded to all parties, Goldman Sachs shareholders and other interested persons.  The form and manner of the notice provided is hereby confirmed to have been the best notice practicable under the circumstances and to have been given in full compliance with each of the requirements of Federal Rule of Civil Procedure 23.1, due process and applicable law, and it is further determined that all Goldman Sachs shareholders are bound by the Final Judgment and Order of Dismissal herein.

3.      The Court reconfirms that, for settlement purposes only, the Action is properly maintained as a shareholder derivative action on behalf of Goldman Sachs, and that Plaintiff fairly and adequately represented the interests of Goldman Sachs and its shareholders.  Plaintiff Counsel is authorized to act on behalf of Goldman Sachs shareholders with respect to all acts required by the Stipulation or such other acts which are reasonably necessary to consummate the Settlement set forth in the Stipulation.

4.      The Court has reviewed the proposed settlement for adequacy and fairness based on the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Specifically, it has assessed the settlement based on "(1) the complexity, expense and likely duration of the litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability and damages; (4) the risks of maintaining the class action through the trial; (5) the lack of any objections; (6) the ability of the defendants to withstand a greater judgment; and (7) that the Total Settlement Amount is within the range of reasonableness in light of the best possible recovery and the attendant risks of litigation." *Gonzalez v. PB Hudson LLC*, No. 17-CV-2010 (VSB), 2019 WL 11541374, at *2 (S.D.N.Y. Apr. 4, 2019) (citing *Grinnell Corp.*, 495 F.2d at 463). Based on this review, the Settlement is found to be fair, reasonable, and adequate, and is hereby approved in all respects pursuant to Federal Rule of Civil Procedure 23.1. The Parties are hereby authorized and directed to comply with and to consummate the Settlement in accordance with its terms and provisions, and the Clerk is directed to enter and docket this Final Judgment and Order of Dismissal in the Action. The Court finds that this Final Judgment and Order of Dismissal is a final judgment and should be entered in accordance with Federal Rule of Civil Procedure 58.

5. This Court has jurisdiction over the subject matter of the Action, including all matters necessary to effectuate the Settlement and this Final Judgment and over all parties to the Action.

6. The Action and the Released Claims are hereby dismissed on the merits with prejudice as to all Defendants in the Action and against all Released Parties on the merits and, except as may be awarded by the Court as contemplated below in Paragraphs 15 and 16, without fees or costs.

7. "Released Claims" means the Released Plaintiff Claims and the Released Defendant Claims. "Claims" means any and all manner of claims, demands, rights, liabilities,

3

losses, obligations, duties, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature, or description whatsoever, whether based on state, local, federal, statutory, regulatory, common, or other law or rule, whether asserted or unasserted, known or unknown, accrued or unaccrued, matured or not matured, liquidated or not liquidated, fixed or contingent, including Unknown Claims. "Released Plaintiff Claims" means any and all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, local, statutory, regulatory, common, foreign or other law or rule, that Plaintiff or the Company (i) asserted in the Complaint or (ii) could have asserted, or could hereafter assert against any of the Released Defendant Parties either directly or derivatively on behalf of the Company that in any way are based on, arise from or relate to the allegations, transactions, facts, matters, disclosures or nondisclosures set forth in the Complaint, including but not limited to the conduct, actions, inactions, deliberations, statements or representations of any Released Defendant Party. For the avoidance of doubt, "Released Plaintiff Claims" shall not include or release: (i) any claims relating to the right to enforce this Stipulation or Settlement, or (ii) any direct claims of Plaintiff or any other Goldman stockholder, including without limitation any direct claims asserted under the federal securities laws, including without limitation claims asserted in the Second Amended Class Action Complaint, dated October 28, 2019 (ECF No. 63) in *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc. et al.*, No. 1:18-cv-12084-VSB (S.D.N.Y.). "Released Defendant Claims" means any Claims that have been or could have been asserted in the Action, or in any other action or proceeding, by Defendants or any of their respective successors, transferees and assigns against any of the Released Plaintiff Parties, which arise out of or relate in any way to the institution, prosecution, settlement or dismissal of

4

the Action. "Released Defendant Claims" shall not include: (i) the right to enforce the Settlement; (ii) any Claims that arise out of or relate in any way to the D&O Policies that any of the Defendants has or may have against any of the Insurers; and (iii) any Claims that the Company (or any affiliate thereof) has or may have against Timothy Leissner or Ng Chong Hwa (also referred to as Roger Ng) including, without limitation, any right to clawback, demand forfeiture of, or reduce compensation arising out of or relating to, their employment by the Company or any direct or indirect affiliate thereof.

8. "Unknown Claims" means any Released Claims which the Released Parties do not know or suspect exist in their favor at the time of the release of the Released Claims as against the Released Parties, including without limitation those which, if known, might have affected the decision to enter into or object to the Settlement. With respect to any and all Released Claims, and although the Settlement provides for a specific release of the Released Parties, the Parties stipulate and agree that, upon the Effective Date, the Released Parties shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, waived the provisions, rights and benefits of California Civil Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Released Parties shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, waived any and all provisions, rights and benefits conferred by any law of any jurisdiction, state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542. Any Released Party may hereafter discover facts in addition to or different from those which he, she, they or it now knows

5

or believes to be true with respect to the Released Claims but, upon the Court's entry of the Final Judgment and Order of Dismissal, the Released Parties shall be deemed to have fully, finally, and forever settled and released any and all Released Claims known or unknown without regard to the subsequent discovery or existence of such different or additional facts. The Released Parties shall be deemed by operation of the Final Judgment and Order of Dismissal to have acknowledged that the foregoing waivers were separately bargained for and are key elements of the Settlement of which this release is a part.

9. "Released Parties" means the Released Plaintiff Parties and the Released Defendant Parties. "Released Plaintiff Parties" means Plaintiff, on behalf of itself, its legal representatives, heirs, executors, administrators, estates, predecessors, predecessors-in-interest, successors, successors-in-interest, affiliates, transferees, and assigns, and any Person acting for or on behalf of, or claiming under, any of them, and each of them, together with each of their respective officers, directors, managers, general partners, employees, representatives, and agents and Plaintiff Counsel. "Released Defendant Parties" means, whether or not any or all of the following Persons were named, served with process, or appeared in the Action: (i) Goldman Sachs; (ii) the Individual Defendants; (iii) any current or former director or officer of the Company or any of its affiliates; (iv) any Person that is or was related to or affiliated or associated with any or all of Defendants or in which any or all of them has or had a controlling interest; and (v) with respect to each of the Persons set forth or described in (i)-(iv), each of their respective past or present family members, spouses, heirs, trusts, trustees, executors, estates, foundations, administrators, beneficiaries, distributees, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, shareholders, principals, officers, managers,

6

directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, transferees, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers, financing sources, lenders, commercial bankers, attorneys (including, without limitation, Defendants Counsel), personal or legal representatives, accountants, tax advisors, insurers, co-insurers, reinsurers and associates. "Released Defendant Parties" shall not include Messrs. Timothy Leissner, Roger Ng, nor any person who meets the criteria of subparts (iv) or (v) above in respect of Messrs. Leissner or Ng.

10. As of the Effective Date, the Released Plaintiff Parties, Goldman Sachs and each of Goldman Sachs shareholders to the extent he, she, they, or it are acting or purporting to act derivatively on behalf of Goldman Sachs shall be deemed to have fully, finally and forever released, settled, and discharged the Released Defendant Parties from and with respect to every one of the Released Plaintiff Claims on the terms and conditions set forth in the Stipulation, and shall thereupon be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute, whether directly or indirectly, any Released Plaintiff Claims against any of the Released Defendant Parties.

11. As of the Effective Date, Defendants shall be deemed to have fully, finally, and forever, released, settled, and discharged the Released Plaintiff Parties from and with respect to every one of the Released Defendant Claims, and shall thereupon be forever barred and enjoined from commencing, instituting, or prosecuting, whether directly or indirectly, any of the Released Defendant Claims against any of the Released Plaintiff Parties.

12. As of the Effective Date, the Parties shall be deemed bound by the Stipulation and the Final Judgment and Order of Dismissal. The Final Judgment and Order of Dismissal including,

without limitation, the release of all Released Claims against all Released Parties, shall have res judicata, collateral estoppel, and all other preclusive effects in respect of all pending and future lawsuits, arbitrations, suits, actions, demands or proceedings involving any of the Released Plaintiff Parties or the Released Defendant Parties.

13.     Plaintiff, Goldman Sachs, and each and every Goldman Sachs shareholder are hereby permanently barred and enjoined from asserting, commencing, prosecuting, assisting, instigating, continuing or in any way participating in the commencement or prosecution of any action, whether directly, representatively, derivatively or in any other capacity, asserting any of the Released Claims that are released pursuant to this Final Judgment and Order of Dismissal or under the Stipulation.

14.     The existence of the Stipulation, its contents and any negotiations, statements, proceedings or agreements in connection therewith shall not be offered or received against any Party in any civil, criminal or administrative action, proceeding or forum as evidence of, or construed as or deemed to be evidence of, or in any way referred to for any other reason as against any of the Parties as a presumption, concession or admission:  (i) by Plaintiff of any infirmity in the Claims asserted in the Action; (ii) by any Individual Defendant with respect to his or her liability, negligence or fault in respect of the Claims that have been or could have been asserted in the Action; or (iii) that the consideration to be given hereunder represents the consideration which could be or would have been recovered at trial; *provided, however,* that nothing contained in this paragraph shall apply to references to the Stipulation or accompanying documents in any action, proceeding or forum to effectuate the provisions of the Stipulation

15.     Plaintiff Counsel's Fee Application is granted.  The Court has reviewed the proposed fee based on the "percentage of fund method[]," *Goldberger v. Integrated Res., Inc.*, 209

8

F.3d 43, 50 (2d Cir. 2000), and applied the "lodestar" method as an additional check on the validity of the percentage award requested. *Nichols v. Noom, Inc.*, No. 20-CV-3677 (KHP), 2022 WL 2705354, at *11 (S.D.N.Y. July 12, 2022). It has also reviewed this award in light of the six "*Goldberger* factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at *10 (quoting *In re Parking Heaters, Antitrust Litig.*, No. 15MC0940DLIJO, 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019). The 25 percent award sought is within the range of awards granted by judges in this District. *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *15 (S.D.N.Y. July 21, 2020) ("The 25% attorney fee (net of expenses) requested by Lead Counsel is within the range of percentage fees that have been awarded in the Second Circuit in securities class actions and other similar litigation with comparable recoveries."); *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 343 (S.D.N.Y. 2011) (determining, after collecting cases, that a 28 to 29 percent fee award was reasonable.) The Court's assessment of the *Goldberger* factors and lodestar cross-check further confirm the propriety of the award. Accordingly, Plaintiff Counsel is hereby awarded attorneys' fees in the amount of 25 percent of the Monetary Consideration provided in the Settlement, which amount the Court finds to be fair and reasonable, and which shall be paid to Plaintiff Counsel pursuant to the terms and conditions of the Stipulation.

16. Plaintiff's application for a Service Award is granted. "Courts in this Circuit routinely award . . . costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the

9

first place." *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 285 (S.D.N.Y. 2015). Accordingly, Plaintiff is hereby awarded a Service Award in the amount of $5,000, which shall be paid to Plaintiff from Plaintiff Counsel's fee award pursuant to the terms and conditions of the Stipulation.

17. The effectiveness of this Final Judgment and Order of Dismissal and the obligations of Plaintiff, Plaintiff Counsel, Goldman Sachs, Goldman Sachs shareholders, and Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal or other matter that relates solely to the issue of any award for attorneys' fees or reimbursement of expenses.

18. The Court further orders, adjudges and decrees that all other relief be, and is hereby, denied, and that this Final Judgment and Order of Dismissal disposes of all the claims and all the parties in the above-styled captioned shareholder derivative action.

19. Without affecting the finality of this Final Judgment and Order of Dismissal in any way, this Court retains jurisdiction over all matters relating to the administration and consummation of the Settlement and all Parties hereto for the purpose of construing, enforcing and administering the Settlement. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

20. The Court finds that the Action was filed, prosecuted, defended, and settled in good faith, and that during the course of the Action, the Parties and their respective counsel at all times complied with the requirements of Federal Rules of Civil Procedure.

21. In the event that the Settlement does not become effective in accordance with the terms of the Stipulation or the Effective Date does not occur, then this Final Judgment and Order of Dismissal shall be rendered null and void to the extent provided by and in accordance with the

10

Stipulation and shall be vacated, and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided for and in accordance with the Stipulation.

**SO ORDERED.**

Dated:      January 20, 2023
                New York, New York

The Honorable Vernon S. Broderick
United States District Judge

# Exhibit 7L

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE NOVO NORDISK
SECURITIES LITIGATION

No. 3:17-cv-00209-ZNQ-LHG

## ORDER AWARDING ATTORNEYS' FEES AND LITIGATION EXPENSES AND AWARDS TO LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4)

This matter having come before the Court on July 13, 2022, on Lead Counsel's motion for an award of attorneys' fees and litigation expenses (the "Fee Motion") in the above-captioned action (the "Action"), and the Court, having considered all papers filed and proceedings conducted herein, having found the Settlement of this Action to be fair, reasonable and adequate, and otherwise being fully informed in the premises and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.     This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated November 23, 2021 (the "Stipulation") (ECF 311-3), and all capitalized terms used in this Order, but not defined herein, shall have the same meanings as set forth in the Stipulation.

2.     This Court has jurisdiction over the subject matter of this Order, the Fee Motion, and all matters relating thereto, including Class Members.

3.     Notice of Lead Counsel's Fee Motion was given to all Class Members who could be located with reasonable effort. The form and method of notifying the Class of the Fee Motion met the requirements of Rule 23 of the Federal Rules of Civil Procedure and 15 U.S.C. §78u-4(a)(7), the

- 1 -

Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, the United States Constitution (including the Due Process clause), and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due, adequate, and sufficient notice to all persons and entities entitled thereto.

4.     The Court hereby awards Plaintiffs' Counsel attorneys' fees of 29% of the Settlement Fund (or $29 million together with interest earned thereon for the same time period and at the same rate as that earned on the Settlement Fund until paid), plus litigation expenses in the amount of $2,738,023.93. The Court finds that the amount of fees awarded is appropriate and that the amount of fees awarded is fair and reasonable under the "percentage-of-recovery" method.

5.     The awarded attorneys' fees and expenses shall be paid to Plaintiffs' Counsel subject to the terms, conditions, and obligations of the Stipulation, and in particular ¶15 thereof, which terms, conditions, and obligations are incorporated herein.

6.     In making this award of fees and expenses to Plaintiffs' Counsel, the Court has considered and found that:

(a)     the Settlement has created a fund of $100,000,000 in cash that is already on deposit, and numerous Class Members who submit, or have submitted, valid Proof of Claim Forms will benefit from the Settlement created by Plaintiffs' Counsel;

(b)     over 378,000 copies of the Settlement Notice were disseminated to potential Class Members indicating that Lead Counsel would move for attorneys' fees in an amount not to exceed 30% of the Settlement Fund, plus interest, and for litigation expenses in an amount not to exceed $3.3 million;

(c)     Plaintiffs' Counsel have pursued the Action and achieved the Settlement with skill, perseverance, and diligent advocacy;

- 2 -

(d)     Plaintiffs' Counsel have expended substantial time and effort pursuing the Action on behalf of the Class;

(e)     Plaintiffs' Counsel pursued the Action on a contingent basis, having received no compensation during the Action, and any fee amount has been contingent on the result achieved;

(f)     the Action involves complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings whose resolution would be uncertain;

(g)     had Plaintiffs' Counsel not achieved the Settlement, there would remain a significant risk that the Class may have recovered less or nothing from Defendants;

(h)     Plaintiffs' Counsel have devoted a total of 123,862 hours, with a lodestar value of $60,856,642.25, to achieve the Settlement;

(i)     public policy concerns favor the award of reasonable attorneys' fees and expenses in securities class action litigation; and

(j)     the attorneys' fees and expenses awarded are fair and reasonable and consistent with awards in similar cases within the Third Circuit.

7.     Any appeal or any challenge affecting this Court's approval regarding the Fee Motion shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

8.     Pursuant to 15 U.S.C. §78u-4(a)(4), Lead Plaintiffs Lehigh County Employees' Retirement System, Oklahoma Firefighters Pension and Retirement System, Boston Retirement System, Employees' Pension Plan of the City of Clearwater, and Central States, Southeast and Southwest Pension Fund are awarded $10,410.50, $3,237.50, $8,932.26, $5,343.79, and $12,095.00, respectively, for a total of $40,019.05, for representation of the Class during the Action.

9.     The Court has considered the objection to the fee application filed by Neville Hedley (ECF 354-1) and finds it to be without merit. The objection is overruled in its entirety.

10.     In the event that the Settlement is terminated or the Judgment approving the Settlement does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this Order shall be rendered null and void to the extent provided in the Stipulation and shall be vacated in accordance with the Stipulation.

11.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED on this _13th_ day of _July_, 2022.

_____
The Honorable Zahid N. Quraishi
United States District Judge

- 4 -

# Exhibit 7M

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) | Case No. 23-90005 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
THE RETENTION AND EMPLOYMENT OF GOODWIN PROCTER LLP AS
ATTORNEYS FOR THE AUDIT COMMITTEE OF PARTY CITY HOLDCO INC.**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this application was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this application was filed. Otherwise, the court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

the following in support of this application:

## Relief Requested

1.      The Debtors seek entry of an order (the "Order"), substantially in the form

attached hereto, authorizing the retention and employment by the Debtors of Goodwin Procter

LLP ("Goodwin") to serve as the attorneys for, and to advise, the audit committee (the "Audit

Committee") of Party City Holdco Inc. ("Party City") with respect to providing the Audit

Committee services solely in connection with Goodwin undertaking a review of Party City's

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Custom Injection Molding, LLC (4238); Amscan Inc. (1359); Amscan Purple Sage, LLC (3514); Am-Source, LLC (8427); Anagram Eden Prairie Property Holdings LLC (8309); Party City Corporation (3692); Party City Holdings Inc. (3029); Party Horizon Inc. (5812); PC Intermediate Holdings, Inc. (1229); PC Nextco Finance, Inc. (2091); PC Nextco Holdings, LLC (7285); Print Appeal, Inc. (5932); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

internal process for compiling and presenting information to Party City's auditors in connection with the audit and quarterly review process during the period from November 2022 to date on the terms and conditions set forth in Goodwin's engagement letter with the Audit Committee.[2]

2.     In support of this application, the Debtors rely upon (a) the declaration of Deborah Birnbach, a partner of Goodwin (the "Birnbach Declaration"), attached hereto as Exhibit A and (b) the declaration of Ian Heller, the Senior Vice President, General Counsel, and Secretary of Party City Holdco Inc. (the "Heller Declaration"), attached hereto as Exhibit B.

### Jurisdiction and Venue

3.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

4.     Venue is proper pursuant to 28 U.S.C. § 1408.

5.     The statutory bases for the relief requested herein are sections 327(e)[3] and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Cases in the Southern District of Texas (the "Complex Case Procedures").

---

[2]     The Engagement Letter is attached as Exhibit 1 to the Birnbach Declaration (as defined herein).

[3]     Even though Goodwin has not previously represented the Debtors, the Engagement is "for a specified special purpose" (11 U.S.C. § 327(e)) (i.e., the specified Services (as defined herein)) and thus employment under Section 327(e) is appropriate. However, as Goodwin is "disinterested," as described further herein, employment under Section 327(a) would also be appropriate.

2

**Background**

6. On January 17, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On January 18, 2023, the Court entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On February 1, 2023, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") [Docket No. 289]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

8. A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Orlofsky, Chief Restructuring Officer of Party City Holdco Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 11] (the "First Day Declaration").[4]

**Goodwin's Qualifications**

9. Goodwin is a full-service law firm with a national and international presence and has experience and expertise in every major substantive area of legal practice including litigation and related complex internal investigations and reviews for audit committees and other board committees in financial accounting and corporate governance related matters. Goodwin has undertaken similar representations in the past including several audit committee reviews for audit committees of public companies relating to accounting issues such as revenue recognition,

---

[4] Capitalized terms used but not defined in this application have the meanings ascribed to them in the First Day Declaration.

internal controls over financial reporting, financial restatements and other issues, which such matters required similar skill and experience. In particular, Deborah Birnbach, who will lead the Engagement (as defined herein) has led audit committee matters for over twenty publicly traded companies over the last eight years.

10.     The Debtors retained Goodwin on April 25, 2023, to undertake a review of Party City's internal process for compiling and presenting information to Party City's auditors in connection with the audit and quarterly review process during the period from November 2022 to date (the "Engagement").

11.     Deborah Birnbach, along with other partners of, counsel to, and associates of Goodwin who will be working on this matter, are currently members in good standing of the applicable state bar(s) in which they are admitted to practice.

12.     For the foregoing reasons, the Debtors believe that Goodwin is well-qualified to represent the Audit Committee in this particular matter and will do so efficiently. As such, it is the Debtors belief that such retention is in the best interests of the Debtors, their estates and creditors.

## Services to be Rendered

13.     The Debtors have requested that Goodwin undertake such review services and related analysis, and inform the Audit Committee of its findings and recommendations (if any), consistent with what would be customarily required under the circumstances presented, and consistent with Goodwin's experience in such matters, in order to complete the Engagement (the "Services").  It is currently anticipated that the Engagement will take approximately three to six weeks, although the time period may be extended based upon the information obtained in the course of providing the Services. Goodwin is willing to act as counsel with respect to the Engagement and to render the necessary professional services in connection with the same.

4

**Professional Compensation**

14. Goodwin's professional services are necessary to ensure that all matters related to the Engagement are handled diligently and efficiently. Goodwin practices in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, Goodwin's expertise, performance, and reputation, the nature of the work involved, and other factors. Goodwin has advised the Audit Committee that, subject to this Court's allowance of compensation and reimbursement of expenses in accordance with applicable general orders and fee guidelines of this Court, sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other orders of the Court, it will charge the Debtors for its legal services on an hourly basis in accordance with its ordinary and customary rates for matters of this type in effect on the date such services are rendered, and for reimbursement of all costs and expenses incurred in connection with these chapter 11 cases, as set forth in the Birnbach Declaration filed concurrently herewith.

15. The Birnbach Declaration sets forth hourly rates which are standard for Goodwin and are in accordance with its ordinary and customary rates for matters of this type in effect on the date such services are rendered. These rates are set at a level designed to fairly compensate Goodwin for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses, and are revised on an annual basis. Goodwin's current standard hourly rates range from $1,250 to $2,150 for partners, $710 to $1,175 for associates, and $360 to $620 for paralegals. These rates are subject to periodic adjustment to reflect economic and other conditions. Goodwin has not agreed to any variations from, or alternatives to, its standard billing arrangements for the Engagement.

16. The following attorneys will have primary responsibility for the Engagement.

| Name | Position | Current Hourly Rate |
|---|---|---|
| Deborah Birnbach | Partner | $1,775 |
| John Barker | Associate | $1,175 |
| James Nikraftar | Associate | $925 |
| Wrenne Bartlett | Associate | $805 |
| Casey Wright | Associate | $710 |

Other Goodwin lawyers may be consulted in connection with the Engagement, as necessary.

17. Goodwin also customarily charges its clients for various costs and expenses incurred, including, among other things, certain telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses approved by the client such as secretarial and other overtime. In addition, in connection with the Engagement, Goodwin anticipates that it will engage an outside service provider to assist with document collection, categorization, review and retrieval which expenses will be billed to the Debtors at cost. Goodwin will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to Goodwin's other clients.

**Compensation Received by Goodwin**

18. Goodwin did not receive any payments from the Debtors in connection with this matter during the ninety (90) days immediately preceding the Petition Date.

19. Goodwin's Engagement Letter requires a revision of the Approved Budget to include additional funds for Goodwin's estimated fees in the amount of two million dollars ($2,000,000) to be funded the Carve-Out Account as to which Goodwin will be a professional

entitled to the benefit of the same in accordance with the Final DIP Order.[5] Notwithstanding the foregoing, the Approved Budget will be increased by one million two hundred and fifty thousand dollars ($1,250,000) on account of Goodwin's estimated fees; provided, however, it shall be a condition of Goodwin's continued employment that the Approved Budget be further increased upon Goodwin's request based upon its then estimated fees. For the avoidance of doubt, Goodwin's estimate of its fees shall not be a cap on the allowed amount of Goodwin's total fees. Further, the Engagement Letter requires that Goodwin shall be entitled to file a final fee application and be paid immediately following the entry of an order approving Goodwin's final fees and reimbursement of expenses.

### Section 327 And Goodwin's Disinterestedness

20.     To the best of the Debtors' knowledge, as set forth in the Birnbach Declaration, (a) Goodwin does not represent or hold any interest adverse to the Debtors or to the estates with respect to the matter on which Goodwin is to be employed (i.e., the Services); (b) Goodwin is "disinterested" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and (c) neither Goodwin nor any of the partners, counsel, associates, or paralegals of Goodwin have any connection with or hold or represent an interest adverse to any of the Debtors, their affiliates, or their estates, except as specifically disclosed in the Birnbach Declaration. If any new relevant facts or relationships are discovered, Goodwin will use reasonable efforts to identify such developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

---

[5]     For purposes of this sentence, "Final DIP Order" means that certain "Final Order (I) Authorizing The Debtors To (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection To Certain Prepetition Secured Parties, (III) Modifying The Automatic Stay, and (IV) Granting Related Relief," entered in the Bankruptcy Cases as Docket No 587, and the other capitalized terms used in this sentence shall have the meaning ascribed to such terms in the Final DIP Order.

**Supporting Authority**

21.     The Debtors seek retention of Goodwin pursuant to section 327(e) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

22.     Goodwin is being employed for a specified special purpose – to provide the Services - and is not being employed to provided services generally in connection with the Debtors' chapter 11 cases.  As described herein, Goodwin's employment is in the best interest of the estates as it is necessary for the Debtors to complete the audit process.  Thus, while Goodwin has not previously represented the Debtors, employment of Goodwin pursuant to Section 327(e) is appropriate. [6]

23.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

---

[6]  In any event, as Goodwin is disinterested, as described herein, Goodwin's employment pursuant to Section 327(a) is also appropriate.  Section 327(a) of the Bankruptcy Code, provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

24. The Debtors submit that for all the reasons stated above and in the Birnbach Declaration, the retention and employment of Goodwin is necessary and in the best interests of the Debtors and their estates and complies with the requirements of section 327(e) and section 327(a) of the Bankruptcy Code. As stated in the Birnbach Declaration, Goodwin does not represent or hold any interest adverse to the Debtors' estates with respect to the Services or otherwise, and is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, as it does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as specifically disclosed in the Birnbach Declaration.

25. Pursuant to Local Rule 2014-1, this Application was filed more than thirty (30) days after the Petition Date because the Debtors recently determined to conduct a review of its internal process for compiling and presenting information to Party City's auditors in connection with the audit and quarterly review process. Accordingly, Goodwin was only engaged by the Debtors on April 25, 2023. This Application has been filed within thirty (30) days of Goodwin's engagement by the Debtors. Notwithstanding the foregoing, an Order authorizing employment is required *nunc pro tunc* because the Application was timely filed following Goodwin's engagement and prior to Engagement Goodwin had not provided services to the Debtors. Further, the required Services are critical to the Debtors' ongoing audit process which is an essential component of the Debtors' reorganization efforts. To the best of Goodwin's knowledge, approval of the Engagement will not prejudice any parties in interest.

**Notice**

26. The Debtors will provide notice of this application to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) JPM, as Prepetition ABL Agent, and counsel

9

thereto, Simpson Thacher & Bartlett LLP, 425 Lexington Ave., New York, NY 10017; (d) counsel to the Ad Hoc Noteholder Group, Davis Polk & Wardwell LLP, 450 Lexington Ave., New York, NY 10017; (e) Ankura Trust Company, LLC, as First Lien Notes Trustee, 140 Sherman St. 4th Fl., Fairfield, CT 06824; (f) Wilmington Trust, National Association, as Unsecured Notes Trustee, 246 Goose Ln., Ste. 105, Guilford, CT 06437; (g) counsel to the Ad Hoc Group of Anagram Noteholders, Milbank LLP, 55 Hudson Yards, New York, NY 10001; (h) Ankura Trust Company, LLC, as agent under the DIP Facility, and counsel thereto, Chapman and Cutler LLP, 1270 Avenue of the Americas, New York, NY 10020; (i) counsel to the Committee, Pachulski Stang Ziehl & Jones, 919 N. Market Street, Suite 1700, Wilmington, DE 19801; (j) the United States Attorney's Office for the Southern District of Texas; (k) the Internal Revenue Service; (l) the United States Securities and Exchange Commission; (m) the state attorneys general for states in which the Debtors conduct business; (n) other regulatory agencies having a regulatory or statutory interest in these cases; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested in the application and granting such other and further relief as is appropriate under the circumstances.

Dated:  April 27, 2023

/s/ Ian Heller

Ian Heller
Senior Vice President, General Counsel, and Secretary
Party City Holdco Inc.

11

**Certificate of Service**

      I certify that on April 27, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                    */s/ John F. Higgins*

                                                    John F. Higgins

12

# Exhibit 7N

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **LL FLOORING HOLDINGS, INC.,** *et al.,* | **Case No. 24-11680 (BLS)** |
| **Debtors.[1]** | **(Jointly Administered)** |
|  | **Obj. Deadline: September 6, 2024 at 4:00 p.m. (ET)**<br>**Hearing Date: September 16, 2024 at 11:00 a.m. (ET)** |

**APPLICATION OF THE DEBTORS FOR ENTRY OF
AN ORDER (I) AUTHORIZING THE RETENTION AND
EMPLOYMENT OF SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP AS COUNSEL TO THE DEBTORS EFFECTIVE
AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

LL Flooring Holdings, Inc. and certain of its affiliates, as the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, the "Company"), respectfully represent as follows in support of this application (this "Application"):

## BACKGROUND

1. On August 11, 2024 (the "Petition Date"), each Debtor commenced a case by filing a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The chapter 11 cases (the "Chapter 11 Cases") have been consolidated for procedural purposes only

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of their respective tax identification numbers, are as follows: LL Flooring Holdings, Inc. (0817); LL Flooring, Inc. (9199); Lumber Liquidators Leasing, LLC (N/A); LL Flooring Services, LLC (5960); and Lumber Liquidators Foreign Holdings, LLC (4568). The address of the Debtors' corporate headquarters is 4901 Bakers Mill Lane, Richmond, VA 23230.

and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.     The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     On August 21, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 116].  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

4.     The Company is one of North America's leading specialty retailers of flooring. The Company carries a wide range of hard-surface floors and carpets in a range of styles and designs, and primarily sells to consumers or flooring focused professionals.

5.     Additional factual background regarding the Company, including their business operations, corporate and capital structure, and the events leading up to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Holly Etlin in Support of Chapter 11 Petitions and First Day Papers* [Docket No. 11] (the "First Day Declaration"),[2] which is incorporated herein by reference.

**JURISDICTION AND VENUE**

6.     This Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

U.S.C. § 157(b). Venue of these Chapter 11 Cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

7. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order by the Court with respect to this Application if it is later determined that the Court would lack Article III jurisdiction to enter such Order or judgment absent the consent of the parties.

**RELIEF REQUESTED**

8. Through this Application, pursuant to sections 327(a) and 329 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1 and 2016-1, the Debtors respectfully request entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") (i) authorizing the employment of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden" or the "Firm") as counsel for the Debtors, effective as of the Petition Date, to perform the legal services that will be necessary during the Chapter 11 Cases, as more fully described herein, pursuant to and in accordance with the terms and conditions set forth in the engagement letter between the Debtors and Skadden, effective as of June 24, 2024 (the "Restructuring Engagement Agreement"), and (ii) granting related relief. In support of this Application, the Debtors submit the *Declaration of Lisa Laukitis in Support of the Debtors' Application for an Order (I) Authorizing the Employment and Retention of Skadden, Arps, Slate, Meagher & Flom LLP as Counsel to the Debtors Effective as of the Petition Date and (II) Granting Related Relief* (the "Laukitis Declaration"), attached hereto as **Exhibit B**, and the *Declaration of Alice Givens in Support of the Debtors' Application for an Order (I) Authorizing the Employment and Retention of Skadden, Arps, Slate, Meagher & Flom LLP as Counsel to the*

3

*Debtors Effective as of the Petition Date and (II) Granting Related Relief* (the "Givens Declaration"), attached hereto as **Exhibit C**.

## SKADDEN'S QUALIFICATIONS

9.      Skadden's representation of the Company dates back to August 2016, when Skadden was retained to advise the Company's board of directors in connection with specific governance and possible transactional matters.  Since that time, Skadden has represented the Company in a variety of transactional, governance, and benefits matters.

10.      Skadden's Restructuring Engagement Agreement with the Debtors, which supersedes prior engagement letters, memorializes the work that Skadden performs for the Debtors in connection with (i) the restructuring of the Debtors' financial obligations; (ii) certain governance matters; (iii) certain transactional matters; and (iv) certain financing matters.  The Restructuring Engagement Agreement is attached to the Laukitis Declaration as Exhibit 1.

11.      Because Skadden has worked closely with the Company on a variety of matters over the past several years, Skadden has developed a wealth of institutional knowledge about the Company's capital structure, governance, financing documents, and other material agreements. Additionally, due to Skadden's working history with the Company, Skadden is familiar with the Company's business affairs and many of the potential legal issues that have arisen and may arise in the context of these Chapter 11 Cases.  Skadden's understanding of the Company was critical as the Company embarked on its restructuring efforts, including engaging in negotiations with the Debtors' Prepetition ABL Agent, exploring various strategic alternatives to address the Debtors' financial circumstances, and, ultimately, preparing these Chapter 11 Cases.  Skadden is deeply involved in the progression of these Chapter 11 Cases.

12.      The Debtors also selected Skadden as their restructuring counsel because of Skadden's experience and knowledge in the fields of debtors' and creditors' rights, mergers and

4

acquisitions, and business reorganizations under chapter 11 of the Bankruptcy Code. The Debtors believe that Skadden has assembled a highly qualified team of professionals and paraprofessionals to provide services to the Debtors during the Chapter 11 Cases.

13. Additional information regarding Skadden's qualifications is set forth more fully in the Laukitis Declaration.

## SCOPE OF SERVICES TO BE PROVIDED

14. The Debtors seek to retain Skadden, pursuant to the Restructuring Engagement Agreement, to render various services, including, but not limited to, the following:

(i) advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their business and properties;

(ii) attend meetings and negotiate with representatives of creditors and other parties in interest and advise and consult on the conduct of the Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

(iii) take all necessary actions to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of actions commenced against the Debtors' estates, negotiations concerning litigation in which the Debtors may be involved, and objections to claims filed against the Debtors' estates;

(iv) prepare on behalf of the Debtors all motions, applications, answers, orders, reports, and papers necessary to the administration of the estates;

(v) negotiate and prepare on the Debtors' behalf: chapter 11 plan(s) or a sale of all or substantially all assets pursuant to section 363 of the Bankruptcy Code and all related agreements and/or documents, and take any necessary action on behalf of the Debtors in connection with the Chapter 11 Cases;

(vi) explore various strategic alternatives to address the Debtors' financial circumstances;

(vii) appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtors' estates before such courts and the U.S. Trustee;

(viii) perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with the Chapter 11 Cases.

5

15. It is necessary and essential that the Debtors, as debtors in possession, employ attorneys to render the foregoing professional services to enable the Debtors to carry out their duties as debtors and debtors in possession. Skadden has indicated a willingness to act on behalf of, and render such services to, the Debtors. Moreover, corporate legal issues in bankruptcy require a specialized skillset, and Skadden professionals have extensive experience with respect to these issues.

16. The Debtors have filed or are planning to file retention applications for other professionals in the Chapter 11 Cases. In particular, the Debtors are seeking Court approval for the retention of (i) AP Services, LLC, as financial advisor; (ii) Houlihan Lokey Capital, Inc., as investment banker; and (iii) Stretto, Inc., as claims, noticing, and administrative agent. Skadden has informed the Debtors that it will take appropriate steps and coordinate with the Debtors' other professionals to avoid unnecessary duplication of efforts.

### SKADDEN'S COMPENSATION

17. Skadden will accept as compensation for its work during the Chapter 11 Cases such sums as may be allowed by this Court based on (i) the basis of the professional time spent; (ii) the rates charged for such services; (iii) the necessity of such services to the administration of the estates; (iv) the reasonableness of the time within which the services were performed; and (v) the complexity, importance, and nature of the problems, issues, or tasks addressed in these Chapter 11 Cases. Additionally, Skadden will seek compensation for all time and expenses associated with its retention as a section 327(a) professional, including the preparation of this Application, the Laukitis Declaration, and related documents, as well as any monthly fee statements or interim and final fee applications.

18. Skadden's fees for professional services are based on its guideline hourly rates, which are periodically adjusted. Since January 1, 2024, the hourly rates under the Firm's

standard rate structure have ranged from $675 to $1,510 for associates; $1,580 to $1,800 for counsel; and $1,860 to $2,370 for partners (collectively, the "Skadden Rates"). The sole adjustment made to the Skadden Rates that is applicable to Skadden's services on prepetition matters is the discount of M&A partner Richard Grossman's hourly fees, which remain frozen at the 2023 level of $2,050 for the duration of the Restructuring Engagement Agreement. Skadden has advised the Debtors that the hourly rates set forth above are subject to periodic increases in the normal course of the Firms business, often due to the increased experience of a particular professional. Skadden will provide notice of any future rate increase to the Debtors, the U.S. Trustee, and any official committee appointed in these Chapter 11 Cases.

19. Consistent with the Firm's policy with respect to its other clients, Skadden will continue to charge the Debtors for all other services provided and for other charges and disbursements incurred in the rendition of services. These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, and witness fees and other fees related to trials and hearings. Charges and disbursements are invoiced pursuant to Skadden's *Policy Statement Concerning Charges and Disbursements*, which is annexed to the Restructuring Engagement Agreement.

20. As set forth in the Laukitis Declaration, during the ninety (90) days prior to the Petition Date, the Firm received several payments to be held as an advanced payment retainer totaling $5,805,026.40 (the "Advanced Payment Retainer"). Prior to the Petition Date, the Firm's fees and expenses were applied against the Advanced Payment Retainer as they were incurred. During this 90-day period, the Firm invoiced and applied against the Advanced

Payment Retainer $4,305,026.40 for prepetition services and expenses. As of the Petition Date, the Advanced Payment Retainer held $1,500,000.

21. As of the Petition Date, the Debtors did not owe Skadden any amounts for legal services rendered before the Petition Date. Although certain expenses and fees may have been incurred but not yet applied to the Advanced Payment Retainer, the amount of Skadden's Advanced Payment Retainer always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

22. Skadden intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in the Chapter 11 Cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in the Chapter 11 Cases governing professional compensation and reimbursement for services rendered and charges and disbursements incurred. Skadden will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtors in the Chapter 11 Cases at the then current rate charged for such services as described herein.

23. Other than as set forth above, no commitments have been made or received by Skadden with respect to compensation to be paid in the Chapter 11 Cases.

24. Except for sharing arrangements among Skadden, its affiliated law practice entities, and their respective members, Skadden has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

## DISINTERESTEDNESS

25. The Debtors understand that except as otherwise set forth herein and in the accompanying Laukitis Declaration:

(i) Neither Skadden nor any attorney at the Firm holds or represents an interest adverse to the estates.

(ii) Neither Skadden nor any attorney at the Firm is or was a creditor, an equity security holder, or an insider of the Debtors.

(iii) Neither Skadden nor any attorney at the Firm is or was, within two (2) years before the Petition Date, a director, officer, or employee of the Debtors.

(iv) Neither Skadden nor any attorney at the Firm has an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or for any other reason.

26. In view of the foregoing, the Debtors believe that Skadden: (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and (ii) does not hold nor represent any interest that is adverse to the Debtors or their estates as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code.

27. As set forth in the Laukitis Declaration, Skadden in the past has represented, currently represents, and in the future likely will represent certain parties in interest or their affiliates in matters that are either unrelated to the Chapter 11 Cases, or otherwise not adverse to the Debtors or their estates.

28. Skadden has informed the Debtors that throughout the Chapter 11 Cases, Skadden will continue to conduct periodic conflicts analyses to determine whether it is performing or has performed services for any significant parties in interest in the Chapter 11 Cases and that Skadden will promptly a supplemental declaration to disclose any material developments

regarding the Debtors or any other pertinent relationships or connections that come to Skadden's attention.

## STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

29. Skadden shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of this Court. Skadden also intends to make a reasonable effort to comply with U.S. Trustee requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "U.S. Trustee Guidelines"), both in connection with this Application and the interim and final fee applications to be filed by Skadden in the Chapter 11 Cases.

30. The following information is provided by Skadden pursuant to paragraph D.1 of the U.S. Trustee Guidelines:

**Question:** Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Answer: The sole variation from the Firm's standard Skadden Rates is a discount applied to M&A partner Richard Grossman's hourly rate, which remains frozen at the 2023 level of $2,050 for the duration of the Restructuring Engagement Agreement.

**Question:** Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Answer: No.

**Question**: If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your

10

billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

Answer:  Skadden represented the client in the 12 months prepetition. During that representation, on January 1, 2024, Skadden raised its billing rates, as it does customarily from time to time. The material financial terms for the prepetition engagement remained the same, as the engagement was on an hourly basis.

**Question**:  Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

Answer:  The Debtors have developed a 13-week cash flow budget, which includes a line item for "Professional Fees," including Skadden's good-faith estimated fees. Recognizing that unforeseeable fees and expenses may arise in complex chapter 11 cases, Skadden and the Debtors may need to amend the Skadden budget as necessary to reflect changed circumstances or unanticipated developments. Skadden and the Debtors will continue to comply with the U.S. Trustee's requests for information and additional disclosures and with any orders of this Court.

31.     The Debtors request approval of the employment of Skadden effective as of the Petition Date. Such relief is warranted by the circumstances presented by the Chapter 11 Cases.

## BASIS FOR RELIEF

32.     The Debtors seek retention of Skadden as their attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

[M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

33.     Bankruptcy Rule 2014(a) requires that an application for retention include:

[S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the

11

> United States trustee, or any person employed in the office of the
> United States trustee.

Fed. R. Bankr. P. 2014.

34.    The Debtors submit that for all the reasons stated above and in the Laukitis

Declaration, the retention and employment of Skadden as counsel to the Debtors is warranted.

Further, as stated in the Laukitis Declaration, Skadden is a "disinterested person" within the

meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the

Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and

has no connection to the Debtors, their creditors, or other parties in interest, except as may be

disclosed in the Laukitis Declaration.

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

35.    The Debtors also request that the Court waive the stay imposed by Bankruptcy

Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other

than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the

court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the

Debtors seek in this Application is necessary for the Debtors to operate without interruption and

to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court

waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief

sought herein justifies immediate relief.

## NOTICE

36.    Notice of this Application will be given to: (i) the U.S. Trustee; (ii) the parties

included on the Debtors' consolidated list of their thirty (30) largest unsecured creditors; (iii) the

Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) the Office of the

United States Attorney for the District of Delaware; (vi) counsel to the DIP ABL Agent and

12

Prepetition ABL Agent; (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (viii) all parties entitled to notice pursuant to Local Rules 2002-1(b) and 9013-1(m). The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

37.     No previous request for the relief sought therein has been made to this Court or any other court.

## CONCLUSION

The Debtors respectfully request that this Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: August 23, 2024
      Richmond, Virginia

LL Flooring Holdings, Inc.
(on behalf of itself and the other Debtors)

By:     */s/ Alice G. Givens*
Name: Alice G. Givens
Title:   Chief Legal, Ethics and Compliance Officer
       and Corporate Secretary

# Exhibit 7O

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT AHEARN and ALMAR SALES
COMPANY, Individually and On Behalf
of All Others Similarly Situated,

Plaintiff,

v.

CREDIT SUISSE FIRST BOSTON LLC,

Defendant.

No. 03-CV-10956 (JLT)

## FINAL JUDGMENT

**WHEREAS**, the parties to the above-described action (the "Action") entered into a Settlement Agreement dated as of March 13, 2006 (the "Settlement"); and

**WHEREAS,** on March 14, 2006 the Court entered an Order of Preliminary Approval which, inter alia: (i) preliminarily approved the Settlement; (ii) confirmed the Action has been certified as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (iii) approved the forms of notice of the Settlement to the Class Members; (iv) directed that appropriate notice of the Settlement be given to the Class; and (v) set a hearing date for final approval of the Settlement; and

**WHEREAS**, notice of the Settlement was mailed to Class Members and the Summary Notice of the Settlement was published in the national edition of The Wall Street Journal, as attested to in the Affidavit of the Claims Administrator filed herein; and

**WHEREAS,** on June 7, 2006, a hearing was held on whether the Settlement was fair, reasonable, adequate, and in the best interests of the Class ("Settlement Hearing"); and

**WHEREAS,** based on the foregoing, having heard the statements of counsel for the parties and of such persons as chose to appear at the Settlement Hearing, having considered all of the pleadings and proceedings in the Action, and being otherwise fully advised,

**IT IS HEREBY ORDERED** that:

1.      This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including Class Members.

2.      The form, content, and method of dissemination of the notice given to the Class, including both published notice and individual notice to all Class Members who could be identified through reasonable effort, was adequate and reasonable, and constituted the best notice practicable under the circumstances.

3.      The notice, as given, complied with the requirements of 15 U.S.C. § 78u-4(a)(7) and of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth therein.

4.      The Plan of Distribution described in the notice to Class Members is fair and reasonable and it is hereby approved.

5.      The Representative Plaintiffs have fairly and adequately represented the interests of the Class Members in connection with the Settlement.

6.      The Representative Plaintiffs and the Class Members, and all and each of them, are hereby bound by the terms of the Settlement set forth in the Settlement Agreement.

7.      The provisions of the Settlement Agreement, including definitions of the terms used therein, are hereby incorporated by reference as though fully set forth herein.

2

8. All parties and counsel appearing herein have complied with their obligations under Rule 11(b) of the Federal Rules of Civil Procedure.

9. This action is certified as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, as previously determined by this Court in its Order dated August 17, 2005. The Class consists of all persons or entities who during the period from January 5, 2001 through April 5, 2001, inclusive ("Class Period"), purchased common stock of Winstar Communications, Inc. ("Winstar"), and were damaged thereby. Excluded from the Class are Credit Suisse First Boston, LLC ("CSFB" or "Defendant"); any parent, subsidiary, affiliate, officer or director of the Defendant; any former officer or director of Winstar; any entity in which any of the above has a controlling interest; and the legal representatives, heirs, successors, predecessors in interest, affiliates, or assigns of any of the above (the "Class").

10. There have been no requests for exclusion from the class.

11. The Settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class, and it shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

12. Judgment shall be, and hereby is, entered dismissing the Action with prejudice and without taxation of costs in favor of or against any party except as provided in the Settlement Agreement.

13. The Representative Plaintiffs and all Class Members are hereby conclusively deemed to have released the Defendant, and its past and present parents, subsidiaries, and affiliated corporations and entities, the predecessors and successors in interest of any of them, and all of their respective past and present officers, directors, employees, agents

3

and assigns (the "Released Parties"), from any and all Settled Claims (the "Settled Claims"). As defined in the Settlement Agreement, "Settled Claims" means any and all claims, actions, causes of action, demands, suits, rights or liabilities, whether arising out of state or federal law, including Unknown Claims, of any Class Members, which exist or may exist against the Released Parties, by reason of any matter, event, cause or thing of any nature whatsoever arising out of, relating to, or in any way connected with: (a) the purchase, acquisition, sale, holding or disposition of any Winstar Securities during the Class Period; or (b) any of the facts, circumstances, transactions, events, occurrences, acts, omissions, or failures to act that have been alleged or could have been alleged by any Lead Plaintiff or other Class Member.

14.     The Representative Plaintiffs and all Class Members are hereby barred and permanently enjoined from instituting, asserting or prosecuting, either directly, representatively, derivatively or in any other capacity, any and all Settled Claims which they or any of them had, have or may have against the Released Parties.

15.     The Court appoints the law firms of Shapiro Haber & Urmy LLP and Berger & Montague as Class Counsel for purposes of administration of the Settlement.

16.     The Plan of Distribution of the Settlement Fund as described in the notice to Class Members is hereby approved, subject to modification by further order of this Court. Any order or proceedings relating to the Plan of Distribution or amendments thereto shall not operate to terminate or cancel the Settlement Agreement or affect the finality of this Order approving the Settlement Agreement.

17.     The Court hereby decrees that neither the Settlement Agreement nor this Final Judgment nor the fact of the Settlement is an admission or concession by the

4

Defendant of any liability or wrongdoing. This Final Judgment is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. Neither the Settlement Agreement nor this Final Judgment nor the fact of Settlement nor the settlement proceedings nor the settlement negotiations nor any related documents shall be offered or received in evidence as an admission, concession, presumption or inference against the Defendant in any proceeding, other than such proceedings as may be necessary to consummate or enforce the Settlement Agreement.

18. The parties to the Settlement Agreement, their agents, employees, and attorneys, and the Claims Administrator and the Escrow Agent, shall not be liable for anything done or omitted in connection with these proceedings, the entry of this Final Judgment, or the administration of the payments to Authorized Claimants as provided in the Settlement Agreement and this Order, except for their own willful misconduct. No Class Member shall have any claim against Lead Plaintiff or Lead Counsel based on distributions made substantially in accordance with the Distribution Plan and orders of the Court. No Class Member shall have any further rights or recourse against the Defendant for any matter related to the Plan of Allocation, distributions thereunder, or the claims process generally.

19. Class Counsel are awarded attorneys' fees in the amount of $ 2,640,000.00 and reimbursement of expenses, including experts' fees and expenses, in the amount of $ 339,440 , such amounts to be paid from out of the Settlement Fund. Representative Plaintiff Robert Ahearn is awarded the sum of $ 25,000 and Representative Plaintiff Almar Sales Company is awarded the sum of $ 10,000 , as reasonable

5

costs and expenses directly relating to the representation of the Class as provided in 15 U.S.C. § 78u-4(a)(4), such amounts to be paid from out of the Settlement Fund.

20. Such Fees and Expenses shall be payable from the Settlement Fund within seven (7) business days after entry of this Order (subject to the repayment provisions of the Settlement Agreement), notwithstanding the existence of any potential appeal or collateral attack on this Order.

21. The Court hereby retains and reserves jurisdiction over implementation of this Settlement and any distribution to Authorized Claimants under the terms and conditions of the Settlement Agreement and pursuant to further orders of this Court.

22. There being no just reason for delay, the Clerk of Court is hereby directed to enter final judgment forthwith pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. The direction of the entry of final judgment pursuant to Rule 54(b) is appropriate and proper because this judgment fully and finally adjudicates the claims of the Plaintiffs and the Class against the Defendants in this Action, it allows consummation of the Settlement, and it will expedite the distribution of the Settlement proceeds to the Class Members.

Dated: June 7 , 2006

_____
Honorable Joseph L. Tauro
United States District Judge

# Exhibit 7P

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, individually and on behalf of all others similarly situated,

          Plaintiff,

      v.

MOHAWK INDUSTRIES, INC. and JEFFREY S. LORBERBAUM,

          Defendants.

Civ. A. No. 4:20-cv-00005-VMC

# ORDER AWARDING
## ATTORNEYS' FEES AND LITIGATION EXPENSES

This matter came on for hearing on May 31, 2023 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses in the above-captioned class action (the "Action"). The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Class Members who or which could be identified with reasonable effort, and that a summary notice of the Settlement Hearing substantially in the form approved by the Court was published in the *Wall Street Journal* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court

having considered and determined the fairness and reasonableness of the attorneys' fees and Litigation Expenses requested;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated January 13, 2023 (the "Stipulation") and all capitalized terms not otherwise defined in this Order shall have the same meaning as they have in the Stipulation.

2.     The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Class Members.

3.     Notice of Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses was given to all Class Members who could be identified with reasonable effort.  The form and method of notifying the Class of the motion for an award of attorneys' fees and Litigation Expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq*., as amended, and all other applicable laws and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto.

4.     Plaintiff's Counsel are hereby awarded attorneys' fees in the amount of 25% of the Settlement Fund, net of total Court-awarded Litigation Expenses, which

sum the Court finds to be fair and reasonable. Plaintiff's Counsel are also hereby awarded $691,551.66 in payment of Litigation Expenses to be paid from the Settlement Fund, which sum the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiff's Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.      In making this award of attorneys' fees and payment of Litigation Expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a)      The Settlement has created a fund of $60,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiff's Counsel;

(b)      The fee sought has been reviewed and approved as reasonable by Lead Plaintiff, which is a sophisticated institutional investor that closely supervised, monitored, and actively participated in the prosecution and settlement of the Action;

(c)      Over 221,000 copies of the Notice were mailed to potential Class Members and nominees stating that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and for

3

payment of Litigation Expenses in an amount not to exceed $1,000,000, and there were no objections to the requested attorneys' fees and expenses;

(d)     Plaintiff's Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

(e)     The Action raised a number of complex issues and involved substantial risks;

(f)     If Lead Counsel had not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other Class Members may have recovered significantly less, or nothing at all, from Defendants;

(g)     Plaintiff's Counsel devoted over 27,900 hours to the Action, with a lodestar value of approximately $14,605,900, to achieve the Settlement;

(h)     Plaintiff's Counsel at all times litigated this Action on a fully contingent basis to achieve the Settlement; and

(i)     The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.     The Court further finds that the above-stated award of Litigation Expenses (*supra* paragraph 4) to be paid from the Settlement Fund to Plaintiff's Counsel in payment of Litigation Expenses is fair and reasonable, and that the

4

Litigation Expenses are reasonable in amount, and were incurred for costs and expenses that were of a type customarily reimbursed in cases of this type.

7. Lead Plaintiff Public Employees' Retirement System of Mississippi is hereby awarded $32,450.00 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

8. Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

9. Exclusive jurisdiction is hereby retained over the Parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation, or enforcement of the Stipulation and this Order.

10. In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

11. There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

So Ordered this 31st Day of May, 2023.

_____
Victoria Marie Calvert
United States District Judge

5

# Exhibit 7Q

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Richmond Division)

|  |  |  |
|---|---|---|
| In re JELD-WEN HOLDING, INC. SECURITIES LITIGATION | ) ) ) ) | Civil Action No. 3:20-cv-00112-JAG |
| This Document Relates To: | ) ) | CLASS ACTION |
| ALL ACTIONS. | ) ) ) ) | |

**ORDER AWARDING ATTORNEYS' FEES AND EXPENSES**

WHEREAS, this matter came on for hearing on November 22, 2021 (the "Settlement Hearing") on Class Counsel's motion for an award of attorneys' fees and payment of expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Class Members who could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* and transmitted over *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement, dated as of June 4, 2021 (the "Stipulation"), and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all Parties to the Action, including all Class Members.

3. Notice of Class Counsel's motion for an award of attorneys' fees and payment of expenses was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the motion for an award of attorneys' fees and payment of litigation expenses satisfied the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995; constituted the best notice practicable under the circumstances; and constituted due, adequate, and sufficient notice to all Persons entitled thereto.

4. There have been no objections to Class Counsel's request for attorneys' fees and litigation expenses.

5. Class Counsel is awarded attorneys' fees in the amount of $10,000,000 (*i.e.,* 25% of the Settlement Amount), plus interest at the same rate earned by the Settlement Fund. Class Counsel is also awarded $1,241,263.63 in litigation expenses, plus accrued interest. The Court finds these sums to be fair and reasonable.

6. Class Representative Public Employees' Retirement System of Mississippi is awarded $23,350 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class, pursuant to the PSLRA.

7. Class Representative Wisconsin Laborers' Pension Fund is awarded $5,190 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class, pursuant to the PSLRA.

2

8. In making this award of attorneys' fees and expenses to be paid from the Settlement Fund, pursuant to the terms and conditions of the Stipulation, the Court has considered and found that:

(a) The Settlement has created a fund of $40,000,000 in cash pursuant to the terms of the Stipulation, and that numerous Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of counsel;

(b) The fee sought by Class Counsel has been reviewed and approved as reasonable by Class Representatives, sophisticated investors that oversaw the prosecution and resolution of the Action;

(c) 30,763 copies of the Notice were mailed to potential Class Members and nominees stating that Class Counsel would apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund and expenses in an amount not to exceed $1,500,000, and there have been no objections;

(d) The Action raised a number of complex issues;

(e) Had Class Counsel not achieved the Settlement there would remain a significant risk that Class Representatives and the other members of the Class may have recovered less or nothing from Defendants;

(f) Class Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

(g) The amount of attorneys' fees awarded and litigation expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases;

(h) Public policy favors the award of attorneys' fees and expenses in securities class action litigation; and

3

(i)     Plaintiffs' Counsel expended more than 18,000 hours, with a lodestar value of $10,672,222.25, to achieve the Settlement.

9.     Any appeal or any challenge affecting this Court's approval of any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

10.     Exclusive jurisdiction is hereby retained over the Parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation, or enforcement of the Stipulation and this Order.

11.     In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

12.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

IT IS SO ORDERED.

Dated: 22 November , 2021

/s/
John A. Gibney, Jr.
United States District Judge

HONORABLE JOHN A. GIBNEY, JR.
UNITED STATES DISTRICT JUDGE

4