**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CITY OF MIAMI FIRE FIGHTERS' AND POLICE OFFICERS' RETIREMENT TRUST, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>CERENCE INC., SANJAY DHAWAN, and MARK J. GALLENBERGER,<br><br>　　　　　　　　Defendants. | No. 1:22-cv-10321-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      BACKGROUND ................................................................................................2

II.      CLAIMS ADMINISTRATION .......................................................................3

       A.      No Disputed Claims ...............................................................................4

       B.      Late Claims and Final Cut-Off Date .....................................................5

III.      FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ..........................6

IV.      DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND ..................7

       A.      Initial Distribution of the Net Settlement Fund ....................................7

       B.      Additional Distribution(s) of the Net Settlement Fund.........................8

V.      RELEASE OF CLAIMS...................................................................................9

VI.      CONCLUSION...............................................................................................11

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Bos. Sci. Corp. Secs. Litig.*,
   No. 1:20-cv-12225-ADB, slip op. (D. Mass. Feb. 26, 2025), ECF No. 174 ..........................10

*Machado v. Endurance Int'l Group Holdings, Inc.*,
   Case No. 1:15-cv-11775-GAO, 2021 WL 283406 (D. Mass. Jan. 27, 2021)..................... 10-11

Lead Plaintiff Public Employees' Retirement System of Mississippi ("Lead Plaintiff") respectfully moves for entry of the proposed Order Approving Distribution Plan ("Distribution Order") for the proceeds of the Settlement in the above-captioned securities class action ("Action"). The Distribution Plan is included in the accompanying Declaration of Eric Miller ("Miller Declaration" or "Miller Decl."), submitted on behalf of the Court-approved Claims Administrator, A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data").[1]

Lead Plaintiff agreed to settle the Action in exchange for a cash payment of $30 million, which has been deposited into an escrow account and is earning interest for the benefit of the Settlement Class. The Settlement was approved by the Court on December 18, 2024 following a rigorous notice program and without objection to any aspect of the Settlement by any class members. Following the Court's approval, Lead Plaintiff and Lead Counsel have overseen the Court-authorized claims administration process, in which A.B. Data carefully reviewed the Claims received and provided any Claimants with deficiencies in their Claims a chance to cure those defects. The number of damaged shares of Cerence stock included in the valid Claims received equaled approximately 100% of the number estimated by the Lead Plaintiff's damages expert, attesting to the robust participation of the Settlement Class. The Claims Administrator has now completed processing the Claims received for the Settlement and, through this motion, Lead Plaintiff seeks the Court's approval to distribute the Net Settlement Fund to Settlement Class Members who submitted eligible Claims.

The Distribution Order will, upon being entered by the Court, permit A.B. Data to make an Initial Distribution of the Settlement proceeds to eligible Claimants. Among other things, the

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Miller Declaration or the Stipulation of Settlement dated as of September 6, 2024 (ECF No. 72-1) ("Stipulation").

1

Distribution Order will: (i) approve A.B. Data's administrative determinations accepting and rejecting Claims submitted in connection with the Settlement; (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by A.B. Data as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for any tax liability and claims administration-related contingencies that may arise; and (iii) approve A.B. Data's fees and expenses incurred and estimated to be incurred in the administration of the Settlement and the Initial Distribution.  Granting that relief is entirely appropriate and proper, and will ensure that class members receive the Settlement proceeds to which they are entitled.

There are no disputed Claims by any Settlement Class Member requiring Court review. Further, pursuant to the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund.  *See* Stipulation ¶¶ 4.1, 4.4, 4.5(e); *see also* Notice ¶¶ 43, 71.  As such, the motion is ripe for determination and Lead Counsel respectfully submit that a hearing on this motion is not required.

## I.   <u>BACKGROUND</u>

On December 18, 2024, the Court entered the Judgment Approving Class Action Settlement (ECF No. 89) approving the $30 million all-cash Settlement of this Action and entered an Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 90) approving the Plan of Allocation for the Net Settlement Fund.  The Settlement's "Effective Date" under paragraph 6.1 of the Stipulation has now occurred, and accordingly the Net Settlement Fund may now be distributed to Authorized Claimants.  In accordance with paragraph 4.5(d) of the Stipulation, Lead Plaintiff respectfully requests that the Court enter the Distribution Order and approve the Distribution Plan.

In accordance with the Court's Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 78) ("Preliminary Approval Order"), A.B. Data mailed the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Notice") and the Proof of Claim and Release Form ("Claim Form" and, collectively with the Notice, the "Notice Packet") to potential Settlement Class Members and other nominees.  Miller Decl. ¶ 2.  A.B. Data has disseminated 51,733 Notice Packets to potential Settlement Class Members and nominees.  *Id*. ¶ 4.  The Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form postmarked no later than January 30, 2025.  *Id*. ¶ 7.

## II.    CLAIMS ADMINISTRATION

As set forth in the Miller Declaration, through March 6, 2026, A.B. Data received and processed 83,593 Claims.  *Id.*   All Claims received through March 6, 2026, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Notice (*see id*.), and A.B. Data has worked with Claimants to help them perfect their Claims. *See id.* ¶¶ 19-28.  Many of the Claims were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by A.B. Data.  *Id*. ¶¶ 19, 22.

If A.B. Data determined a Claim to be defective or ineligible, A.B. Data sent a letter (if the Claimant or filer filed a paper Claim) or an email (if the Claimant or filer filed an electronic Claim) to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim ("Deficiency Notices"). *Id*. ¶¶ 20, 22.  The Deficiency Notices advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within twenty days from the date

3

of the Deficiency Notice or A.B. Data would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 20, 23. Examples of the Deficiency Notices are attached as Exhibits A, B, and C to the Miller Declaration.

Of the 83,593 Claims that are the subject of this motion, A.B. Data has determined that 53,377 Claims are acceptable in whole or in part, and that 30,216 Claims should be rejected because they are ineligible for payment from the Net Settlement Fund. Miller Decl. ¶¶ 33-36. The rejected Claims were invalid for various reasons, including, for example, that the Claim did not result in a Recognized Claim, the Claim was made by or on behalf of a person or entity who was not a Settlement Class Member, or the Claim was a duplicate or withdrawn. *Id*. ¶ 36.[2] The Claims recommended for acceptance include over 28 million damaged shares of Cerence common stock, *see id*. ¶¶ 34-35, which is in line with the total number of damaged shares as estimated by Lead Plaintiff's damages expert—demonstrating that the notice and claims processing procedures here were highly successful. Lead Plaintiff respectfully requests that the Court approve A.B. Data's administrative determinations accepting and rejecting Claims as set forth in the Miller Declaration.

A.    **No Disputed Claims**

A.B. Data carefully reviewed Claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. *Id*. ¶¶ 21, 26. The Deficiency Notices specifically advised the Claimant or filer of the right, within twenty days after the mailing or emailing of the Deficiency Notice, to contest the rejection of the Claim and request Court review of A.B. Data's administrative determination of the Claim. *Id*. ¶¶ 20, 23; *id*. Exs. A, B.

---

[2] The great majority of the rejected Claims were made by persons or entities that were not Settlement Class Members or who did not possess Recognized Claims under the Plan of Allocation. *See* Miller Decl. ¶ 36. Also, given the relative ease with which electronic claims are now filed through the use of modern technology, one noticeable recent trend is that many potential claimants will submit a claim without carefully checking whether they qualify as a class member. *Id*. This trend likely contributed to the large number of rejected Claims here.

With respect to the fully processed Claims, A.B. Data received three requests for Court review of its administrative determinations. *Id*. ¶ 28. To resolve these disputes without necessitating the Court's intervention, A.B. Data contacted each Claimant requesting Court review and attempted to answer all questions, to explain A.B. Data's administrative determination of the Claim's status, and to facilitate the submission of missing information or documentation where applicable. *Id*. As a result of these efforts, two Claimants resolved their deficiencies and withdrew their requests for Court review, and their Claims are recommended for approval. *Id*. One Claimant, after receiving an explanation of A.B. Data's determination, is no longer requesting Court review. *Id*. Accordingly, there are no outstanding requests for Court review by any Claimants.

### B.    Late Claims and Final Cut-Off Date

The 83,593 Claims received through March 6, 2026, include 2,429 Claims that were postmarked or received after January 30, 2025, the Court-approved Claim submission deadline. *Id*. ¶¶ 29, 35. Those late Claims have been fully processed, and 1,108 of them are, but for their late submission, otherwise eligible to participate in the Settlement. *Id*. Although these 1,108 Claims were late, they were received while the processing of timely Claims was ongoing. *Id*. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. *Id*. ¶ 29. The Court has discretion to accept Claims received after the Claim submission deadline. *See* Preliminary Approval Order ¶ 11; Notice ¶ 47. Lead Plaintiff respectfully submits that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiff respectfully requests that the Court order that any *new* late Claims (and any requested adjustments to previously filed Claims that would result in an increased Recognized Claim amount) received after March 6, 2026, shall be barred (*see also* Miller Decl. ¶ 39(f)) – subject to the proviso that if Lead Counsel later determine that an additional distribution is not cost-effective (*see id*. ¶ 39(e)), then any post-March 6, 2026 Claimants may, at the discretion of Lead Counsel (and to the extent possible after paying remaining administrative fees and expenses owed), be paid on their new (or adjusted) Claims on a *pro rata* basis so as to bring them into parity with other Authorized Claimants who have cashed their distribution checks.

## III.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

The Court-approved Claims Administrator for the Settlement, A.B. Data, was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. Miller Decl. ¶ 2. Consistent with the Stipulation, A.B. Data provided notice to over 51,000 potential Settlement Class Members and received and processed over 83,000 Claims. The Stipulation expressly contemplates that "the actual costs of Notice and Administration Expenses" including "all expenses incurred in connection with the administration of the Settlement," such as "the cost of publishing the Summary Notice, locating Settlement Class Members, printing and mailing the Notice and Claim Form as directed by the Court, and the cost of processing Claims and distributing settlement funds to Authorized Claimants, as well as any costs, fees, and expenses incurred in connection with the Escrow Account" would be paid from the Settlement Fund. Stipulation ¶¶ 1.26, 2.2. A.B. Data's fees and expenses for its work performed through February 15, 2026, are $287,222.40, and its

estimated fees and expenses for work to be performed in connection with the Initial Distribution are $25,536.32, which together total $312,758.72. Miller Decl. ¶ 38. Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. *Id*. To date, A.B. Data has received payment in the amount of $214,452.35 for its fees and expenses. *Id*. Accordingly, there is an outstanding balance of $98,306.37 payable to A.B. Data, which amount includes the estimated fees and expenses to be incurred by A.B. Data in connection with the Initial Distribution. *Id*. Lead Counsel reviewed A.B. Data's invoices and respectfully request on behalf of Lead Plaintiff that the Court approve all of A.B. Data's fees and expenses.

## IV.  DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

### A.  Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, A.B. Data will distribute 95% of the Net Settlement Fund after deducting (i) all payments previously allowed, (ii) payments approved by the Court on this motion, and (iii) any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (*i.e.*, the Initial Distribution). *See id.* ¶ 39(a). In the Initial Distribution, A.B. Data will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. *Id*. ¶ 39(a)(1). A.B. Data will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *Id*. A.B. Data will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by A.B. Data. *Id*. ¶ 39(a)(2). A.B. Data will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would

7

have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. *Id.* ¶ 39(a)(3). This *pro rata* share is the Authorized Claimant's Distribution Amount. *Id.* Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id.* ¶ 39(a)(4). These Authorized Claimants will receive no additional funds in subsequent distributions. *Id.* After deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id.* ¶ 39(a)(5). The remaining 5% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. *Id.* To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id.*

To encourage Authorized Claimants to cash their checks promptly, Lead Plaintiff proposes that all distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id.* ¶ 39(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 39(b) of the Miller Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in a subsequent distribution, as described below. *Id.* ¶ 39(c).

B.    Additional Distribution(s) of the Net Settlement Fund

After A.B. Data has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than six months after the Initial Distribution, A.B. Data will, after consulting with Lead Counsel, conduct the Second Distribution of the Net

8

Settlement Fund.  *Id.* ¶ 39(d).  In the Second Distribution, any amount remaining in the Net Settlement Fund, after deducting any unpaid fees and expenses incurred, will be distributed to all Authorized Claimants (other than Claims Paid in Full) who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds.  *Id*.  If any funds remain in the Net Settlement Fund after the Second Distribution, and if cost-effective, subsequent distributions will take place at no less than four-month intervals.  *Id*.  When Lead Counsel, in consultation with A.B. Data, determine that a further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after March 6, 2026, A.B. Data will process those Claims.  *Id*. ¶ 39(e).  Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an upward adjustment was received after March 6, 2026, may be paid in accordance with paragraph 39(f) of the Miller Declaration.  *Id*.

As provided in the Court-approved Plan of Allocation, if any funds remain in the Net Settlement Fund after payment of those Claims received after March 6, 2026 and any unpaid fees or expenses, those residual funds will be contributed to Greater Boston Legal Services, a nonsectarian, not-for-profit 501(c)(3) organization that provides investor education and protection programs. *See* Notice ¶ 89.

## V.  <u>RELEASE OF CLAIMS</u>

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and (ii) provide that all persons involved in any aspect of Claims processing, or who are involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement.  *See* Stipulation ¶ 4.8.  Accordingly, Lead Plaintiff respectfully requests that the Court release and

discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

Courts have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g.*, *In re Bos. Sci. Corp. Secs. Litig.*, No. 1:20-cv-12225-ADB, slip op. at 5-6 (D. Mass. Feb. 26, 2025), ECF No. 174 (attached as Exhibit 1) ("[A]ll persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of that involvement, and all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants."); *Machado v. Endurance Int'l Group Holdings, Inc.*, Case No. 1:15-cv-11775-GAO, 2021 WL

10

283406, at *2 (D. Mass. Jan. 27, 2021) (approving substantially similar language in order authorizing distribution of settlement proceeds).

## VI.    **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant its Unopposed Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

DATED:  March 12, 2026

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**

**SAXENA WHITE P.A.**

 /s/ *John Rizio-Hamilton*
John Rizio-Hamilton (*pro hac vice*)
Hannah Ross (*pro hac vice*)
Alec T. Coquin (*pro hac vice*)
Mathews R. de Carvalho (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
(212) 554-1400
johnr@blbglaw.com
hannah@blbglaw.com
alec.coquin@blbglaw.com
mathews.decarvalho@blbglaw.com

 /s/ *Steven B. Singer*
Steven B. Singer (*pro hac vice*)
Joshua H. Saltzman (*pro hac vice*)
Sara DiLeo (*pro hac vice*)
10 Bank Street, 8th Floor
White Plains, New York 10606
(914) 437-8551
ssinger@saxenawhite.com
jsaltzman@saxenawhite.com
sdileo@saxenawhite.com

Jonathan D. Uslaner (*pro hac vice*)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
(310) 819-3481
jonathanu@blbglaw.com

Maya Saxena
Joseph E. White III (BBO #648498)
7777 Glades Road, Suite 300
Boca Raton, Florida 33434
(561) 394-3399
msaxena@saxenawhite.com
jwhite@saxenawhite.com

*Lead Counsel for Lead Plaintiff Public*
*Employees' Retirement System of Mississippi*

**DAVIDSON BOWIE, PLLC**
John L. Davidson (*pro hac vice*)
1062 Highland Colony Parkway
200 Concourse, Suite 275
Ridgeland, Mississippi 39157
(601) 932-0028
jdavidson@dbslawfirm.net

*Additional Counsel for Lead Plaintiff Public*
*Employees' Retirement System of Mississippi*

12

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on March 12, 2026.

 /s/ *John Rizio-Hamilton*
John Rizio-Hamilton

13